JAMES J. MITTERMILLER, Cal. Bar No. 85177
jmittermiller@sheppardmullin.com
FRANK J. POLEK, Cal. Bar No. 167852
fpolek@sheppardmullin.com
JOHN C. DINEEN, Cal. Bar No. 222095
jdineen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone: 619-338-6500
Facsimile: 619-234-3815

Attorneys for Defendants SPRINT SOLUTIONS, INC. and SPRINT SPECTRUM L.P.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTILITY CONSUMERS' ACTION NETWORK and ERIC TAYLOR, on behalf of themselves, their members and/or all others similarly situated, as applicable,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT SOLUTIONS, INC.; SPRINT SPECTRUM L.P.; SPRINT-NEXTEL CORPORATION,<br><br>Defendants. | Case No. 07 CV 2231 W (LSP)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND, ALTERNATIVELY, MOTION TO STRIKE**<br><br>[F.R.C.P. 12(b)(6) and 12(f)]<br><br>Judge: Hon. Thomas J. Whelan<br>Courtroom: Seven<br>Date: March 3, 2008<br>Time: 10:30 a.m.<br><br>NO ORAL ARGUMENT PER LOCAL RULE 7.1(d)(1) |

# TABLE OF CONTENTS

Page


I. INTRODUCTION AND BACKGROUND ....... 1

II. PLAINTIFFS FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM UNDER THE UNLAWFUL PRONG OF BUSINESS AND PROFESSIONS CODE SECTION 17200 ....... 2

III. PLAINTIFFS CANNOT MAINTAIN A CLRA CLAIM FOR DAMAGES ....... 5

IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE FEDERAL COMMUNICATIONS ACT ....... 8

- A. Plaintiffs Fail To Sufficiently Allege Their Section 201(b) Claim. ....... 8
- B. The FCC's Truth-In-Billing Rules Do Not Apply To Taylor's Account. ....... 10

V. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR CONVERSION ....... 11

VI. PLAINTIFFS' CLAIM FOR "CRAMMING" FAILS TO STATE A CLAIM ....... 13

VII. PLAINTIFFS' PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRICKEN ....... 14

VIII. CONCLUSION ....... 14

# TABLE OF AUTHORITIES

Cases

Barquis v. Merchants Collection Assn.,
7 Cal. 3d 94 (1972) .......... 4

Branch v. Tunnell,
14 F.3d 449 (9th Cir. 1994) .......... 7, 8

Byrne v. Nezhat,
261 F.3d 1075 (11th Cir. 2001) .......... 10

Californians for Population Stabilization v. Hewlett-Packard Company,
58 Cal. App. 4th 273 (1997) .......... 5

Cortez v. Purolator Air Filtration Products Co.,
23 Cal. 4th 163 (2000) .......... 5

Farmers Ins. Exchange v. Zerin,
53 Cal. App. 4th 445 (1997) .......... 13

Fischer v. Machado,
50 Cal. App. 4th 1069 (1996) .......... 13

Haigler v. Donnelly,
18 Cal. 2d 674 (1941) .......... 13

Hall v. Time Inc.
Cal. Rptr.3d__, (2008) .......... 6

MGIC Indem. Corp. v. Weisman,
803 F.2d 500 (9th Cir. 1986) .......... 7, 8

McKell v. Washington Mutual, Inc.,
142 Cal. App. 4th 1457 (2006) .......... 14

Mendoza v. Rast Produce Co.,
140 Cal. App. 4th 1395 (2006) .......... 14

Moore v. Regents of University of California,
51 Cal. 3d 120 (1990) .......... 13

Outboard Marine Corp. v. Superior Court,
52 Cal. App. 3d 30 (1975) .......... 7, 8

Parrino v. FHP, Inc.,
146 F.3d 699 (9th Cir. 1998) .......... 7, 8

People v. McKale,
25 Cal. 3d 626 (1975) .......... 4

Robertson v. Dean Witter Reynolds, Inc.,
749 F.2d 530 (9th Cir. 1984) .......... 3

Samura v. Kaiser Foundation Health Plan, Inc.,
17 Cal. App. 4th 1284 (1993) .......... 5

Thompson v. Davis,
295 F.3d 890 (9th Cir. 2002) .......... 3

Von Grabe v. Sprint PCS,
312 F. Supp. 2d 1285 (S.D. Cal. 2003) .......... 7

Vu v. California Commerce Club, Inc.,
58 Cal. App. 4th 229 (1997) .......... 13

Watson v. Stockton Morris Plan Co.,
34 Cal. App. 2d 393 (1939) .......... 13

Statutes

Cal. Bus. & Prof. Code § 17200 .......... 3, 4, 5, 6, 15

Cal. Civil Code § 1565 .......... 2, 4, 15

Cal. Civil Code § 1750 .......... 8

Cal. Civil Code § 1782 .......... 7, 8, 15

Cal. Civil Code § 1670.5 .......... 2, 4, 5, 15

Cal. Pub. Util. Code § 2890 .......... 14, 15

Miscellaneous

47 C.F.R. § 64.2400(b) .......... 12

47 U.S.C. § 201(b) .......... 9, 10, 12

Defendants Sprint Solutions, Inc. and Sprint Spectrum L.P. (collectively "Sprint") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' first, third, fifth, seventh and eighth claims for relief (denominated as "causes of action") in the First Amended Complaint.

Alternatively, Sprint moves pursuant to Federal Rule of Civil Procedure 12(f) to strike paragraphs 45 (page 17, line 16 ("California Civil Code sec. 1565, California Civil Code section 1670.5")), 61 (page 21, lines 17-23 ("As Sprint ... under the CLRA")), and 79 (page 25, lines 26-27 ("...and exemplary ... and fraudulent") of Plaintiffs' First Amended Complaint and paragraph 3 of Plaintiffs' Prayer for Relief (page 26, lines 22-23, in its entirety as it pertains to the Third Cause of Action, and the word "exemplary" from this paragraph).

## I.

## INTRODUCTION AND BACKGROUND

On or about January 2, 2008, Plaintiffs filed their First Amended Complaint against Sprint. (As provided in paragraph 11 of Plaintiffs' First Amended Complaint, Plaintiff has dismissed Sprint Nextel Corporation from this lawsuit.) Plaintiffs allege that Plaintiff Eric Taylor contracted with Sprint, a wireless telecommunications company, for wireless internet connection services. *See* First Amended Complaint ("FAC"), ¶ 1. Taylor purchased a "data card," a device used to wirelessly connect a computer to the internet through Sprint's wireless telecommunications network, and received data services from Sprint. UCAN, "a consumer advocacy membership organization," has joined in the action as a purported plaintiff, despite the fact that UCAN never contracted with Sprint and UCAN suffered no injury. FAC, ¶ 10(a).

Plaintiffs allege that Sprint improperly included taxes, fees and other charges on monthly invoices to Taylor and other putative class members. FAC, ¶¶ 3, 26-27. Plaintiffs allege that because data cards are not telephones, they are not subject to various taxes and fees. FAC, ¶ 27. Plaintiffs also complain that Taylor was improperly charged for receiving text messages, since data cards generally cannot send or access such messages. FAC, ¶ 29.

Plaintiffs have asserted class action claims for: (1) violation of Business and Professions Code § 17200; (2) breach of contract; (3) violation of Consumers Legal Remedies Act; (4) declaratory relief; (5) violation of the Federal Communications Act; (6) money had and received, money paid and unjust enrichment; (7) conversion; and (8) "cramming." (Although seven causes of action are identified in the caption of the First Amended Complaint, eight causes of action are pleaded.)

Despite taking all factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs' first, third, fifth, seventh and eighth causes of action simply fail to state a legally-cognizable claim against Sprint. Consequently, those claims should be dismissed. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002), *cert denied*, 538 U.S. 921 (2003).

## II.

## PLAINTIFFS FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM UNDER THE UNLAWFUL PRONG OF BUSINESS AND PROFESSIONS CODE SECTION 17200

In their first cause of action, Plaintiffs contend that Sprint's charges are

unlawful, fraudulent and/or unfair, and thus give rise to a claim under Cal. Bus. & Prof. Code § 17200. For this, Plaintiffs seek restitution and injunctive relief. *See* FAC at ¶ ¶ 42-50.

The unlawful prong of § 17200 was added in 1963. It prohibits "anything that can properly be called a business practice and at the same time is forbidden by law." *People v. McKale*, 25 Cal.3d 626, 634 (1975); *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 113 (1972). Although broad in scope, it requires that the statute "borrowed" be a substantive provision, prohibiting certain conduct.

Among the statutes cited for the proposition that Sprint's actions are "unlawful" are Cal. Civil Code §§ 1565 and 1670.5. *See* FAC at ¶ 45. However, neither of these statutes can give rise to an "unlawful" business practice under § 17200.

Civil Code § 1565 does not proscribe any conduct as unlawful. It provides that "The consent of the parties to a contract must be: 1. Free; 2. Mutual; and, 3. Communicated by each to the other." There is no way to *violate* this statute. Either consent is present or absent. The statute is definitional only. It pertains only to contract formation.

Similarly, Civil Code § 1670.5 also applies only to contracts. The statute directs how a court should deal with a contract containing an unconscionable clause. It also contains a provision that the parties be allowed to present evidence of an allegedly unconscionable provision. Again, it identifies no conduct as "unlawful." Moreover, Sprint has not uncovered any authority holding that an allegedly unconscionable clause in a contract may give rise to an "unlawful"

business practice claim. The case law makes clear that a contract claim cannot be asserted under the unlawful prong of Section 17200.

In *Californians for Population Stabilization v. Hewlett-Packard Company*, 58 Cal.App.4th 273 (1997), the plaintiff contended that liquidated damages provisions in a contract were unlawful and therefore an unlawful business practice. Among the statutes cited by that plaintiff was Civil Code § 1670.5, which is also cited by Plaintiffs here. The court there addressed each of the statutes, and ultimately rejected the contention that the provisions in the contract were unconscionable. Further, the court expressed skepticism about the use of such statutes as the basis for a Section 17200 claim:

> "It is questionable whether the three statutes cited by [plaintiff] actually constitute violations of law as contemplated by section 17200. Rather, they appear to address certain unenforceable contract provisions which may be severed from a contract. There is merit to [defendant's] claim that section 17200 'does not give the courts a general license to review the fairness of contracts but rather has been used to enjoin deceptive or sharp practices.'"

*Id.* at 287 (overruled on other grounds by *Cortez v. Purolator Air Filtration Products Co.,* 23 Cal.4th 163 (2000)), quoting *Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal.App.4th 1284, 1299 (1993).

Even if an unconscionable contract provision could give rise to an unlawful business practice, Plaintiffs have nonetheless failed to state a claim for relief. Plaintiffs do not allege that any contractual term is unconscionable. They simply contend that the taxes and other charges at issue are assessed in breach of contract. They seek to enforce the contract, rather than obtain relief from any particular contractual provision. In fact, the word "unconscionable" never appears in the FAC. *See generally,* FAC.

Plaintiffs' allegations are a disguised attempt to bootstrap a breach of contract claim into a claim under the unlawful prong of § 17200. This is prohibited. *In re Microsoft Corp. Antitrust Litigation*, 274 F. Supp. 2d 747 (D.Md. 2003). As the court stated in *Microsoft*:

> "Reading the term 'unlawful' in the UCL to include any breach of contract under the common law would give every plaintiff alleging breach of contract in a California court a corresponding cause of action for injunctive relief under the UCL. With the exception of the passing reference to "court-made" law ..., there is no indication that the legislature or the courts of California intended such a result."

*Id.* at 750.

The Court should dismiss Plaintiff's 17200 claim for relief as it relates to these two statutory provisions. Alternatively, the references to these statutes in paragraph 45 should be stricken.

In addition, Plaintiff UCAN has failed to allege it suffered any injury as a result of the conduct it complains of. In order to sustain a claim under Section 17200, "the alleged unfair competition must have caused the plaintiff to lose money or property." *Hall v. Time Inc.*, __ Cal. Rptr.3d __, 2008 WL 68631 (Cal.App. 4 Dist., 2008). Accordingly, UCAN cannot maintain a Section 17200 cause of action. As more fully discussed in Sprint's 12(b)(1) motion, filed concurrently herewith, all of UCAN's claims should be dismissed for lack of standing.

## III.

## PLAINTIFFS CANNOT MAINTAIN A CLRA CLAIM FOR DAMAGES

Plaintiffs' third claim for relief is for alleged violations of California's Consumer Legal Remedies Act ("CLRA"). Similar to Plaintiffs' other claims,

Plaintiffs assert that charges for taxes and fees violate various provisions of this consumer protection statute.

The CLRA prohibits any action for damages unless, at least 30 days before filing an action, the plaintiff served a demand letter, itemizing the alleged violations of the statute, and giving the defendant at least 30 days to correct the violations before filing suit. The plaintiff may sue immediately for an injunction, but an action for damages may only follow compliance with the thirty day demand rule. *See* Cal. Civil Code § 1782 (a). The purpose of the rule "is to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 41 (1975). Further, ***strict*** application of the rule is required to achieve the goals of the statute. *Id.* at 40-41.

Failure to strictly follow the procedure set forth in Civil Code § 1782(a) is fatal to a claim for damages. Once a non-conforming complaint is filed, no subsequent amendment may cure the defect. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1303-04 (S.D. Cal. 2003) (Stiven, J.). In *Von Grabe,* the plaintiff sued under the CLRA, but did not strictly comply with the statute's notice requirements. The court found that certain other pre-litigation correspondence did not strictly comply and thus did not satisfy the pre-litigation demand requirements. The court granted motion to dismiss the CLRA claim with prejudice.

In the instant case, Plaintiffs' First Amended Complaint alleges that Plaintiffs complied with this provision and served a demand letter in compliance with Civil Code § 1782. *See* FAC at ¶ 60. However, Plaintiffs' demand letter was served only one day prior to filing their initial complaint. Plaintiffs' letter was

signed and mailed on November 20, 2007 (Exh. A hereto). Plaintiffs' Complaint was filed on November 21, 2007.[1]

Plaintiffs' original complaint sought damages under the CLRA. *See* Complaint, ¶ 60 ("In compliance with the provisions of California Civil Code § 1782, plaintiff is giving written notice to Sprint Nextel of the intention to seek damages under California Civil Code § 1750 . . ."). Paragraph 55 of the original complaint incorporates all prior paragraphs of the initial complaint. These paragraphs include claims for damages for breach of contract. *See* Complaint, ¶ 54. Further, the original Complaint includes a Prayer for Relief for damages "as appropriate for the particular Cause of Action." Given that the CLRA allows generally for damages, and that Plaintiffs included a request for monetary relief in their CLRA claim, a fair reading of the Prayer for Relief is that damages are sought under the CLRA. Interestingly, Plaintiffs' prayer for relief in their First Amended Complaint is identical to that contained in the Complaint.

Plaintiffs attempt to disguise their claim for damages by seeking monetary relief in the form of restitution. *See* Complaint at ¶¶ 59 and 61. Sprint is aware of no authority that would allow a plaintiff to seek monetary relief in the form of restitution prior to serving a CLRA demand letter without running afoul of the statute's requirement of strict compliance with the demand procedures. Indeed, Plaintiffs' measure of restitution is identical to the measure of Plaintiffs' damages

---

[1] Sprint requests that this Court take judicial notice of Plaintiffs' initial filing of the complaint, and of the date of Plaintiffs' CLRA demand letter (attached as Exhibit A). Judicial notice of the demand letter is appropriate as it is referenced in the complaint, and there is no dispute as to its authenticity. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *Branch v. Tunnell,* 14 F.3d 449, 453-54 (9th Cir. 1994); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986).

(*i.e.*, the amount of the alleged overcharges). Plaintiffs should not be allowed to circumvent the statute as laid out in *Outboard Marine*.

The CLRA notice requirement and opportunity to cure are not mere academic points in this case. As Plaintiffs themselves allege, after the charges in issue were assessed, Sprint "fixed its bills and stopped charging most of the charges." FAC, ¶ 40. Plaintiffs also allege that certain other miscalculations continued to be made and not all of the charges have been "completely eliminated." FAC, ¶¶ 39-40 (emphasis added). The CLRA requires that defendants be given notice and the opportunity to "completely eliminate" the alleged claims. Here, Plaintiffs failed to comply with this requirement. As a consequence, Plaintiffs' claim for damages (whether characterized as "damages" or "restitution") under the CLRA must be dismissed with prejudice. Alternatively, the claim for damages and restitution contained in paragraph 61 (page 17, line 23) and all other prior references to "damages" and "restitution" to the extent incorporated into this cause of action, should be stricken under Rule 12(f).

## IV.

## PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE FEDERAL COMMUNICATIONS ACT

### A. Plaintiffs Fail To Sufficiently Allege Their Section 201(b) Claim.

Plaintiffs fifth cause of action asserts a claim for violation of the Federal Communications Act, specifically 47 U.S.C. § 201(b). That statute provides:

> "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . ." 47 U.S.C. § 201(b).

Plaintiffs allege that "Sprint Nextel's practice of collecting the charges set forth in detail above . . . was in violation of § 201(b) . . ." FAC, ¶ 69. Plaintiffs fail to enumerate which charges (many are mentioned in their complaint) and which practices allegedly violate Section 201(b).

Plaintiffs' shotgun approach to pleading has created a challenge for Sprint and the Court to unravel exactly what charges or actions Plaintiffs claim violate Section 201(b). In some places in the Complaint, Plaintiffs appear to be claiming Sprint violated Section 201(b) through an unexplained violation of the FCC's rules concerning truth-in-billing. FAC, ¶ 4. In other sections of the Complaint, it appears Plaintiffs are claiming that the charges at issue violate 47 U.S.C. § 201(b) in some way other than truth-in-billing, such as by "cramming." FAC, ¶¶ 7, 70. Plaintiffs deliberately attempt to keep Sprint and the Court guessing by "incorporat[ing] by reference all allegations contained" in the earlier paragraphs of the complaint. FAC, ¶ 67.

"Shotgun" pleading, such as Plaintiff's fifth cause of action, violates Rule 8's requirement that a claim be set forth in a plain statement and ultimately leads to a waste of both the parties' and the Court's resources. *See Byrne v. Nezhat*, 261 F.3d 1075, 1129-30 (11th Cir. 2001) (noting that shotgun complaints lead to shotgun answers, discovery disputes and a waste of judicial resources). At a minimum, Plaintiffs should be required to provide a more definite statement of their claim for violation of the Federal Communications Act, pursuant to Rule 12(e).

**B. <u>The FCC's Truth-In-Billing Rules Do Not Apply To Taylor's Account.</u>**

Plaintiffs have attempted to use a sleight of hand to assert a truth-in-billing claim against Sprint. Plaintiffs allege that Taylor's data card constitutes "information services" and that Sprint wrongfully assessed certain charges that cannot be assessed for such "information services." At the same time, Plaintiffs allege that Sprint has failed to comply with truth-in-billing rules. However, the truth-in-billing rules do not apply to "information services."

Throughout their complaint, Plaintiffs allege that Taylor and the putative class should not have received certain charges for their data cards because such services are considered "information services" and not "telecommunications services." *See e.g.* FAC, ¶ 70.

> "Wireless Broadband Internet Services are 'telecommunication' but not 'telecommunication services.' Rather, the services are **information services. Information services are not subject tot [*sic*] Title II of the Communications Act**, and as such providers of 'information services' are **not** subject to the obligations of Title II, including, but not limited to, providing number portability, enhanced 911, and contributing to the FCC's Universal Service Fund. . . ."

FAC, ¶ 32 [emphasis added].

Plaintiffs also allege Sprint is required to comply with the FCC's truth-in-billing requirements – the very regulations Plaintiffs admit do not apply to "information services." FAC, ¶ 32, 33. Plaintiffs cannot have both ways. Either Mr. Taylor's data card is an "information service" and truth-in-billing does not apply, or Mr. Taylor's data card is a "telecommunications service" and the charges at issue were appropriate.

If Plaintiffs are correct, that Mr. Taylor's data card is considered an "information service," then truth-in-billing does not apply because the FCC has not extended truth-in-billing requirements to "information services." The truth-in-billing rules apply to telecommunications common carriers under Title II of the Federal Communications Act. *See* 47 C.F.R. § 64.2400(b). The FCC has sought comment from members of the public on whether to extend truth-in-billing to information services. In its August 5, 2005 Report and Order and Notice of Proposed Rulemaking, the FCC stated: "We seek comment on *whether* we should exercise our Title I authority to impose requirements on broadband Internet access service providers that are similar to our truth-in-billing requirements . . ." In the Matters of Appropriate Framework for Broadband Access to the Internet over Wireline Facilities, *Report & Order & Notice of Proposed Rulemaking*, 20 FCC Rcd 14853, ¶ 152-53 (2005) [emphasis added] (attached as Exhibit 5 to Sprint's Notice of Lodgment of Foreign Authorities).

However, the FCC has not issued a new rule and truth-in-billing does not currently apply to "information services." Therefore, to the extent Plaintiffs' claim under 47 U.S.C. § 201(b) is premised on a violation of truth-in-billing principles, Plaintiffs fail to state a claim and Plaintiffs' fifth cause of action must be dismissed.

## V.

## PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR CONVERSION

Plaintiffs' seventh cause of action is for conversion. Plaintiffs' theory is that by assessing taxes, fees and other charges, Sprint wrongfully converted

Plaintiff Taylor's money. However, the mere charging and payment of such fees is not enough to state a claim for conversion.

In general, conversion is the wrongful exercise of dominion over the personal property of another. *Moore v. Regents of University of California*, 51 Cal.3d 120, 137 (1990); *Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 451-52 (1997). Money cannot be the subject of a cause of action for conversion, unless a specific, identifiable sum of money is taken. *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941) ("money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved…"); *Vu v. California Commerce Club, Inc.*, 58 Cal.App.4th 229, 235 (1997) ("claim for money not actionable as conversion…").

Money can be the subject of a conversion claim only where the defendant failed or refused to turn over a definite sum of money received *for the benefit of the plaintiff.* For example, a cause of action is stated where a bank issued a duplicate passbook and delivered the funds in the account to a third party. *Watson v. Stockton Morris Plan Co.*, 34 Cal.App.2d 393, 403 (1939). "It as been held, as a general rule, that, where the relationship of debtor and creditor only exists, conversion of the funds representing the indebtedness will not lie against the debtor, unless he holds the deposit in a fiduciary capacity and is bound to return" the money to the owner. *Id.* at 403.

A claim may also be stated where a merchant working on a commission sold the plaintiff's goods, but did not turn over the proceeds of the sale to the plaintiff. *Fischer v. Machado*, 50 Cal.App.4th 1069, 1072 (1996) ("When an agent is required to turn over to his principal a definite sum received by him on his

principal's account, the remedy of conversion is proper."); *Mendoza v. Rast Produce Co.*, 140 Cal.App.4th 1395, 1404-05 (2006).

Furthermore, a claim for conversion of money cannot lie simply because of an overcharge, but rather only when a specific, identifiable sum is taken. *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1491 (2006). In *McKell*, plaintiffs sued because they were allegedly overcharged for various services associated with home loans. Plaintiffs contended that they were only to be charged pass-through expenses for wire transfer fees, tax services, underwriting, etc., and that defendants improperly included a mark-up on the charges for these services. The court found that a mere overcharge does not give rise to a claim for conversion. *Id.* at 1491.

Here, Plaintiffs merely assert that they were charged too much, that the taxes and other charges should not have been placed on Plaintiff Taylor's monthly invoice. However, as in *McKell,* a mere overcharge does not give rise to the claim. Plaintiffs' seventh claim for conversion should be dismissed.

## VI.

## PLAINTIFFS' CLAIM FOR "CRAMMING" FAILS TO STATE A CLAIM

In their eighth cause of action, Plaintiffs allege that Sprint violated California Public Utility Code Section 2890 by including charges that "were not properly charged to" the California putative class members. FAC, ¶ 83.

California Public Utility Code Section 2890(a) provides, "A *telephone bill* may only contain charges for products or services, the purchase of which the subscriber has authorized." Cal. Pub. Util. Code, § 2890(a) [emphasis added].

Section 2890 specifically applies to "telephone bills." However, Plaintiffs allege that Taylor's data card is an "information service" and that Taylor should not have been assessed any charges related to "telecommunication services." Again, Plaintiffs are attempting to have it both ways. If Taylor's data card is an information service, then he did not receive a "telephone bill" and Section 2890 is inapplicable. Plaintiffs' eighth cause of action for "cramming" should be dismissed.

## VII.
## PLAINTIFFS' PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRICKEN

Plaintiffs' First Amended Complaint includes a request for punitive damages. The request is made in ¶¶ 61 and 79 and in the Prayer for Relief at ¶ 3. The only causes of action potentially giving rise to a prayer for punitive damages are Plaintiffs' third cause of action for violations of the CLRA and Plaintiffs' seventh cause of action for conversion. No other cause of action alleged provides a basis for punitive damages. Because Plaintiffs cannot maintain an action for damages due to a violation of Civil Code § 1782(a) and have failed to state a cause of action for conversion, Plaintiffs' prayer for punitive damages should be stricken.

## VIII.
## CONCLUSION

For all of the foregoing reasons, Plaintiffs' claims for relief based on Business and Professions Code section 17200, the CLRA, the Federal Communications Act, conversion and cramming must be dismissed. In the alternative, the Court should strike paragraphs 45 (page 17, line 16 ("California Civil Code sec. 1565, California Civil Code section 1670.5")), 61 (page 21, lines 17-

23 ("As Sprint ... under the CLRA")), and 79 (page 25, lines 26-27 ("...and exemplary ... and fraudulent") of Plaintiffs' First Amended Complaint and paragraph 3 of Plaintiffs' Prayer for Relief (page 26, lines 22-23, in its entirety as it pertains to the Third Cause of Action, and the word "exemplary."

DATED: January 22, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

s/James J. Mittermiller
Attorneys for Defendants SPRINT SOLUTIONS, INC. and SPRINT SPECTRUM L.P.
E-mail: jmittermiller@sheppardmullin.com