Alan M. Mansfield (SBN 125998)
alan@rosnerandmansfield.com
John W. Hanson (SBN 214771)
john@rosnerandmansfield.com
ROSNER & MANSFIELD, LLP
10085 Carroll Canyon Road
San Diego, CA 92131
Tel: (858) 348-1005
Fax: (858) 348-1150

Attorneys for Plaintiffs

Art Neill (SBN 246717)
art@ucan.org
UTILITY CONSUMERS' ACTION NETWORK
3100 Fifth Ave., Suite B
San Diego, CA 92103
Tel: 619-696-6966
Fax: 619-696-7477

Attorneys for UCAN

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UTILITY CONSUMERS' ACTION NETWORK and ERIC TAYLOR, on behalf of themselves, their members and/or all others similarly situated, as applicable,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT SOLUTIONS, INC.; et al.,<br><br>Defendants. | CASE NO. 07-CV-2231-W (LSP)<br><br>**CLASS ACTION**<br><br>PLAINTIFFS' EX PARTE APPLICATION FOR ORDER PERMITTING EXPEDITED DISCOVERY PURSUANT TO FED. R. CIV. PROC. 26(a)<br><br>Date: N/A<br>Time: N/A<br>Courtroom: Hon. Thomas Whelan |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek an Order from this Court, pursuant to Fed. R. Civ. Proc. 26(a), requiring defendants Sprint Solutions, Inc. and Sprint Spectrum, L.P. provide expedited responses to certain limited discovery to determine if preliminary injunctive relief and class certification is appropriate.

/ / /

The form of this expedited discovery is attached to the Declaration of Alan M. Mansfield in Support of Ex Parte Application for Order Permitting Expedited Discovery ("Mansfield Decl.") at Exs. 1-3.

This litigation involves various issues arising out of defendants' allegedly improper billing of monthly charges to certain Sprint customers. Sprint has decided to impose two new charges effective January 1, 2008. Under Sprint's Terms and Conditions of Service, imposing these charges invokes a limited right for consumers to cancel during a 30–day window after these charges are first imposed. Mansfield Decl., Ex. 7. However, Sprint's customer service representatives are not automatically recognizing this right even if consumers figure out they have a limited right to cancel, and are providing many consumers inconsistent and misleading information. See Declarations of Eric Taylor, Carla Friedrich, and Art Neill, submitted herewith.

Plaintiffs request this relief on an expedited basis because, according to Sprint's counsel on Friday, January 25, 2008, this 30-day cancellation window began to close on February 1, 2008 and will be over by the end of February. The way to keep this window open is through a preliminary injunction, as Sprint has not voluntarily agreed to do so. However, it may very well be preliminary injunctive relief cannot be issued unless the Court certifies a class pursuant to Fed. R. Civ. Proc. 23(b)(2). Thus, this discovery is necessary to determine if such preliminary injunctive relief may be appropriate, as well as to address the class certification issue.

## II. STATEMENT OF FACTS

The following statement of facts is supported by the evidentiary Declarations of Alan M. Mansfield, Art Neill, Eric Taylor and Carla Friedrich, submitted herewith.

Effective January 1, 2008, Sprint began to charge its consumers an "Administrative Fee" and a "Regulatory Fee". The imposition of these charges operates to grant customers a limited window to opt out of their term contracts. Sprint's currently operative Terms and Conditions of Service – applicable to both Sprint and Nextel accounts – provides:

> **Our Right To Change The Agreement & Your Related Rights**
>
> We may change any part of the Agreement at any time, including, but not limited to, rates, charges, how we calculate charges, or your terms of Service. We will provide you notice of material changes, and may provide you notice of non-material changes, in a manner consistent with this Agreement (see "Providing Notice To Each Other Under The Agreement" section). If a change we make to the Agreement is material

> and has a material adverse effect on Services under your Term Commitment, you may terminate each line of Service materially affected without incurring an Early Termination Fee only if you: (a) call us within 30 days after the effective date of the change; and (b) specifically advise us that you wish to cancel Services because of a material change to the Agreement that we have made. If you do not cancel Service within 30 days of the change, an Early Termination Fee will apply if you terminate Services before the end of any applicable Term Commitment.

Mansfield Decl., Ex. 7 at 2. Sprint did not give its customers clear notice of this right, simply sending them a postcard and/or a statement on the monthly bill announcing that effective January 1, 2008 Sprint would be assessing two new monthly charges with a link to the description of those charges. Sprint did not make any direct mention of the material fact that by imposing these charges Sprint had invoked the above provision. See Ex. 1 to Declaration of Eric Taylor and Ex. 1 to Declaration of Carla Friedrich.

Numerous Sprint wireless consumers who have learned about this limited right have been given misleading information. As detailed in the accompanying Declarations, they have alternatively been told by Sprint Customer Solutions representatives that Sprint is refusing to recognize the right to cancel, that those with service through Nextel do not qualify (even though the definition of "we" or "Sprint" in the Terms and Conditions of Service define it as Sprint Solutions, Inc. or its affiliates, including Sprint, Sprint PCS and Nextel), that the time to cancel passed as of January 1, 2008, or requiring consumers to talk to Sprint supervisors, spend significant time on the phone, or multiple telephone calls before recognizing their right to cancel. See Declarations of Eric Taylor, Carla Friedrich, and Art Neill. UCAN alone has received over 40 complaints on this issue. Declaration of Art Neill, at ¶4.

By way of example, on January 11, 2008, Mr. Taylor contacted Sprint and asked if due to the imposition of these charges he could opt out of his term contract. He was told he could not. Taylor Decl. at ¶¶3-7. Yet in Sprint counsel's letter dated January 26, 2008, Sprint's counsel advised us for the first time that he could. Mansfield Decl. at ¶4. What changed? Why was the fee not "materially adverse" for cancellation purposes on January 11, but was two weeks later? Since Sprint provides no explanation, the logical explanation is that Sprint is attempting to preempt this claim so that Sprint can claim he cannot seek injunctive relief for others. Yet Mr. Taylor's position is the exact same as thousands of other Sprint consumers who have had the same charges imposed.

Carla Friedrich, another Sprint customer, was told on January 10, 2008 she could not cancel her Sprint service due to these charges. She cancelled and was billed over $600.00 in ETFs. After she called back and referred to the precise provision of the Terms and Conditions of Service, suddenly Sprint changed its position but has not credited her the ETFs, which Sprint has billed her for and claims are now due and payable. Declaration of Carla Friedrich, at ¶17. Numerous other consumers tell the same story of calling to raise this issue but being told they have no right to cancel, or only having the right recognized after being required to spend significant time talking to Sprint supervisors. Declaration of Art Neill at ¶8-11. This is an on-going situation, since these calls are through January 29, 2008, and are continuing daily. Declaration of Art Neill at ¶4.

These facts show at a minimum Sprint has not provided clear and consistent information to its customer service representatives, to the detriment of numerous class members. Either these new fees invoke the right to cancel or they do not. Mr. Taylor is a classic example of this problem – according to Sprint, he had no right to cancel until Mr. Taylor's counsel formally raised the issue in the context of discussing the need to obtain injunctive relief. The charges suddenly became "material" to him, but not others. Sprint should not allowed to pick and choose who can cancel and who cannot. If consumers contact Sprint and say they want to cancel, in light of Sprint's stated position and the language of the Terms and Conditions, it must honor that request without question. On January 14, 2008, plaintiffs' counsel attempted to informally resolve this issue by bringing it to the attention of Sprint's counsel and asking for their position by the end of that week to determine if preliminary injunctive relief was necessary. Sprint's counsel asked for an extension to respond past January 18, 2008 to investigate the issue. Mansfield Decl. at ¶3. At 4:15 p.m. on Friday, January 25, 2008, Sprint's counsel advised plaintiffs' counsel in writing that: (1) Sprint believed the above provision had been invoked, but only on a case-by-case basis, and (2) they would not waive the window provision while the parties addressed this issue with the Court. In addition, according to counsel, once a bill was sent and the due date for the bill passed, the 30-day window opened. So, in Mr. Taylor's case, as his bill is dated December 26, 2008 and the charges would be imposed beginning January 27, 2008, he would only have until February 26, 2008 to cancel service if he wanted to do so. However, Mr. Taylor is at the end of the Sprint billing cycle. Sprint's counsel

confirmed on a telephone call on January 28, 2008 that because these charges began to be imposed effective January 1, 2008, for customers who started to be billed for such charges on that day, their window to cancel service would begin to close by Friday, February 1, 2008, with all cancellation rights extinguished by the end of February. Mansfield Decl. at ¶4.

This is not the first time UCAN has had to address this issue with Sprint. Back in July 2003, Sprint imposed a $1.50 Federal Wireless Number Pooling and Portability Fee and E911 Fee. Doing so invoked the above provision. Sprint gave incomplete notice to consumers of these fees and their impact, and gave its customer service representatives inconsistent information about customers' cancellation rights. On August 5, 2003 (later reduced to an order dated August 11, 2003), the Honorable Linda Quinn of the San Diego County Superior Court issued a Temporary Restraining Order prohibiting Sprint from "refusing to accept customers' cancellation requests where customers attempt to cancel Sprint PCS service based upon the imposition of the Fee" until a hearing could be heard on the request for a preliminary injunction. Mansfield Decl., Ex. 7, ¶6 .

Just as before, Sprint is refusing to informally resolve this situation. While plaintiffs believe the Court may need to step in to preserve the *status quo* provided consumers under the Terms and Conditions of Service, Ninth Circuit authority indicates it may not be able to do so on a class-wide basis unless it first certifies an injunction-only class. Thus, plaintiffs request the Court issue an order permitting plaintiffs to conduct limited expedited discovery on these issues to determine if injunctive relief and class certification is appropriate. The parties have met and conferred over this issue. However, the parties do not agree on the need or scope of such discovery, necessitating this Application. Mansfield Decl. at ¶7.

## III. ARGUMENT

It appears that in the Ninth Circuit a court cannot issue relief to third parties absent class certification, under the line of authority discussed in *National Association for Immigrants' Rights v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984). While we believe under the circumstances it is appropriate to certify a class for injunctive relief only under Fed. R. Civ. Proc. 23(b)(2) and *Dukes v. Wal-Mart, Inc.*, 2007 U.S. App. LEXIS 28558 (9th Cir. Cal. Dec. 11, 2007), plaintiffs should engage in some limited discovery to support an injunction-only certification order. Limited

discovery would be helpful to clarify issues such as what instructions were given to Sprint representatives and when, how many complaints have there been on this issue, how many consumers have been granted requests to cancel service without penalty and how many have been denied.

Normally discovery cannot be commenced until after the parties' Rule 26 conference pursuant to Fed. R. Civ. Proc. 26(f), which normally is not held in this District until after the case is at issue and the parties participate in an Early Neutral Evaluation Conference. As no Answer has been filed, this will not take place for months. It would materially assist the parties and substantially assist the Court in deciding whether to issue a preliminary injunction or certify an injunction-only class to have before it evidence of Sprint's internal policies, procedures and records regarding these notice and cancellation issues.

In *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002), the Court permitted such expedited discovery. After analyzing the alleged need for such discovery (there, an issue of possible patent infringement) the Court held: "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. It should be noted that courts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition. [citations]." *See also Invitrogen, Inc. v. President and Fellows of Harvard College*, 2007 U.S. Dist. LEXIS 74282 (S.D. Cal. Oct. 4, 2007) (expedited discovery necessary to oppose motion to dismiss on jurisdictional grounds).

Plaintiffs by necessity are acting upon the information available to them and the complaints UCAN has received. The need and scope of any preliminary injunction may be affected by information maintained only by Sprint regarding what Sprint has told its representatives to say about these fees and Sprint's cancellation obligations, as well as about the scope of its notice program and consumer complaints over this issue. Obtaining this information should not be burdensome, since Sprint maintains its customer call record data in electronic form.

Good cause therefore exists to order such information be provided on an expedited basis. This application satisfies the requirements for such an order under Fed. R. Civ. Proc. 26(d), since the time for responding to such discovery, if served under the time frames set forth in these statutes

and this District's local rules, could be after the time the Court needs to resolve these issues. The need for such discovery outweighs any potential prejudice Spring might claim in light of the limited information sought.

## IV. CONCLUSION

Good cause exists to permit and shorten the time period for serving and responding to such discovery, as required under Fed. R. Civ. Proc. 26(a). Plaintiffs respectfully request the Court issue an Order permitting expedited discovery in the form submitted herewith.

DATED: February 7, 2008

ROSNER & MANSFIELD, LLP

By: ______________________

Alan M. Mansfield
alan@rosnerandmansfield.com
John W. Hanson
john@rosnerandmansfield.com

10085 Carroll Canyon Road, First Floor
San Diego, CA 92131
Tel: (858) 348-1005
Fax: (858) 348-1150

Attorneys for Plaintiffs

Art Neill
art@ucan.org
UTILITY CONSUMERS' ACTION NETWORK
3100 Fifth Ave., Suite B
San Diego, CA 92103
Tel: (619) 696-6966
Fax: (619) 696-7477

Attorneys for UCAN