JAMES J. MITTERMILLER, Cal. Bar No. 85177
jmittermiller@sheppardmullin.com
FRANK J. POLEK, Cal. Bar No. 167852
fpolek@sheppardmullin.com
JOHN C. DINEEN, Cal. Bar No. 222095
jdineen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone: 619-338-6500
Facsimile: 619-234-3815

Attorneys for Defendants SPRINT SOLUTIONS, INC. and SPRINT-SPECTRUM L.P.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTILITY CONSUMERS' ACTION NETWORK and ERIC TAYLOR, on behalf of themselves, their members and/or all others similarly situated, as applicable,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT SOLUTIONS, INC.; SPRINT SPECTRUM L.P.; SPRINT-NEXTEL CORPORATION,<br><br>Defendants. | Case No. 07 CV 2231 W (LSP)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR ORDER PERMITTING EXPEDITED DISCOVERY**<br><br>Judge: Hon. Leo S. Papas<br>Courtroom: G<br>Date: N/A<br>Time: N/A |

TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. THE TOPICS ON WHICH PLAINTIFFS SEEK DISCOVERY ARE NOT INCLUDED IN THE COMPLAINT AND ARE NOT AT ISSUE IN THE CASE .......... 1

III. DISCOVERY IS NOT APPROPRIATE PRIOR TO THE COURT'S RULING ON DEFENDANTS' MOTIONS TO DISMISS .......... 3

IV. THERE IS NO SUBSTANCE TO PLAINTIFFS' UNPLEADED CLAIMS ABOUT THE NEW CHARGES .......... 4

V. PLAINTIFFS LACK STANDING TO ASSERT THESE NEW CLAIMS .......... 6

VI. PLAINTIFFS HAVE FAILED TO ALLEGE A CLASS THAT INCLUDES THESE NEW CLAIMS .......... 7

VII. PLAINTIFFS' PROPOSED DISCOVERY CANNOT BE DONE ON AN EXPEDITED BASIS .......... 8

VIII. PLAINTIFFS HAVE PRESENTED IRRELEVANT AND MISLEADING ARGUMENTS IN AN EFFORT TO CONFUSE THE ISSUES .......... 13

IX. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

Cases

United Food & Commercial Works Union Local 751 v. Brown Group,
517 U.S. 544 (1996) .......... 7

Whitmore v. Arkansas,
495 U.S. 149 (1990) .......... 6

Statutes

California Public Utility Code § 2891(a) .......... 12

Cal. Const., Art. I, sec. 1 .......... 12

Fed. R. Civ. P. 8(a)(2) .......... 7

Fed. R. Civ. Proc. 12(b)(6) .......... 3

Fed. R. Civ. P. 26(b)(1) .......... 3

Fed. R. Civ. P. 26(b)(2) .......... 10

Federal Rule of Evidence 408 .......... 6

Telecommunications Act § 201(b) .......... 1, 3

Defendants Sprint Solutions, Inc. and Sprint Spectrum L.P. (collectively "Sprint") oppose Plaintiffs Utility Consumers' Action Network ("UCAN") and Eric Taylor's *ex parte* application for an order permitting expedited discovery.

**I.**

**INTRODUCTION**

Plaintiffs have failed to demonstrate that good cause exists to support their application to embark on an early fishing expedition regarding claims not asserted in their complaint. No emergency necessitates the extraordinary relief Plaintiffs request. To the contrary, there are numerous reasons the Court should reject Plaintiff's application.

Sprint has moved to dismiss Plaintiffs' complaint, to dismiss Plaintiff UCAN as a party for lack of standing, and to refer Plaintiffs' claim under Section 201(b) of the Telecommunications Act to the Federal Communications Commission. The Court should not permit Plaintiffs to circumvent having Judge Whelan rule on Sprint's motions to dismiss. Further, the issues raised in the proposed discovery are unrelated to any of the issues contained in the complaint. Compounding the problem, Plaintiffs' proposed discovery requests are not narrowly tailored and it would take Sprint many months to respond to them. The Court should deny Plaintiffs' *ex parte* application.

**II.**

**THE TOPICS ON WHICH PLAINTIFFS SEEK DISCOVERY ARE NOT INCLUDED IN THE COMPLAINT AND ARE NOT AT ISSUE IN THE CASE**

A fundamental flaw in Plaintiffs' *ex parte* application is that the topics on which they seek expedited discovery are not included in the First Amended Complaint (or the original complaint) and are simply not at issue in this case.

Plaintiff Taylor is a Sprint customer who subscribed to Sprint's mobile broadband services plan for his aircard. *See* FAC, ¶ 1. An aircard is a device that plugs into a computer. It receives data transmissions through a wireless network to connect the computer to the internet. Plaintiffs' complaint alleges that Sprint wrongfully assessed to its broadband services customers certain surcharges, fees and taxes, as well as text message charges, that were only appropriate for cell phone customers. *See* FAC, ¶¶ 3, 6, 7, 14, 26-33.

Plaintiffs' complaint takes issue with two general categories of charges. First, Plaintiffs' complaint challenges certain surcharges, fees and taxes that Plaintiffs argue do not apply to broadband services because such services are considered "information services" and not "telecommunications services." FAC, ¶ 26, 32. (Assessment of certain surcharges, fees and taxes at issue in this matter mistakenly occurred in May 2007, as the result of a change in billing systems. Refunds were made to these customers in December 2007.)

Second, Plaintiffs complain about two text message charges Plaintiff Taylor received on his data services bill: (1) a text message charge that he received in October 2006 for 10¢, which was promptly credited by Sprint; and (2) a second charge for 15¢ for a text message Taylor received in July 2007 that was also promptly credited. Plaintiff Taylor alleges that aircard customers should not receive charges for text messages and should not be forced to contact Sprint in order to receive credits for any such charges. FAC, ¶ 29. Plaintiffs' complaint specifically limits the claims and the class definition to these two billing issues.

Despite the fact that the complaint addresses only alleged billing issues unique to broadband customers and broadband services, Plaintiffs' application does not seek discovery on those issues. Instead, without filing an amended complaint (or a new

lawsuit), Plaintiffs now seek discovery on charges wholly unrelated to the claims in the complaint. Specifically, Plaintiffs seek to take expansive discovery on "two new charges effective January 1, 2008" – specifically, whether the change in contract terms concerning the new charges entitles all customers (both broadband services and cell phone customers) to terminate the contract without paying an early termination fee ("ETF"). *See* Pl's App., p. 2. That issue is completely foreign to the claims in the operative complaint.

The standard for discovery is liberal – but not without limit. Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's *claim or defense* . . . ." Fed. R. Civ. P. 26(b)(1) [emphasis added]. This rule establishes the boundaries of discovery. Here, Plaintiffs' complaint does not even mention a claim regarding the new charges. Plaintiffs have no authority to support their request to take discovery on issues not asserted in the complaint for an uncertified class of persons that is not included in the class definition contained in the complaint. Plaintiffs are attempting to obtain discovery on completely unrelated matters to decide whether to pursue a new and separate claim. The Court should reject Plaintiffs' request.

## III.

## DISCOVERY IS NOT APPROPRIATE PRIOR TO THE COURT'S RULING ON DEFENDANTS' MOTIONS TO DISMISS

Defendants have filed motions to dismiss and/or stay pursuant to Rules 12(b)(6) and 12(b)(1) on grounds that Plaintiffs fail to state a claim for several of their causes of action, that Plaintiff UCAN lacks standing, and that Plaintiffs' cause of action under Section 201(b) of the Telecommunications Act must be referred to the FCC and the remainder of the case stayed. Those motions are scheduled to be heard by the Court (without oral argument) on March 3, 2008.

Plaintiffs are attempting to preempt Judge Whelan's rulings on those motions. If the Court grants Defendants' motions, Plaintiffs' claims will be significantly affected. Accordingly, the Court should deny Plaintiffs' request for any discovery (whether expedited or not) until after the Court has ruled on the pending motions to dismiss and after, if ever, claims have been sufficiently asserted, properly putting in issue the matters as to which Plaintiffs seek discovery.

## IV.

## <u>THERE IS NO SUBSTANCE TO PLAINTIFFS' UNPLEADED CLAIMS ABOUT THE NEW CHARGES</u>

In their application, Plaintiffs argue that Sprint customers have received new charges and that all such customers have the right to terminate their contracts without incurring an ETF. Plaintiffs further assert that Sprint is misleading subscribers about the new charges and about whether subscribers may terminate their contracts as a result of the new charges.

Plaintiffs are wrong. Not only have they failed to allege any claims based on the new charges, but their assertions in their application are wrong and misleading. The contract terms and conditions cited by Plaintiffs' counsel provide:

> "We may change any part of the Agreement at any time, including, but not limited to, rates, charges, how we calculate charges, or your terms of Service. We will provide you notice of material changes, and may provide you notice of non-material changes, in a manner consistent with this Agreement . . . . If a change we make to the Agreement is material and has a material adverse effect on Services under your Term Commitment, you may terminate each line of Service materially affected without incurring an Early Termination Fee only if you: (a) call us within 30 days after the effective date of the change; and (b) specifically advise us that you wish to cancel Services because of a material change to the Agreement that we have made. If you do not cancel Service within 30

> days of the change, an Early Termination Fee will apply if you terminate Services before the end of any applicable Term Commitment."

*See* Mansfield Decl., Exh. 7, p. 25.

Plaintiffs fail to inform the Court that Sprint has many different subscribers who are situated differently. Sprint has business plan customers, governmental customers and residential customers. The new charges have no effect on some customers, result in a net increase for some, and result in a net decrease for others. For instance, Plaintiff Taylor's charges increased by 45¢, which comes to approximately 0.7% of his monthly bill. Whether or not this increase is "material" may be subject to debate, but in Mr. Taylor's case, Sprint has agreed that Taylor may consider it a material change and if he complies with the procedures set forth in the Terms and Conditions, he may terminate his agreement without incurring an ETF. Sprint has informed Mr. Taylor of this fact in writing.

As Plaintiffs admit, for other subscribers the new charges actually resulted in a *reduction* in the total monthly amount they owe on their bill. *See e.g.* Decl. of Art Neill, ¶ 8(e). With respect to those subscribers, the new charges have not effected an adverse material change to their services.

In support of their assertion that Sprint is misleading customers, Plaintiffs provide a declaration by Art Neill composed almost entirely of hearsay. Mr. Neill's declaration and UCAN's website reveal that any confusion that exists about the changes in charges is the result of Plaintiffs' - not Sprint's - actions. The postings quoted in Mr. Neill's declaration were elicited by UCAN's press release dated January 2, 2008, entitled "Cancel Your Sprint/Nextel Contract Without An Early Termination Fee." Polek Decl, ¶ 5. In this press release, UCAN appears to be actively soliciting and inciting Sprint's

customers to cancel their contracts, and to use the change in charges as a pretext. Polek Decl., ¶ 5. UCAN now seeks to exploit confusion it created itself.

**V.**

**PLAINTIFFS LACK STANDING TO ASSERT THESE NEW CLAIMS**

Yet another problem with Plaintiffs' application is that neither Taylor nor UCAN has standing to assert the new claims which, in any event, do not appear in Plaintiffs' complaint.

Sprint has already informed Plaintiff Taylor in writing that he has the right to terminate his contract within 30 days of the date of his January bill that includes the new charges. Mr. Taylor cannot possibly be confused about his rights. Indeed, Plaintiffs attached to their application the letter of James J. Mittermiller to Alan M. Mansfield, dated January 25, 2008, addressing this issue. Plaintiffs attached this letter despite the fact that it clearly noted at the outset that it was a confidential, settlement-related communication protected by Federal Rule of Evidence 408. While under the Rules of Evidence Plaintiffs should not have attached that letter to their application, by doing so, they have demonstrated that Plaintiff Taylor has no injury as a result of the conduct of which he complains in this application and he therefore lacks standing.

The other purported Plaintiff in this case, UCAN, also lacks standing to pursue any of the new assertions contained in their application. Although Plaintiffs have not filed a complaint that includes any of the issues addressed in their application, it is clear that it would be futile for Plaintiff UCAN to do so. UCAN has not been assessed any of the fees they complain of in their application. *See Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990) (The plaintiff must allege an injury to himself or herself that is "distinct and palpable," as opposed to merely abstract.). Further, UCAN lacks associational standing

because individual class members are required in any case challenging the new charges. *See United Food & Commercial Works Union Local 751 v. Brown Group*, 517 U.S. 544, 553 (1996). These and other standing issues are the subject of Sprint's 12(b)(1) motion currently pending before the Court.

## VI.

## PLAINTIFFS HAVE FAILED TO ALLEGE A CLASS THAT INCLUDES THESE NEW CLAIMS

Not only does Plaintiffs' application seek discovery on issues not presented in their complaint, it seeks information about a purported class that has never been defined in any pleading. The class alleged in Plaintiffs' complaint does not include the proposed *new* class mentioned in Plaintiffs' *ex parte* application.

The pleading rules require that Plaintiffs file a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Sprint is not required to contest unpleaded claims and the court cannot certify a class that is not alleged in the complaint.

While Plaintiffs' application is vague, it appears they now seek to represent a nationwide class of Sprint customers who received certain new charges in their recent bills and who contend they are entitled to terminate their contract without paying an ETF. However, Plaintiffs will not, under any circumstances, be able to pursue these new claims as a nationwide class action because, among other things, individual issues will swamp common issues. Sprint's subscribers include business plan customers, government customers and residential customers. Business plan and governmental customers often negotiate the charges that apply to their accounts and the new charges Plaintiffs challenge

do not apply to many of those accounts. As explained more fully below, the circumstances of individual residential consumers also vary.

For example, customers have agreed to waive their rights to sue on a classwide basis. The terms and conditions provide:

> "TO THE EXTENT ALLOWED BY LAW, WE EACH WAIVE ANY RIGHT TO PURSUE DISPUTES ON A CLASSWIDE BASIS; THAT IS, TO EITHER JOIN A CLAIM WITH THE CLAIM OF ANY OTHER PERSON OR ENTITY, OR ASSERT A CLAIM IN A REPRESENTATIVE CAPACITY ON BEHALF OF ANYONE ELSE IN ANY LAWSUIT, ARBITRATION OR OTHER PROCEEDING."

*See* Mansfield Decl., Exh. 7, p. 35.

Plaintiffs' papers include declarants from around the country. However, there are stark variances in state laws regarding class action waivers, as well as other matters. In short, Plantiffs' new unpleaded assertions about a purported nationwide class will not survive if they are ultimately alleged in a complaint.

## VII.

## PLAINTIFFS' PROPOSED DISCOVERY CANNOT BE DONE ON AN EXPEDITED BASIS

Even if the discovery sought by Plaintiffs were relevant to actual claims included in their lawsuit, and even if Plaintiffs were entitled to go forward with discovery while Sprint’s motion to dismiss is pending, it is clear that the discovery Plaintiffs seek cannot, and should not, be provided on an expedited basis.

Plaintiffs' proposed discovery is neither narrowly tailored nor reasonably focused. The proposed discovery seeks a wide range of documents and information that will, to some extent, be impossible to provide. The balance can be addressed only through collection, review, and production of both paper documents and electronically stored information (ESI). For example, several of the requests seek information contained in proprietary databases that track customer information. These databases were not designed for litigation purposes and contain many different fields of data which, depending on the nature of the information sought, may or may not be relevant.

Based on the research that Sprint and its counsel have conducted to date, it appears that much of the information being sought is not contained within a single database, nor is it contained within the program run against these databases. As a result, to extract data responsive to the requests will likely require programming by individuals with expertise in that system, or the retention of a third party vendor specializing in the extraction of data from such systems.

The complexity of these systems, the compressed response period demanded by Plaintiffs, the sweeping nature of their requests, and the complexity of the document and data sources involved would necessarily result in *precisely* the sort of error-prone and incomplete discovery of ESI that the amended Federal Rules were designed to avoid.

For example, in Proposed Special Interrogatories 2, 3 and 6 Plaintiffs ask:

> <u>SPECIAL INTERROGATORY NO. 2</u>
> Of YOUR customers who have indicated to YOU a desire to cancel service based on the imposition of FEES, state the number of such CUSTOMERS who have received authorization to cancel their service without having a termination fee imposed.
>
> <u>SPECIAL INTERROGATORY NO 3</u>
> State the number of complaints YOU have received from any

source RELATING to any claim that YOUR representatives are not recognizing customers' right to cancel service under the Terms and Conditions of Service.

<u>SPECIAL INTERROGATORY NO 6</u>
State the number of customers who have claimed to YOU that imposition of FEES triggered their right to cancel service without having an early termination fee imposed, yet YOUR representatives have not provided them such relief.

To the extent that this information exists, it resides in Sprint's customer care records. Sprint has over 50 million subscribers. Sprint's preliminary investigation reveals that the records, which are stored electronically, are found in at least two different relevant systems, "Ensemble" and "P2K," corresponding to the iDen (Nextel) and CDMA (Sprint) wireless networks. In general, these systems are optimized for responding to questions about individual customers -- not for litigation searches to establish the total number of customers who made a given type of complaint. Data in the Ensemble system, for example, can be searched and exported, but the system is designed to produce results on an individual customer basis, and that export must be reformatted to be useful. Similarly, data in the P2K system can be searched and exported, but is designed to produce results on an individual customer basis. P2K has a further limitation, namely that its reporting is generally based on using a "screen snapshot" of the records in question -- a process not suitable for large data extractions.

At this point, and based on preliminary investigation, it is not clear that a search could be constructed to answer Plaintiffs' questions, and therefore there are significant questions as to whether the data is maintained in a form that would be considered reasonably accessible. *See* Fed. R. Civ. P. 26(b)(2)(B).

In sum, there is simply no way to "press a button" and reveal which customer records reflect the fact patterns sought by Plaintiffs. If discovery of these databases is attempted, it may require the retention of a third party expert to see whether

the data can be extracted in a form suitable for searching and review, while maintaining the systems' function and protecting them from harm. That process would require the involvement of the parties and possibly the Court, and would take a number of months. It could also be extremely expensive and any such expense should be borne by Plaintiffs.

Plaintiffs' proposed document requests present similar problems. For example, Plaintiffs seek:

> <u>REQUEST NO. 4</u>
> All DOCUMENTS that would indicate the number of requests for cancellation of service YOU have received from YOUR customers since YOU notified them of the imposition of the FEES, and how many have been either honored or rejected.
>
> <u>REQUEST NO. 5</u>
> All DOCUMENTS that evidence any complaints YOU have received from any source RELATING to any claim that YOUR representatives are not recognizing customers' right to cancel service under the Terms and Conditions of Service

As with the proposed interrogatories, it simply may not be possible to locate these documents. These materials are subject to the same difficulties noted above in connection with the Interrogatories -- i.e., responses would require extensive review of the customer care databases, without any simple way, short of individualized review, to narrow those records down to those that are responsive. Moreover, this request may require Sprint to include, in its search of electronic documents, those Sprint custodians who may have received information in email form, which would require searching each custodian's computer individually and downloading relevant files (*i.e.*, it is not possible to do a comprehensive search from a centralized email server location).

Expedited discovery in this case is a lose-lose proposition. It could only be accomplished in an incomplete and non-standardized manner, using procedures likely to miss documents and information relevant to Plaintiffs' unasserted claims. In particular, to

the extent that the requested information can be obtained at all, expedited discovery would not permit a thoughtful and deliberate approach. At the end of Plaintiffs' proposed fire drill, considerable time and financial resources will have been expended, only to face (no doubt) the all-too common criticisms regarding partial ESI responses, incomplete custodian lists, inadequate search methodologies, etc. To ensure that discovery in this case proceeds in an orderly and appropriate fashion, with litigation limited to the merits rather than to satellite disputes over ESI concerning claims not in issue, the Court should refuse Plaintiffs' request for expedited discovery.

Finally, many of Plaintiffs' proposed discovery requests implicate important privacy laws and policies. For instance, Exhibit 1 to Plaintiffs' proposed 30(b)(6) deposition notice seeks:

> "All documents that relate to any communications between defendants' representatives and any customer regarding the Fee, including any communications relating to customer complaints over customers being advised that they could not cancel their service based upon the imposition of the Fee."

Other requests similarly call for the production of consumer records. However, California Public Utility Code § 2891(a) restricts Sprint's ability to provide customer information without written consent by the customer. Further, other California privacy laws limit the dissemination of such information. *See* Cal. Const., Art. I, sec. 1. It is interesting that Plaintiffs, who claim to be acting in the interests of consumers, offer proposed discovery that would run roughshod over important privacy protections.

## VIII.

## PLAINTIFFS HAVE PRESENTED IRRELEVANT AND MISLEADING ARGUMENTS IN AN EFFORT TO CONFUSE THE ISSUES

In support of their application, Plaintiffs attached a copy of an unpublished, unrelated state court order in an attempt to improperly influence this Court. That case dealt with different facts, different fees, and different issues.

Further, the declaration of Art Neill contains "complaints" by customers about a requirement that if customers want to "port" their telephone number to another wireless carrier after cancellation, the customers cannot cancel their account (or phone) until after the number has been transferred to the customers' new service provider. In some instances, this requirement necessitates an additional call to Sprint. Mr. Neill fails to inform the Court that a customer must port his or her number prior to cancelling service because a number cannot be ported from an inactive account. This is the established practice in the cell phone industry. If Plaintiffs disagree with this requirement they should raise their concerns with the FCC – not criticize Sprint for complying with an industry standard.

## IX.

## CONCLUSION

For the foregoing reasons Sprint respectfully requests that the Court deny Plaintiffs' *ex parte* application.

DATED: February 12, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

s/James J. Mittermiller
Attorneys for Defendants SPRINT SOLUTIONS, INC. and SPRINT SPECTRUM L.P.
E-mail: jmittermiller@sheppardmullin.com