Alan M. Mansfield (SBN 125998)
alan@rosnerandmansfield.com
John W. Hanson (SBN 214771)
john@rosnerandmansfield.com
ROSNER & MANSFIELD, LLP
10085 Carroll Canyon Road
San Diego, CA 92131
Tel: (858) 348-1005
Fax: (858) 348-1150

Attorneys for Plaintiffs

Art Neill (SBN 246717)
art@ucan.org
UTILITY CONSUMERS' ACTION NETWORK
3100 Fifth Ave., Suite B
San Diego, CA 92103
Tel: 619-696-6966
Fax: 619-696-7477

Attorneys for UCAN

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UTILITY CONSUMERS' ACTION NETWORK and ERIC TAYLOR, on behalf of themselves, their members and/or all others similarly situated, as applicable,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT SOLUTIONS, INC.; et al.,<br><br>Defendants. | CASE NO. 07-CV-2231-W (LSP)<br><br>**CLASS ACTION**<br><br>PLAINTIFFS UTILITY CONSUMERS' ACTION NETWORK'S AND ERIC TAYLOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND, ALTERNATIVELY, MOTION TO STRIKE [F.R.C.P. 12(b)(6) and 12(f)]<br><br>Date: March 10, 2008<br>Time: 10:30 a.m.<br>Judge: Hon. Thomas J. Whelan<br>Courtroom: Seven |

TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . 1

II. STANDARDS APPLICABLE TO THIS MOTION AND SUMMARY OF FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT . . . . . 2

III. THE VARIOUS CAUSES OF ACTION CHALLENGED BY SPRINT ARE PROPERLY PLEAD IN THE FIRST AMENDED COMPLAINT . . . . . 5

A. Plaintiffs' Claim for Damages Under the CLRA is Proper . . . . . 5

B. The Federal Communications Act and State Cramming Laws Apply to All Class Members' Accounts . . . . . 8

C. Plaintiffs' Claim for Conversion is Also Proper Under These Circumstances . . . . . 13

IV. SPRINT'S ALTERNATIVE MOTION TO STRIKE SHOULD ALSO BE DENIED . . . . . 14

V. CONCLUSION . . . . . 15

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160 (E.D. Mich. 2006) . . . . . . . . 9

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) . . . . . . . . 2

*Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405 (C.D. Cal. 2005) . . . . . . . . 2

*Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083 (9th Cir. 1998) . . . . . . . . 2

*In re 2 The Mart.com Sec. Litig.*, 114 F.Supp.2d 955 (C.D. Cal. 2000) . . . . . . . . 2

*Montecino v. Spherion Corp.*, 427 F.Supp.2d 965 (C.D. Cal. 2006) . . . . . . . . 2

*Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002) . . . . . . . . 7

*VonGrabe v. Sprint PCS*, 312 F.Supp.2d 1285 (S.D. Cal. 2003) . . . . . . . . 7

### STATE CASES

*Barquis v. Collection Merchants Association*, 7 Cal.3d 94 (1972) . . . . . . . . 15

*Chazen v. Centennial Bank*, 61 Cal.App.4th 532 (1998) . . . . . . . . 13

*Cortez v. Purolator Air Filtration Prod.*, 23 Cal.4th 163 (2000) . . . . . . . . 8

*Haigler v. Connelley*, 18 Cal.2d 674 (1941) . . . . . . . . 13

*Heckmann v. Ahmanson*, 168 Cal.App.3d 119 (1985) . . . . . . . . 13, 14

*Kagan v.Gibraltar Savings & Loan*, 35 Cal.2d 582 (1984) . . . . . . . . 6, 7

*Stop Youth Addiction, Inc. v. Lucky Stores*, 17 Cal.4th 553 (1998) . . . . . . . . 15

### FEDERAL STATUTES

Code of Federal Regulations, Title 47

Section 64.2400 . . . . . . . . 9
Section 64.2401, *et seq.* . . . . . . . . 9

Federal Rules of Civil Procedure

Rule 12 . . . . . . . . 7
Rule 15 . . . . . . . . 2

United States Code, Title 47

Section 201 . . . . . . . . 8, 9, 10, 12
Section 251 . . . . . . . . 4
Section 254 . . . . . . . . 11
Section 615 . . . . . . . . 11

## TABLE OF AUTHORITIES

Page

### STATE STATUTES

California Business and Professions Code

Section 17200, *et seq.* . . . . . . 4
Section 17200 . . . . . . 8
Section 17203 . . . . . . 8

California Civil Code

Section 1565 . . . . . . 14
Section 1670.5 . . . . . . 14
Section 1750, *et seq.* . . . . . . 1
Section 1752 . . . . . . 7
Section 1780 . . . . . . 5, 8
Section 1782 . . . . . . 1, 5, 7

California Public Utilities Code

Section 431 . . . . . . 11
Section 433 . . . . . . 11
Section 2881 . . . . . . 11
Section 2890 . . . . . . 12, 13

California Revenue and Taxation Code

Section 41020 . . . . . . 11

### OTHER

Assembly Committee Report, June 29, 1998 (S.B. 278 at 3) . . . . . . 13

FCC Declaratory Rule Regarding Broadband Internet wireless Networks, 22 F.C.C.Rcd. 5901 at ¶22 (2007) . . . . . . 4

*FCC Declaratory Ruling In Matter of Appropriate Regulatory Treatment for Broadband Access to the Internet Over Wireless Networks*, 22 F.C.C.Rcd. 5901 (May 2007) . . . . . . 10

*Implementation of the California Intrastate High Cost Fund*, D.91-09-042, 1991 WL 531188 (Cal. PUC 1991) . . . . . . 11

*In re Universal Service and Compliance with Assembly Bill 3643*, D.96-10-066 1966 WL 651546 (Cal. PUC 1996) . . . . . . 11

*In the Matter of Telephone Number Requirements for IP-Enabled Services Providers*, 22 F.C.C.Rcd. 19531 (2007) . . . . . . 11

## I.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Based on the allegations of the First Amended Complaint ("FAC") and the facts underlying this case as detailed herein, the Motion of defendants Sprint Solutions, Inc. and Sprint Spectrum LP ("Sprint") to Dismiss or Strike portions of the FAC must be denied. The Court should order defendants promptly Answer the FAC so that the parties can address the important issues raised in this action, as the arguments asserted in their Motion do not withstand scrutiny.

First, Sprint asserts that plaintiff cannot assert a class-wide claim for damages under the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, because Mr. Taylor did not comply with the notice provisions of Section 1782. To reach this conclusion, defendants misrepresent what the original Complaint actually alleged and sought as a remedy. Plaintiff properly complied with the requirements of the Act, and Sprint makes no claim that it has offered a full and complete remedy for all affected consumers consistent with what the law requires.

Second, contrary to their assertion in the Motion to Dismiss, it is Sprint, not plaintiffs, that seek to have it both ways. The bill Sprint sends out to Class members is a telephone bill, as it is identical in format and structure to a bill for wireless services. See FAC, Exs. 1-4. Indeed, those bills refers consumers to the same Terms and Conditions for Service that are applicable to information services only customers, telecommunication services only customers, and telecommunications services and information services customers, as each bill is classified as "your bill". *See* http://nextelonline.nextel.com/en/legal/legal_terms_privacy_popup.shtml. The bill also refers to the same "slamming" issues that apply to telephone users. FAC, Ex. 1 at 2. As a result, under a recent FCC ruling that Sprint fails to discuss in its Motion, plaintiffs properly assert claims for violation of the Federal Communications Act and for "cramming" under California law.

Third, Sprint asserts that the cause of action for conversion fails because plaintiffs only seek the return of money they paid to Sprint. However, the law of conversion is not so limited. While money in some circumstances cannot be the subject of a claim for conversion, where the party is requesting the return of a specific and identifiable sum, a cause of action for conversion is proper.

///

Finally, the motion to strike portions of the First Cause of Action and for punitive damages fails because the First Cause of Action properly defines several "unlawful" business practices, and the claims that form the basis for seeking punitive damages are proper.

## II.

## STANDARDS APPLICABLE TO THIS MOTION AND SUMMARY OF FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

As the Ninth Circuit held in *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993), "In federal court, dismissal for failure to state a claim is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' [citation]. Review is limited to the complaint; 'evidence outside the pleadings . . . cannot normally be considered in deciding a 12(b)(6) motion.' [citation] 'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to *offer* evidence to support the claims.' [citation]." (Emphasis in original).

Furthermore, as with motions to dismiss, when deciding a motion to strike, the court "must view the pleading under attack in the light most favorable to the pleader." *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005); *In re 2TheMart.com Sec. Litig.*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000). A motion to strike must be denied "if any doubt exists whether the allegations in the pleadings might be relevant to the action." *Montecino v. Spherion Corp.*, 427 F.Supp.2d 965, 967 (C.D. Cal. 2006). Thus, for purposes of this Motion, the following allegations of material fact taken from the First Amended Complaint are to be taken as true and construed in the light most favorable to plaintiffs. *Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). Even then, under Fed. R. Civ. Proc. 15, the Court must liberally grant leave to amend such claims if the Court finds the allegations challenged by Sprint require clarification.

Since at least September 2006 (and apparently until January 1, 2008), Sprint has charged Class members (defined at FAC, ¶14 as all Sprint customers who obtained data service or data card plans from Sprint and were improperly billed for amounts not properly imposed on their accounts) a Federal Wireless Number Pooling and Portability Fee and a Federal E911 Fee under a "Taxes, Surcharges & Fees" heading on monthly bills. In addition, following a company-wide account

number change in April 2007, Class members also began to be charged the Federal-Univ. Serv. Assess Non-LD and California State-PUC User Fee. California State-911 Tax, California State-CA High Cost Part A, California State-CA High Cost B, California State-CA Relay Service Fund, California State-Tele Fund Charge and California State-Universal Lifeline Serv. Charge as "Additional Sprint Charges". These charges amounted to several dollars per month per customer, and Sprint has over a million data service plan customers. FAC, ¶26.

Based on their title and classification, the line items in this section are to be used to identify taxes paid to government agencies or that are mandated to comply with government-imposed programs for the correct type of accounts. However, as the Class members' accounts are for data transmission services, these taxes, fees and surcharges are for cellular telephones and not properly imposed on such accounts. While data service plan customers are assigned a telephone number by Sprint, it is not a true telephone number in that it only processes data transmissions. Anyone who dials the assigned phone number will be prompted to leave a voicemail, but the transmission card has no keypad, screen or any other way to alert Class members of received calls or text messages. FAC, ¶27.

In addition, because Class members only have a data card that is used for Internet access, they cannot access SMS or text messages. However, because there is a telephone number associated with the card, Class members can receive unauthorized text messages they cannot retrieve or review but are billed for by Sprint. Class members have thus also received charges for text messages, even though a data card is incapable of sending or receiving text messages, because the data card is plugged into a laptop computer. When faced with inquiries over such charges, Sprint representatives either claim they do not know about them or that there is nothing that can be done to stop them, as a telephone number is assigned to the account. Thus, while if customers notice the charges and complain they can be credited by Sprint, customers must spend time repeatedly with Customer Service representatives explaining why such charges are unauthorized as a data card should not send or receive text messages. This also improperly places the burden on customers to challenge charges that should not be included on bills in the first place. FAC, ¶28-29.

///

The Government Fees and Taxes section of Sprint's bills must include only items that are required to be collected from customers under the law and must not be labeled or described in a way that could mislead consumers, under 47 U.S.C. §251. Wireless Broadband Internet Services are not "telecommunication services" but rather an "information service". Information services are not subject to requiring number portability, enhanced 911, and contributing to the FCC's Universal Service Fund. *See, e.g.*, FCC Declaratory Rule Regarding Broadband Internet Wireless Networks, 22 F.C.C. Rcd. 5901 at ¶22 (2007) (Plaintiffs' Request for Judicial Notice, Ex. 3). In addition, any billing for text messages to such accounts is improper, as these accounts cannot access text messages. Sprint's monthly bills fail to comply with these principles and impose charges that are not "reasonable", as such charges never should have appeared on Class members' bills in the first place. FAC, ¶32-33, 40.

No state or federal regulatory agency has either authorized the challenged conduct or has primary, exclusive or any jurisdiction over the wrongful conduct at issue herein nor can provide the complete relief prayed for in this action, as the relevant state and federal regulatory agencies possess neither exclusive nor primary jurisdiction over the billing or disclosure methods of such charges by defendants and as the FCC has "de-tariffed" the entire regulatory scheme governing such services. The focus of this litigation is defendants' uniform method of non-disclosure and misrepresentation of the reasons and bases for charging these fees and text message charges to its customers, and the resulting injury to Sprint customers. FAC, ¶8.

Class members have been uniformly exposed to these practices, and can be expected to reasonably believe that Sprint would not misrepresent the nature of the amounts charged to them as fees and taxes and would not refuse to provide a full automatic credit once the problem was brought to Sprint's attention. As a result, Class members have suffered injury in fact and a loss of money or property by having paid such amounts and not receiving a return, credit or cancellation of the taxes and fees detailed herein and of any improperly paid or retained monies with interest thereon. FAC, ¶¶36-39. The First Amended Complaint asserts causes of action for violation of the Federal Communications Act ("FCA"), Business & Professions Code §17200, *et seq.* ("UCL"), breach of contract, the Consumers Legal Remedies Act ("CLRA"), the State's anti-cramming laws, money had

and received and unjust enrichment, conversion and declaratory relief, and seeks actual and punitive damages, pre- and post-judgment interest, equitable monetary relief, fees and costs, and injunctive relief. FAC, ¶¶42-83; and Prayer for Relief.

In response to plaintiffs' pre-litigation demands, Sprint has claimed it has refunded *almost* all of the excess fees charged in May and June, 2007, but did so without interest, and has not clarified whether it has done so to former customers. UCAN had requested Sprint provide notice of the reason for this promised credit to all Class members in the bill in which the credit occurs, as well as explain the method for determining the amount of the credit so people can determine if it is accurate. Sprint has not done so, nor has it provided an accounting establishing that it has done so. Nor has Sprint refunded the Federal Wireless Number Pooling and Portability and Federal E911 fees. Nor has Sprint stated that it has fully refunded improper text messaging charges or put systems in place to make sure all text messaging is blocked to such accounts. FAC, ¶6, 30, 31, 34, 35, 39, 40. *See also* Plaintiffs' Request for Judicial Notice, Exs. 1 and 2.

## III.

## THE VARIOUS CAUSES OF ACTION CHALLENGED BY SPRINT ARE PROPERLY PLEAD IN THE FIRST AMENDED COMPLAINT

Sprint does not challenge the First and Third Causes of Action in their entirety, nor the Second, Fourth and Sixth Causes of Action. The few Causes of Action or claims Sprint does challenge are proper under both federal and state law.

### A. Plaintiffs' Claim for Damages Under the CLRA is Proper

To understand why Sprint's argument about the CLRA damage claim in the Third Cause of Action is without merit, the following is a brief overview of the structure of the CLRA. Under Civil Code §1780(a), a Class member can obtain four types of relief: (1) actual damages; (2) injunctive relief; (3) restitution; and (4) punitive damages. Under Cal. Civ. Code §1782(d), a party can file a lawsuit seeking relief other than for damages without any sort of pre-litigation demand under Civ. Code §1780. Plaintiffs did so here because it appeared we would need to seek immediate injunctive relief, which we were later able to resolve, at least in part, with Sprint. Under §1782(c), a party cannot seek damages if a company, in response to a demand: (1) identifies all consumers affected,

and (2) gives them the complete relief demanded in the CLRA "cure" letter. However, if they do not – and *Kagan v. Gibraltar Savings & Loan*, 35 Cal.2d 582, 592 (1984) makes clear this means all relief requested, including interest on all sums illegally collected – the Complaint can be amended to include a claim for damages. As the Court held in *Kagan*:

> As Gibraltar did not meet the conditions of section 1782, subdivision (c) in response to notification of its alleged class violations of section 1770, a class action for damages pursuant to section 1781, subdivision (a) may lie. Moreover, as discussed below, pl aintiff may properly bring the action on behalf of herself and as a representative of the class.
>
> Section 1782, subdivision (b), states that "[except] as provided in subdivision (c)," an individual action for damages will not lie under section 1780 if an appropriate individual remedy has been made. This exception permits a consumer who has notified a prospective defendant of alleged class violations of section 1770 and obtained individual relief, to nonetheless bring a class action for damages under section 1781 if the prospective defendant has not met the conditions of section 1782, subdivision (c) by providing informal relief to the entire class. As noted *ante* the consumer may also seek injunctive relief which, under section 1782, subdivision (d), does not require compliance with the 30-day notice requirement.

*Id.* at 592.

Understanding these facts and the law, the Court can summarily dispose of Sprint's arguments. First, this is not a basis for a motion to dismiss, as Sprint does not request the Court dismiss all aspects of the CLRA claim but only the claims for damages. In addition, the CLRA cause of action clearly did not originally seek damages, as set forth in paragraphs 60 and 61 of the original Complaint:

> "In compliance with the provisions of California Civil Code §1782, plaintiff is giving written notice to Sprint *of the intention to seek damages* under California Civil Code §1750, *et seq.*, unless Sprint provides an appropriate correction or refund *plus interest* and other appropriate relief to all Class members entitled to relief under the CLRA. . . . *If* Sprint fails to provide such relief and adequately respond to the demand to stop charging such fees *in toto*, provide clear and unambiguous notice of the change, pay refunds and interest and otherwise rectify the wrongful conduct described above on behalf of all Class members who may be entitled to relief under the CLRA, *plaintiff will seek* an award of all actual and exemplary damages permitted for violation of the CLRA, including for statutory damages of $1,000 and/or up to $5,000 per consumer who qualify as a 'senior citizen' under the CLRA. The Class members *a re presently entitled to and plaintiff seeks*, pursuant to California Civil Code §1780(a)(2), an order enjoining the above-described wrongful acts and practices of defendants, [and] providing restitution to all members of the Class who are so entitled. . . ." (Emphasis added).

Thus, the original Complaint at ¶¶60 and 61 was quite clear that plaintiff had sent a CLRA demand letter, and that if Sprint failed to provide the full response that letter demanded, the Complaint would

be *amended* to seek actual, punitive and statutory damages – but was not then doing so.

Sure enough, Sprint failed to do so – refusing to pay interest on the monies refunded, refusing to give proper notice, and refusing to provide all the relief requested to all affected consumers. See Plaintiffs' Request for Judicial Notice, Exs. 1 and 2.[1] The First Amended Complaint was filed after the passage of the 30-day window for Sprint to provide a response as set forth in Cal. Civ. Code §1782(a) and (d), and these paragraphs were amended to make clear that the CLRA cause of action now sought damages. This makes the situation entirely different than in *VonGrabe v. Sprint PCS,* 312 F.Supp.2d 1285 (S.D. Cal. 2003), where the original complaint there admittedly sought damages under the CLRA and there was no attempt to send the letter required under the statute until after the fact. In addition, Sprint has made its position clear that it will not fully comply with the requirements of the CLRA in any event, as required by *Kagan*. See Request for Judicial Notice, Ex. 1.

The most Sprint can argue is that, despite these clear and unambiguous allegations, the original Complaint sought damages as a result of incorporating by reference another paragraph from a breach of contract claim, and the original Prayer for Relief. However, in reviewing a motion to dismiss under Rule 12(b)(6), the Court must construe all inferences from the allegations in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). While the above paragraphs are unambiguous that damages were not originally sought under the CLRA, if Sprint's counsel thought there was any ambiguity we would have clarified that issue – and certainly did so in the First Amended Complaint. This is particularly true as the remedies provided under the CLRA are cumulative to any remedies available under other laws, pursuant to Cal. Civ. Code §1752. In addition, the Prayer for Relief made clear it was only seeking damages for those claims under which it was proper at that time to do so – which was not the case for the CLRA claim. Sprint is trying to create a straw man argument by basing its claim on allegations that are not present and ignoring the clear allegations set forth above, then neglecting to point out that if the allegations

---

[1] Since Sprint requests judicial notice of the original CLRA letter, to understand the full picture the Court needs to also see Sprint's response to the CLRA letter and plaintiffs' reply explaining its deficiencies, which are attached to the Request for Judicial Notice as Exs. 1 and 2.

were as they claimed they would have asked for clarification but never did.

Second, Sprint's argument that even if damages were not sought restitution was, and damages and restitution are the same form of relief, is contradicted by the actual language of the statute. These are separate types of relief in §1780 (a) and (c); only (a) requires the letter before amending the CLRA cause of action to include a damage claim. Under California law, damages and restitution are recognized as being separate and distinct remedies, even if they may to some degree overlap in a particular circumstance. *Cf. Cortez v. Purolator Air Filtration Prod.*, 23 Cal.4th 163, 177 (2000) (withheld wages are restitution even though can also be damages, and concluding "orders for payment of wages unlawfully withheld from an employee are also a restitutionary remedy authorized by section 17203. The employer has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition as defined by section 17200. The employee is, quite obviously, a "person in interest" (§ 17203) to whom that money may be restored.")

Sprint leaves out an important fact– it has refused to provide the complete remedy required to avoid a claim for damages under the CLRA, and gives no indication it would do otherwise. Plaintiffs fully complied with the requirements of the CLRA to seek damages under the CLRA, and Sprint refused to avail itself of that opportunity. The First Amended Complaint at ¶¶6, 30, 31, 34, 35, 39, and 40 also explains how UCAN gave Sprint months to resolve many of these issues, and Sprint failed to do so. Sprint's attempt to avoid liability for damages under the Third Cause of Action, despite its failure to provide the relief the CLRA requires, must be denied.

**B. The Federal Communications Act and State Cramming Laws Apply to All Class Members' Accounts**

In the Fifth Cause of Action, plaintiffs allege a violation of §201(b) of the Federal Communications Act ("FCA"), 47 U.S.C. 201(b), arising out of Sprint's improper charging of taxes, fees, and surcharges for "telecommunication services" that appear on Class members' "information service" bills, as well as unauthorized charges for text messages. As the Class members have only contracted with Sprint for information services, Sprint is either: 1) improperly applying these taxes, fees, and surcharges and billing for text messages to an information service, or 2) billing for a telecommunication service it is not disclosing and not providing. FAC, ¶69-70.

In either situation, the charges would be unjust and unreasonable, and thus violative of the FCA. Section 201(b) of the Federal Communications Act requires: "All charges, practices, classifications, and regulations for and in connection with interstate communications by radio shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." Plaintiffs are not asking the Court to consider the amount or reasonableness of the charges. Rather the charges are "unjust and unreasonable" and thus "unlawful" *per se*, because the Class did not contract for telecommunication services and Sprint is assessing these charges without providing an additional service or are improperly assessing these charges to an information service. Such claims are similar to those asserted in *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 172 (E.D. Mich. 2006), where the Court, in the context of granting judgment on the pleadings in plaintiffs' favor on the issue, concluded such billing claims are proper under the FCA: "The defendant asserts that traditionally this statute was never applied to billing practices. That argument may have been plausible at one time, but the Court believes that it is unconvincing because the statutory language plainly permits such a construction."

In addition, as alleged in the First Amended Complaint at ¶33, to ensure that companies like Sprint give consumers the essential information they need to protect themselves from fraud and to make informed choices, under federal Truth-In-Billing requirements (47 C.F.R. §64.2401, *et seq.*) Sprint's monthly bills must:

(a) Be clearly organized;

(b) Identify the service provider associated with each charge;

(c) Contain full and non-misleading descriptions of charges; and

(d) Use standardized labels when referring to certain line item charges relating to federal regulatory action, such as local number portability and subscriber line charges.

Charges contained on such bills must be sufficiently clear and specific enough in conveying information to enable customers to accurately assess and understand that the costs assessed for such services conform to their understanding of the amount charged and the services provided. Under 47 C.F.R. §64.2400(b), these rules apply to all telecommunications common carriers – which Sprint cannot deny and is what the First Amended Complaint alleges Sprint is at ¶25.

To avoid this legal liability, Sprint focuses its arguments solely on the application of the second aspect of this claim – the Truth-In-Billing regulations – and not the first basis for liability under Section 201(b), claiming this regulation does not apply to Sprint for "information service" billing. This alone justifies the Court summarily denying Sprint's challenge to this Cause of Action, as it does not attempt to fully dispose of all aspects of this Cause of Action, but rather only the allegations about the Truth-In-Billing regulations.

In addition, the problem with this argument is that to reach this conclusion, Sprint refers to the wrong FCC Decision. In *FCC Declaratory Ruling In Matter of Appropriate Regulatory Treatment for Broadband Access to the Internet Over Wireless Networks*, 22 F.C.C.Rcd. 5901 (May 2007) (Request for Judicial Notice, Ex. 3) – which decision is referred to at ¶¶40 and 70 of the First Amended Complaint and thus is a part thereof – the FCC concluded that the services at issue here are "information services" – making the charges in question improper as a matter of law. It went on to note: "Should the utility provider choose to offer the transmission component of wireless broadband Internet Access as a telecommunications service, the regulatory regime appropriate to the nature of the telecommunications service will apply. For example, if a wireless broadband Internet access provider chooses to offer the telecommunications transmission component as a telecommunications service, then it is a common carrier service subject to Title II." *Id.* at ¶33, at 13-14. That is why plaintiffs' allegations are consistent. As Sprint has not segregated its information service from its telecommunications service for billing purposes, plaintiffs allege it is subject to the Truth-In -Billing regulations set forth above. However, even if the Court finds Sprint is not, it is still subject to Section 201(b) and as a provider of "information services" is imposing charges that are not to be applied to such services and thus are "unreasonable". Thus, by its own admission, Sprint is violating the FCA, as it admittedly is only providing "information services" to Class members. It is Sprint that is attempting to have it both ways by asserting that this claim should be first referred to the FCC, while at the same time attempting to argue the relevant provisions of the FCA do not apply to it.

Contrary to Sprint's assertions, the bill Sprint sends to Class members is a telephone bill. Sprint charged Class members for the following "Additional Sprint Charges": Federal-Fed 911 Fee,

Federal-Fed Local Number Portability, Federal-Univ Serv Assess Non-LD and California State-PUC User Fee. However, the Federal-Fed 911 Fee is a fee assessed by Sprint to recover costs associated with providing 911 emergency services through cellular telephone services. See *the Wireless Communications and Public Safety Act of 1999*, 47 U.S.C. §615. The Federal Local Number Portability is a fee assessed by Sprint to recover costs related to the porting of telephone numbers – which is unnecessary for "information service" accounts. The FCA and the Commission's rules define number portability as "the ability of users of telecommunications services to retain, at the same location, existing telecommunications numbers without impairment of quality, reliability, or convenience when switching from one telecommunications carrier to another." *In the Matter of Telephone Number Requirements for IP-Enabled Services Providers*, 22 F.C.C.Rcd. 19531 (2007). They are by definition charges for telecommunications services, not information services.

In addition, the "Federal-Univ Serv Assess Non-LD" is a fee imposed by Sprint to recover costs charged to providers of telecommunication services. 47 U.S.C. 254(c) and (d). The "California State-PUC User Fee" is a surcharge assessed by telephone companies to pay for their annual fee owed to the California Public Utilities Commission under California Public Utilities Code §§ 431 and 433. The "California State 911-Tax" is a surcharge imposed on persons for telecommunication services in California pursuant to California Revenue and Tax Code §41020. The "California State-CA High Cost Part A" is a surcharge assessed to end users of telecommunication services. *Implementation of the California Intrastate High Cost Fund*, D. 91-09-042, 1991 WL 531188 (Cal. PUC 1991). The "California State-CA High Cost Part B" and the "California State-Tele Fund Charge" is a surcharge charged by the State of California to end-users of telecommunication services. *In re Universal Service and Compliance with Assembly Bill 3643.* D. 96-10-066 1996 WL 651546 (Cal. PUC 1996). The "California State- CA Relay Service Fund" is a surcharge collected by the California Public Utilities Commission from subscribers of telephone services under Pub. Util. Code §2881. The "California State-Universal Lifeline Service" charge is assessed to telecommunication carriers under California Public Utilities Commission General Order 153. As the First Amended Complaint alleges at ¶30, and as shown in Ex. 1 to plaintiffs' Request for Judicial Notice, Sprint has already admitted imposing such charges was in error. Yet these are

the same nature of "telephone" charges Sprint continued to impose on Class members through December 2007. Sprint fails to explain how the one set of charges was admittedly improper and therefore unreasonable, while the additional charges that continued through December 2007 were somehow proper, even though they were for the same type of telecommunications service.

As detailed above, the First Amended Complaint at ¶¶ 28-29 also details how Sprint also improperly charged Class members for text messages. Text messages are data services provided through telecommunication services. According to Sprint's own website www.sprint.com: "With SMS Text Messaging, you can use other people's wireless phone numbers to send instant text messages from your phone to their messaging-ready phones – and they can send messages to you." Yet the service Class members are charged for is a Data plan for Mobile Broadband Internet Services. As detailed above, the FCC has determined that such services are "information services". Thus, Sprint is either: 1) improperly assessing these fees to data card plans, or 2) failing to list the telecommunication service upon which it is assessing taxes, fees, and surcharges and the telecommunication service through which Class members are able to send and receive text messages. Either way, dong so is unlawful and in violation of §201 of the FCA. Thus, the Fifth Cause of Action is properly alleged against Sprint.

These allegations also constitute classic examples of "cramming"(the Eighth Cause of Action), as the California Public Utilities Code §2890(a) provides: "A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized." Sprint fails to cite any authority for the proposition that the anti-cramming laws do not apply to such services, as they are being provided by a telecommunications carrier. As discussed above, the monthly bill sent out by Sprint for these services is a telephone bill, and Sprint's Terms and Conditions of Service apply uniformly to the same charges. Class members have been assessed charges for text messages, a data service charge assessed to telecommunication services customers, and for taxes, fees, and surcharges for either an invisible telecommunication service they did not authorize or taxes, fees, and surcharges that are improperly assessed to Mobile Broadband Internet Data Plans as an "information service". Because Class members never authorized a "telecommunication service" for these plans nor text messaging, charges related to such services are

"cramming" because the charges detailed in the First Amended Complaint were not properly charged under the law. Even the legislative history of Section 2890 claims that the purpose of the "cramming" laws was to cover billing for Internet access options. *See, e.g.*, Assembly Committee Report dated June 29, 1998 for S.B. 278 at 3 (Plaintiffs' Request for Judicial Notice, Ex. 4). Thus, the Fifth Cause of Action for Violation of the Federal Communications Act and the Eighth Cause of Action for Cramming are properly plead.

**C. Plaintiffs' Claim for Conversion is Also Proper Under These Circumstances**

Sprint next asserts that plaintiffs' Seventh Cause of Action for conversion fails because plaintiffs only seek the return of money paid to Sprint. However, the law of conversion is not so limited. While normally money cannot be the subject of conversion, where the party is requesting the return of a specific identifiable sum, a cause of action for conversion is proper where the monies in question specifically belong to plaintiffs and are traceable to them, even in the absence of some form of fiduciary relationship. *Chazen v. Centennial Bank*, 61 Cal.App.4th 532, 543 (1998) (claim for conversion proper where bank improperly allowed monies to be transferred out of customer bank accounts).

The First Amended Complaint alleges in detail what monies were taken – the charges for the fees that have not been refunded to all consumers set forth in detail above, as well as the specific charges for improper text messaging fees. See FAC at ¶¶29, 40 and 77. Since these are specific identifiable sums that can be traced to particular accounts, the claim for conversion is proper. Contrary to what Sprint asserts in its Motion, the California Supreme Court in *Haigler v. Connelley*, 18 Cal.2d 674, 681 (1941), actually held that "Defendant contends that a conversion of the money is not sufficiently alleged. The more recent cases, however, indicate that a complaint charging defendant with exercising dominion over property inconsistent with the ownership of plaintiff sets forth a good cause of action for conversion where no special demurrer for uncertainty is interposed."

Class members are entitled to the specific monies taken from them, where such money was wrongfully received and retained by Sprint – which is what plaintiffs allege in ¶77 of the First Amended Complaint. *See Heckmann v. Ahmanson*, 168 Cal.App.3d 119, 135 (1985), where the Court upheld the imposition of constructive trust over monies wrongfully acquired by defendants:

"The person holding the property may have acquired it through fraud, undue influence, breach of trust, or in any other improper manner and he is usually personally liable in damages for his acts. But the one whose property has been taken from him is not relegated to a personal claim against the wrongdoer which might have to be shared with other creditors; *he is given the right to a restoration of the property itself.*" (Emphasis added.) Sprint's motion to dismiss the conversion cause of action must be denied, as this cause of action properly seeks money that Sprint illegally obtained from the Class members that is specific and identifiable.

**IV.**

**SPRINT'S ALTERNATIVE MOTION TO STRIKE SHOULD ALSO BE DENIED**

Sprint effectively concedes its claim that two statutory references in ¶45 of the First Amended Complaint under the UCL is not the proper subject of a motion to dismiss but rather a motion to strike. Sprint does not challenge the allegations of "fraudulent" and "unfair" conduct under the First Cause of Action, and only challenges two of the five unlawful business practices referenced in ¶45 of the First Amended Complaint. Under the Ninth Circuit authority stated above, unless a motion disposes of an entire cause of action it cannot properly form the basis for a motion to dismiss.

The two predicate statutes Sprint requests be stricken from that paragraph can form the basis for an "unlawful" business practice and thus are not properly stricken from the First Amended Complaint. First, ¶45 specifically references the CLRA as forming the basis for an "unlawful" business practice. As specifically alleged in ¶58 (f), to the extent defendants assert they had a contractual right to impose such charges "defendants attempted to insert an unconscionable provision in an agreement", and Class members lost money or property as a result thereof. Thus, Sprint's claim the word "unconscionable" appears nowhere in the First Amended Complaint, and thus there is no basis to assert a claim of contractual unconscionability as an "unlawful" business practice based on Civil Code §1670.5, is wrong.

In addition, Civil Code §1565 makes clear that if an agreement does not meet the requirement of proper consent it cannot be enforced (which plaintiffs allege throughout the First Amended Complaint), and §1670.5(a) states what the Court's options are if it finds a clause unconscionable,

including striking the offending provisions – an equitable remedy available under the UCL. That there may not be a right of action under a specific statute does not mean it cannot form the predicate for an "unlawful" business practice, since anything that can properly be called a business practice and that at the same time is forbidden by law is an "unlawful" business practice under the UCL. *Stop Youth Addiction, Inc. v. Lucky Stores*, 17 Cal.4th 553, 565 (1998); *Barquis v. Collection Merchants Association,* 7 Cal.3d 94, 113 (1972) (violation of venue statues formed basis for "unlawful" business practice). Thus, the alleged violation of these statutes can properly form the basis for asserting an "unlawful" business practice.

Finally, the motion to strike the claim for punitive damages is based solely on the assumption Sprint is correct about both the CLRA claim and the conversion claim. As it is wrong about both for the reasons set forth above, the punitive damage allegations are properly alleged.

## V. CONCLUSION

Based upon the above authorities, the Court should deny Sprint's motion to dismiss or strike portions of the First Amended Complaint, and order defendants file an Answer to the First Amended Complaint within 10 days of the date of the Court's ruling.

DATED: February 20, 2008 ROSNER & MANSFIELD LLP

By: /S/ Alan M. Mansfield

Alan M. Mansfield
alan@rosnerandmansfield.com
John W. Hanson
john@rosnerandmansfield.com

10085 Carroll Canyon Road, First Floor
San Diego, CA 92131
Tel: (858) 348-1005 / Fax: (858) 348-1150

Attorneys for Plaintiffs

Art Neill
art@ucan.org
UTILITY CONSUMERS' ACTION NETWORK
3100 Fifth Ave., Suite B
San Diego, CA 92103
Tel: (619) 696-6966 / Fax: (619) 696-7477

Attorneys for UCAN