Alan M. Mansfield (SBN 125998)
alan@rosnerandmansfield.com
John W. Hanson (SBN 214771)
john@rosnerandmansfield.com
ROSNER & MANSFIELD, LLP
10085 Carroll Canyon Road
San Diego, CA 92131
Tel: (858) 348-1005
Fax: (858) 348-1150

Attorneys for Plaintiffs

Art Neill (SBN 246717)
art@ucan.org
UTILITY CONSUMERS' ACTION NETWORK
3100 Fifth Ave., Suite B
San Diego, CA 92103
Tel: 619-696-6966
Fax: 619-696-7477

Attorneys for UCAN

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UTILITY CONSUMERS' ACTION NETWORK and ERIC TAYLOR, on behalf of themselves, their members and/or all others similarly situated, as applicable,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT SOLUTIONS, INC.; et al.,<br><br>Defendants. | CASE NO. 07-CV-2231-W (LSP)<br><br>**CLASS ACTION**<br><br>PLAINTIFFS UTILITY CONSUMERS' ACTION NETWORK'S AND ERIC TAYLOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)<br><br>Date: March 10, 2008<br>Time: 10:30 a.m.<br>Judge: Hon. Thomas J. Whelan<br>Courtroom: Seven |

# TABLE OF CONTENTS


Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . 2

A. Defendants' Motion is Procedurally Flawed . . . . . . . . . . 2

B. UCAN Has Properly Alleged That it Has sustained Article III "Injury in Fact" . . . . . . . . . . 4

C. The California Supreme Court and Numerous Other Courts Have Consistently Recognized the Right of Organizations Such as UCAN to Proceed in a Representative Capacity Under the UCL, Even Post-Proposition 64 . . . . . . . . . . 4

D. The Court Should Not Invoke the Primary Jurisdiction Doctrine . . . . . . . . . . 9

III. CONCLUSION . . . . . . . . . . 13

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Alaska Fish and Wildlife Federation v. Dunkle*, 829 F.2d 933 (9th Cir. 1986) . . . 3

*Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160 (E.D. Mich. 2006) . . . 10

*Brown v. MCI WorldCom Network Services*, 277 F.3d 1166 (9th Cir. 2002) . . . 8, 10

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) . . . 3

*Cetacean Community v. Bush*, 386 F.3d 1169 (9th Cir. 2004) . . . 7

*Cost Management Services, Inc. v. Washington Natural Gas Company*, 99 F.3d 937 (9th Cir. 1996) . . . 12

*Fair Hous. v. Combs*, 285 F.3d 899 (9th Cir. 2002) . . . 7

*Far Eat Conference v. United states*, 342 U.S. 570 (1952) . . . 10

*Fed. of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996) . . . 2

*Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) . . . 4, 8

*Gilmore v. Southwestern Bell Mobile Systems, L.L.C.*, 210 F.R.D. 212 (N.D. Ill. 2001) . . . 10, 11, 12

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) . . . 2, 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . 2

*McAlister v. Essex Prop. Trust*, 504 F.Supp.2d 903 (C.D. Cal. 2007) . . . 7

*MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086 (3d Cir. 1995) . . . 10

*Puerto Rico Mar. Shipping Auth. v. Federal Mar. Comm'n*, 75 F.3d 63 (1st Cir. 1996) . . . 3

*So. Cal. Hous. Rights Ctr. Ass'n v. Los Feliz Towers Hom.*, 426 F.Supp.2d 1063 (C.D. Cal. 2005) . . . 6, 7, 8

*Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976) . . . 2

*Singleton v. Wulff*, 428 U.S. 106 (1976) . . . 4

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) . . . 11, 12

*United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544 (1996) . . . 8

*United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987) . . . 10, 12

*United States v. Western Pacific Co.*, 352 U.S. 59 (1956) . . . 10

*Verizon Del., Inc. v. Covad Comm. Co.*, 377 F.3d 1081 (9th Cir. 2004) . . . 12, 13

# TABLE OF AUTHORITIES

Page

FEDERAL CASES (Cont'd)

*Waudby v. Verizon Wireless Services LLP*, 2007 WL 1560295 (D.N.J. 2007) . . . . . . . . . . . . . . 11

STATE CASES

*Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223 (2006) . . . . . . . . . . . . . . 4, 5

*Committee on Children's Television v. General Foods Corp.*, 35 Cal.3d 197 (1983) . . . . . . . . . 4

*Hall v. Time, Inc.* 158 Cal.App.4th 847 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pacific Bell Wireless LLC v. Public Utilities Comm.*, 140 Cal.App.4th 718 (2006) . . . . . . . . . . . 11

*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*, 114 Cal.App.3d 783 (1981) . . . . . 5

FEDERAL STATUTES

Federal Rules of Civil Procedure

Rule 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12
Rule 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States Code, Title 47

Section 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

STATE STATUTES

California Business and Professions Code

Section 17200, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Section 17201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Section 17204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

California Code of Civil Procedure

Section 382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

United States Constitution

Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

OTHER

FCC Declaratory Rule Regarding Broadband Internet wireless Networks, 22 F.C.C.Rcd. 5901 at ¶22 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*FCC Declaratory Ruling In Matter of Appropriate Regulatory Treatment for Broadband Access to the Internet Over Wireless Networks*, 22 F.C.C.Rcd. 5901 (May 2007) . . . . . . 9

# I.

# INTRODUCTION AND SUMMARY OF ARGUMENT

Based on the allegations of the First Amended Complaint ("FAC") and the facts underlying this case as detailed herein, the Motion of defendants Sprint Solutions, Inc. and Sprint Spectrum LP ("Sprint") to dismiss the Utility Consumers' Action Network ("UCAN") as a plaintiff and to indefinitely stay the prosecution of all the claims asserted in the FAC must be denied.

The allegations of the First Amended Complaint are straightforward – Sprint charged fees for information services that were not applicable to or accessible under the data service plans at issue. Eric Taylor, a UCAN member who is a Sprint customer, experienced the service problems and misrepresentations UCAN has investigated and alleged, and lost money and property due to those problems. FAC, ¶10(b). UCAN also alleges in ¶10(a) of the FAC that it has lost and been required to expend and divert its own resources in an attempt to redress these issues. All Sprint says in response to these allegations is that UCAN was volunteering the use of such resources for its members' benefit. That is precisely the point – when a member organization does so, it possesses direct associational standing to bring claims and also to assert claims on behalf of its members and as a class representative.

As the First Amended Complaint specifically alleges in ¶¶6, 30, 31, 34, 35, 39, and 40, UCAN has expended significant staff time and resources attempting to informally resolve the issues raised in the FAC. After substantial investigation, on or about June 22, 2007 UCAN submitted this billing issue to Sprint's Executive and Regulatory Group for resolution on behalf of Mr. Taylor and all other affected persons. On or about June 28, 2007, Ms. Jennifer Fain of Sprint acknowledged to UCAN that at least the April and May 2007 charges at issue in the First Amended Complaint had been improperly charged to Class members. Ms. Fain also represented that Sprint had fixed the issue on an ongoing basis, and would credit the accounts of all affected Class members, including Mr. Taylor. Since that time, however, while Sprint stopped imposing such charges, Sprint failed and refused to provide any notice to customers of this error, why it occurred and that their accounts would be credited. Sprint is also unwilling to explain to Class members the purpose of the credit. In addition, despite making this promise months ago, Sprint failed to actually provide the promised

credits until after this lawsuit was filed, and to our knowledge has made little to no effort to address the claims of former Sprint customers who are entitled to refunds as compared to credits. This has required UCAN to expend additional resources and staff time to simply get Sprint to live up to its promises back in June 2007, as well as to address the charges Sprint still refuses to refund. UCAN's allegations of Article III injury in the First Amended Complaint satisfy its obligation to allege facts sufficient to establish standing under a consistent line of appellate authority.

Sprint also asserts the violations of the Federal Communication Act asserted in the Fifth Cause of Action should be referred to the Federal Communications Commission ("FCC") under the "primary jurisdiction" doctrine, and that this entire action should be stayed as a result. Sprint needs to establish that every claim can only be resolved by the FCC, and that under no set of circumstances could the Court resolve any of the claims raised in the FAC as presently plead. Since Sprint cannot show as a matter of law that all, or even some, of the claims asserted on behalf of the Class can be fully resolved by the FCC, this request for an unlimited stay must be denied.

## II.

## ARGUMENT

### A. Defendants' Motion is Procedurally Flawed

As a threshold matter, at the pleadings stage UCAN's general allegations of injuries resulting from Sprint's conduct will suffice, for on a motion to dismiss the Court 'presume[s] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As long as plaintiffs allege facts that, if taken as true would create standing based on the allegations of the Complaint, a motion to dismiss on Article III standing grounds must fail. *See Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 45 n. 25 (1976) (discussing difference between motion to dismiss and summary judgment regarding standing allegations and stating that even an "attenuated" causal nexus to injury is sufficient so long as injury is in fact alleged); *Fed. of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Furthermore, as long as there remains a possibility that plaintiffs may be able to plead additional facts that are necessary to avoid dismissal of their claims, leave must be granted for plaintiffs to so amend. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 377-78 (1982). Contrary

to Sprint's argument, plaintiffs do not have the burden to "prove" they have standing to pursue the Complaint at the pleading stage of the proceedings, but merely to show their allegations are sufficient to establish Article III standing.

In addition, Sprint seeks to have the Fifth Cause of Action referred to the FCC pursuant to Fed. R. Civ. P. 12(b)(1), the "lack of subject matter jurisdiction" provision for a Rule 12 motion. However, the primary jurisdiction doctrine does not stand for the proposition that the Court has no jurisdiction of the subject of the cause of action, and presupposes the Court in fact has subject matter jurisdiction. *See, e.g., Puerto Rico Mar. Shipping Auth. v. Federal Mar. Comm'n,* 75 F.3d 63, 67 (1st Cir.1996) ("The doctrine of primary juri sdiction does not implicate the subject matter jurisdiction of the federal court."). Sprint seems to concede as such, styling this motion as a motion to dismiss under Fed. R. Civ. Proc. 12(b)(1), but then asking the Court to indefinitely stay this entire matter based on the reference of one cause of action to the FCC. Thus, as the relief Sprint requests under Rule 12(b)(1) is the dismissal of the claim on the grounds of lack of subject matter jurisdiction, which is an improper form of relief even if the primary jurisdiction doctrine applies, the Court may deny this motion on the grounds it is procedurally improper.

Finally, Sprint's arguments about Article III standing focuses only on its claim that each individual Class member claim as to the amount of taxes and other charges owed will vary for each Class member. Placing aside the fact this is premature, since this is a formulaic calculation and there is no evidence to support Sprint's assertion, Sprint does not address the claims for injunctive relief asserted in the FAC. *See Alaska Fish and Wildlife Federation v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1986) (association may properly seek injunctive and declaratory relief on behalf of its members under the *Hunt* associational standing test). Thus, since Sprint's arguments do not address all forms of relief that are sought in the FAC, this motion must be denied. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) ("In federal court, dismissal for failure to state a claim is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'").

///

///

**B. UCAN Has Properly Alleged That It Has Sustained Article III "Injury in Fact"**

UCAN is a non-profit membership organization, several of whose members are affected by the unlawful practices challenged in this proceeding. FAC ¶¶1, 10(a) (describing UCAN's large membership, several of whom have been affected by the practices at issue). UCAN also has alleged its own direct associational injury. *Id.* Accordingly, UCAN has standing to pursue claims against defendants under the standing provisions of Article III of the United States Constitution. *See, e.g., Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 183 (2000). Any person who has lost money or property as a result of unlawful conduct has by definition suffered injury in fact. *Singleton v. Wulff*, 428 U.S. 106, 112-13 (1976) (prospective monetary loss is sufficient to confer Article III standing). That is precisely what UCAN alleges in the FAC.

*Havens Realty Corp. v. Coleman, supra,* 455 U.S. at 372, is particularly instructive on this point. *Havens* involved the claims of a consumer rights organization and two "testers" sent to an apartment complex in order to "test" whether the owners were violating the Fair Housing Act by falsely and intentionally informing minorities (and only minorities) that housing was not available. *Id.* The Court specifically held the organization that had diverted resources to investigating the issue, and the tester who alleged that she was given the false information, even though she had no intention of actually renting an apartment and had expended no money, had both alleged an "injury in fact" for Article III purposes, because "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing. . . .'" *Id.* at 374.

**C. The California Supreme Court and Numerous Other Courts Have Consistently Recognized the Right of Organizations Such as UCAN to Proceed in a Representative Capacity Under the UCL, Even Post-Proposition 64**

There was no dispute an organization could maintain a claim for relief under the First Cause of Action under Bus. & Prof. Code §17200, *et seq.* ("UCL") before the adoption of Proposition 64 in 2004. *See, e.g., Committee on Children's Television v. General Foods Corp.*, 35 Cal.3d 197, 215 (1983). This did not change upon the adoption of Proposition 64, at least insofar as non-profit membership organizations are concerned. In *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223 (2006), the California Supreme Court found that the 2004 amendments to the UCL

applied to pending cases because the amendments did not work a substantive change in UCL law: "the measure does not change the legal consequences of past conduct by imposing new or different liabilities based on such conduct. [citation]. The measure left entirely unchanged the substantive rules governing business and competitive conduct. *Nothing a business might lawfully do before Proposition 64 is unlawful now, and nothing earlier forbidden is now permitted.*" *Id.* at 232 (emphasis added).

In noting that section 17204 now provides that "[a]ny person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure . . .", Justice Werdeger wrote that §382, and thus §17204, permits actions by associations on behalf of their members:

> "Code of Civil Procedure section 382 provides: 'If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.' We have held that "[s]ection 382 . . . authorizes class suits in California . . . . *Section 382 has also been interpreted as permitting associations to sue on behalf of their members.* (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal. App. 3d 783, 793 [171 Cal. Rptr. 334].)"

*Id.* at n.4 (emphasis added).

Sprint's argument that a non-profit membership organization such as UCAN does not have Article III standing to pursue such claims in this capacity is contrary to what the California Supreme Court found in *Mervyn's*. This is significant because, as CAFA now provides the jurisdictional basis for this action to be filed in federal court, if UCAN has direct standing to assert such claims in state court, it has standing to assert such claims in federal court as well.

This conclusion is consistent with a line of appellate authority recognizing the ability of membership organizations to proceed on behalf of its members and as a class representative under California law. In *Raven's Cove,* 114 Cal.App.3d at 793, the Court of Appeal addressed the issue of associational standing under C.C.P. Section 382 and held that a membership organization could proceed in such a capacity:

> "The Developer grudgingly concedes that the Association has the proper *capacity* to sue and would be a proper class representative, but argues that it has not satisfied the requirements for *standing* to maintain a class action. We do not consider apposite the Developer's authorities related to class actions. However, we need not

> deal with the question of whether the Association's cause of action for the defects in The individual units qualifies as a class action. Pursuant to Code of Civil Procedure section 382 the Association has the requisite standing in a *representative* capacity."

*Id.* at 793 (emphasis added). C.C.P. §382, enacted in 1872, nowhere mentions the terms "class" or "class action." Instead, it lists the conditions upon which "one or more may sue or defend for the benefit of all." If the Court reviews the Official Code Commissioners' Notes to Section 382, it will see the Legislature expressly envisioned C.C.P. §382 permitting associations to act on behalf of their individual members as a separate basis for standing: *"Joint Associations composed of Many Individuals.* – In cases of joint associations which consist of a great many individuals, and when it would be very inconvenient or almost impossible to join them, one or more may sue or defend for all. – See Van Schmidt vs. Huntington, 1 Cal., p. 55; Gorman vs. Russell, 14 Cal., p. 531."

Federal Article III standing has been specifically recognized by courts for non-profit associations to bring claims under the UCL, even post-Proposition 64. In *So. Cal. Hous. Rights Ctr. Ass'n v. Los Feliz Towers Hom.*, 426 F.Supp.2d 1061 (C.D. Cal. 2005), a plaintiff non-profit membership organization alleged it had diverted money and resources in investigating the claims at issue – just as alleged here in ¶10(a) of the FAC. The Court denied defendants' motion for summary judgment on the Article III standing issue, finding the organization possessed standing to proceed under the UCL:

> "Even if this amendment [Prop. 64] were retrospectively applied to the present case, the Housing Rights Center has standing because it presents evidence of actual injury based on loss of financial resources in investigating this claim and diversion of staff time from other cases to investigate the allegations here. See *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (finding that a fair housing organization suffered injury to confer standing to sue under the Fair Housing Act where it devoted significant resources to identifying and counteracting discriminatory policies); *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review*, 959 F.2d 742 (9th Cir. 1991) (holding that"the allegation that the EOIR's policy frustrates these goals [of helping refugees obtain asylum and withhold deportation] and requires the organizations to expend resources in representing clients they otherwise would spend in other ways is enough to establish standing"); *Fair Housing of Marin County v. Combs*, 285 F. 3d 899 (9th Cir. 2001) (finding that a fair housing organization has standing to sue under the Fair Housing Act where its resources were diverted to investigating and other efforts to combat defendant's discrimination). Since both Plaintiffs have standing and there is a material dispute of fact as to whether Defendants engaged in unlawful or unfair conduct, both motions for summary judgment are DENIED with respect to the claim under the Unfair Business Practices Act."

///

*Id.* at 1068-69. If such claims of standing cannot be resolved at the summary judgment stage, they certainly cannot be resolved on a motion to dismiss. As UCAN alleges in the First Amended Complaint how it has diverted staff time and expended financial resources in investigating the claims at issue herein since at least June 2007, UCAN properly has alleged Article III standing. If the Court believes more detail is required, UCAN requests leave to do so under Fed. R. Civ. Proc. 15.

*Los Feliz* has been cited with approval by the California Court of Appeal for this proposition most recently in *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 854 (2008), one of the cases referenced by Sprint:"Cases decided since Proposition 64 changed the language of Business and Professions Code section 17204 have concluded a plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has: (1) expended money due to the defendant's acts of unfair competition *Southern Cal. Housing v. Los Feliz Towers Homeow.* (C.D. Cal. 2005) 426 F. Supp. 2d 1061, 1069 [housing rights center lost financial resources and diverted staff time investigating case against defendants]. . . ." *See also Fair Hous. v. Combs*, 285 F.3d 899, 902-905 (9th Cir. 2002) (non-profit organization found to have standing to sue under federal and state law, including the UCL, where it shows a drain on its resources from both a diversion of its resources and frustration of its mission in addressing allegations of illegal conduct); *McAlister v. Essex Prop. Trust*, 504 F.Supp.2d 903 (C.D. Cal. 2007) (individual and non-profit housing rights association asserted claims under federal and state housing laws in federal court; summary adjudication partially granted in their favor). This analysis of Article III standing applies to all causes of action asserted by UCAN in the First Amended Complaint, not just the UCL. In *Los Feliz*, for example, the organizational plaintiff brought claims under the Fair Housing Act, the Americans with Disabilities Act, the California Fair Employment and Housing Act, and the Unruh Act. The Court denied summary judgment on all such claims, even though they were brought by an organizational plaintiff.

Such allegations are sufficient to establish first party organizational standing, which has been found to exist where a party alleges that the purportedly illegal action by a defendant increases the resources the group must devote to programs independent of its suit challenging the action. The Ninth Circuit recognized this distinction in *Cetacean Community v. Bush*, 386 F.3d 1169, 1179 (9th Cir. 2004), cited by Sprint in its Motion, when it found no direct associational standing existed

because "the complaint presents no evidence that the Cetaceans comprise a formal association." Contrary to what Sprint alleges in its Motion, UCAN's alleged injury in the FAC is both distinct, palpable and quantifiable. The First Amended Complaint is replete with such allegations, explaining how UCAN expended resources attempting to informally address this issue with Sprint back in June 2007, being told it would be taken care of and requiring numerous hours to make Sprint comply with its commitments, only to be ignored. See FAC, ¶¶6, 10, 30, 31, 34, 35, 39, and 40.

Sprint's motion focuses only on general associational representative standing cases, which are distinct from the above line of authority. Sprint fails to address these direct organizational standing decisions, simply asserting without citing to any authority that such allegations do not constitute injury sufficient to satisfy Article III standing. Based on the above authorities, this assertion is wrong. In fact, Sprint fails to cite a single case that has held a non-profit membership organization that has made such allegations cannot maintain a claim for some form of relief under the UCL or other state or federal statutes.

In addition, as UCAN alleges in ¶¶1 and 10 of the FAC that some of its members have been affected by the practices at issue, and its members would otherwise have standing to sue in their own right, UCAN can assert such claims. *Cf. Friends of the Earth,* 528 U.S. at 182-83 (no requirement that all members or even more than one member be identified to establish associational standing).

Thus, this Court should find UCAN can proceed on all the claims its asserts in the First Amended Complaint, both under a direct claim of associational injury under *Los Feliz* and under the test for associational standing set forth in *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 566-67 (1996), cited by Sprint in its Motion. In fact, contrary to the two Second Circuit decisions cited by Sprint in its motion, the U.S. Supreme Court in *Brown* found such organizational standing was present and that the organization could sue on behalf of its members *for damages* under Article III, particularly when the legislative branch recognized an ability for an organization to do so: "But once an association has satisfied *Hunt's* first and second prongs [membership injury and germane to purpose] assuring adversarial vigor in pursuing a claim for which member Article III standing exists, *it is difficult to see a constitutional necessity for anything more*. . . . Hence the third prong of the associational standing test is best seen as focusing on these

matters of administrative convenience and efficiency, *not on elements of a case or controversy within the meaning of the Constitution.*" (emphasis added); *Cf.* Bus. & Prof. Code §17201 ("As used in this chapter, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons.").

Sprint's argument in its Motion focuses solely on the issue of "case or controversy" rather than prudential standing limitations. Its unsupported argument that a potential variance in damages, no matter how easily calculated, bars an association from seeking any form of relief on behalf of itself or others fails to recognize the above authorities. Sprint does not show how, as a matter of law, all forms of relief requested in the FAC requires participation of UCAN's individual members. Sprint's motion to dismiss UCAN as a plaintiff must therefore be denied.

**D. The Court Should Not Invoke the Primary Jurisdiction Doctrine**

Sprint also moves to indefinitely stay prosecution of the claims asserted in the Fifth Cause of Action for violation of the Federal Communications Act on the grounds this action generally challenges "rates" and that "primary jurisdiction" lies with the FCC. Thus, according to Sprint, the Court should equitably abstain from taking any action on that claim before the FCC addresses the issues raised in the First Amended Complaint. It then argues in one sentence that, even though the only claim it seeks to have referred to the FCC is the FCA claim, the Court should stay this entire action. Such unexplained overreaching is improper for the reasons set forth below.

Just because a claim against a telecommunications company involves a particular charge does not mean the matter should automatically be referred to the FCC. If that were the case, every claim against a telecommunications company would be sent to the FCC. Sprint makes no argument that the FCC has any specialized expertise in the issues here that has not been resolved, particularly where the FCC issued a decision last year explaining that the wireless Internet access services here are "information services". See *FCC Declaratory Ruling In Matter of Appropriate Regulatory Treatment for Broadband Access to the Internet Over Wireless Networks*, 22 F.C.C.Rcd. 5901 (May 2007) (Request for Judicial Notice, Ex. 3). Without any further explanation what the FCC would be requested to decide – and it would be unfair and prejudicial for Sprint to do so for the first time

///

on reply – there is no reason to justify staying this case for months, if not years, based in such general assertions.

"Courts should not be too hasty in referring a matter to an agency, or to develop a 'dependence' on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's expertise." *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1104 (3d Cir. 1995). "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pacific Co.*, 352 U.S. 59, 64 (1956). *See also Brown v. MCI World Com Network Services*, 277 F.3d 1166, 1172 (9th Cir. 2002).

Courts engage in a balancing test of multiple factors to determine whether application of the doctrine is warranted. Courts consider: (1) whether the issue is within the conventional expertise of judges; (2) whether the issue lies within the agency's discretion or requires the exercise of agency expertise; (3) whether there is a substantial danger of inconsistent rulings; (4) the need for a consistent and uniform rule; (5) whether a prior application to the agency has been made; (6) whether the issue has already been addressed by the agency; (7) whether judicial economy is served by having the agency decide the question; and (8) whether referral will result in substantial delay and added expense. *Far East Conference v. United States*, 342 U.S. 570, 574-575 (1952); *Beattie v. CenturyTel, Inc.* 234 F.R.D. 160, 165-166 (E.D. Mich. 2006); *Gilmore v. Southwestern Bell Mobile Systems, L.L.C.*, 210 F.R.D. 212, 221 (N.D. Ill. 2001). Most if not all of these factors weigh against finding primary jurisdiction and staying this action.

In *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987), the Ninth Circuit explained that:

> "The doctrine applies when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. . . . [T]here are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration."

/ / /

There is no need for the FCC to resolve any issues here based on the limited scope of its jurisdiction and the allegations of the First Amended Complaint, as well as by virtue of the above-referenced March 2007 decision and the detariffing and deregulation that has placed the jurisdiction to resolve these types of claims with the courts rather than the FCC. As the focus of this action is on consumer deception, not requiring any administrative expertise of the FCC, none of the factors necessary to invoke the primary jurisdiction doctrine apply. This is particularly true when the relationship between telecommunications companies and its customers is to be determined and resolved primarily pursuant to contract and consumer protection laws within the exclusive province of the courts. *Ting v. AT&T*, 319 F.3d 1126, 1146 (9th Cir. 2003) ("After detariffing, federal telecommunications regulation is silent with respect to how to determine the rights and obligations of parties to individual contracts like the CSA. Although the FCC understood how to apply and interpret tariffs, this expertise has little application in the review and interpretation of each carrier's 'short, standard contract.'") Moreover, unlike in *Waudby v. Verizon Wireless Services LLP*, 2007 WL 1560295 (D.N.J. 2007), the question here is not whether the charges are or are not a "rate", but rather whether these fees are proper as imposed. Moreover, *Waudby* directly contradicts *Pacific Bell Wireless LLC v. Public Utilities Comm.*, 140 Cal.App.4th 718 (2006), which found whether to impose Early Termination Fees (the issue in *Waudby*) does not invoke a consideration of "rates" under the Federal Communications Act, and held that claims regarding full and fair disclosure are not preempted by the Federal Communications Act. *Id.* at 734-35.

In *Gilmore v. Southwestern Bell Mobile Systems L.L.C., supra*, 210 F.R.D. at 221, the Court determined it was unnecessary to refer the alleged violation of §201(b) to the FCC where the claim arose out of a company assessing an additional and unauthorized fee for which no additional goods or services are provided. The Court reasoned that claims for contract breach, fraud, and deception are well within the conventional experience of a court. The Court was not considering whether the rate of the charges is reasonable – just whether the assessment of these fees was legal. This does not require the particular expertise of the FCC. *See also Beattie*, 234 F.R.D. at 166.

Plaintiffs' claims are similar to those in *Gilmore*, as charges appearing on a bill related to services that were not authorized or contracted for are "unjust and unreasonable" and unlawful under

47 U.S.C. §201(b). It is within the conventional expertise of judges to determine whether the charges assessed were contracted for or authorized. Such an assessment does not require the expertise of the FCC, and such a determination is not solely within the discretion of the FCC. Further, there is no substantial danger of inconsistent rulings because Sprint makes no showing that it is not the only wireless service provider improperly assessing such fees. In addition, if it is determined that Sprint is improperly assessing these charges to Wireless Broadband Internet Services, the only determinations that would likely fall within the purview of the FCC is whether Wireless Broadband Internet Services are telecommunication services or information services. However, the FCC has already made that determination in its March 2007 Declaratory Ruling, where it decided that Wireless Broadband Internet Services are "information services". Plaintiffs' Request for Judicial Notice, Ex. 3. Therefore, any "necessary uniform rule" is already in place. *Gilmore*, 210 F.R.D. at 222.

In addition, this issue is presented in a pleadings motion. In *Cost Management Services, Inc. v. Washington Natural Gas Company*, 99 F.3d 937, 948-49 (9th Cir. 1996), the Ninth Circuit held that "Because this case arises in the context of a motion to dismiss under Rule 12(b)(6), we must accept as true [plaintiff's] allegation that [defendant] violated Tariff 87. For that reason, the 'threshold decision' which [plaintiff] would have us refer to the WUTC must necessarily be resolved in favor of [plaintiff]. Accordingly, the primary jurisdiction doctrine is simply inapplicable here." The Court went on to note that "in our more recent decisions, we have emphasized that because 'the primary jurisdiction doctrine is in effect, a power-allocating mechanism, a court *must not* employ the doctrine *unless* the particular division of power *was intended by Congress*." *Id.* at n. 12 (emphasis in original, citing to *General Dynamics*). Sprint makes no showing of such an intention.

For all of the above reasons, referral to the FCC and a stay would result in substantial delay and added expense without any judicial benefit being afforded by having the FCC review this matter. While in general regulation of interstate communications is left to the FCC, by repealing the filed rate doctrine the FCC has implemented a deregulatory approach to telecommunications where consumer protection laws primarily govern defendants' conduct. *Ting*, 319 F.3d at 1146 ("we hold that state contract and consumer protection laws form part of the framework for determining the

rights, obligations and remedies of parties to the [customer service agreement]."); *Verizon Del., Inc. v. Covad Comm. Co.*, 377 F.3d 1081, 1088 (9th Cir. 2004) ("The FCC noted that 'in the absence of tariffs, consumers will be able to pursue remedies under state consumer protection and contract laws in a manner currently precluded by the 'filed-rate' doctrine'".) Based on the allegations of the First Amended Complaint, the primary jurisdiction doctrine is inapplicable.

## III. CONCLUSION

For all the reasons stated above, plaintiffs respectfully request defendants' motion to dismiss or stay be denied. In the alternative, plaintiffs requests leave to amend should the Court find further allegations are necessary to clarify UCAN's basis to proceed as a class representative and on behalf of itself and others.

DATED: February 20, 2008 ROSNER & MANSFIELD LLP

By: /S/ Alan M. Mansfield

Alan M. Mansfield
alan@rosnerandmansfield.com
John W. Hanson
john@rosnerandmansfield.com

10085 Carroll Canyon Road, First Floor
San Diego, CA 92131
Tel: (858) 348-1005
Fax: (858) 348-1150

Attorneys for Plaintiffs

Art Neill
art@ucan.org
UTILITY CONSUMERS' ACTION NETWORK
3100 Fifth Ave., Suite B
San Diego, CA 92103
Tel: (619) 696-6966
Fax: (619) 696-7477

Attorneys for UCAN