JAMES J. MITTERMILLER, Cal. Bar No. 85177
jmittermiller@sheppardmullin.com
FRANK J. POLEK, Cal. Bar No. 167852
fpolek@sheppardmullin.com
JOHN C. DINEEN, Cal. Bar No. 222095
jdineen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone: 619-338-6500
Facsimile: 619-234-3815

Attorneys for Defendants SPRINT SOLUTIONS, INC. and SPRINT SPECTRUM L.P.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTILITY CONSUMERS' ACTION NETWORK and ERIC TAYLOR, on behalf of themselves, their members and/or all others similarly situated, as applicable,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT SOLUTIONS, INC.; SPRINT SPECTRUM L.P.; SPRINT-NEXTEL CORPORATION,<br><br>Defendants. | Case No. 07 CV 2231 W (LSP)<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**<br><br>Judge: Hon. Thomas J. Whelan<br>Courtroom: Seven<br>Date: March 10, 2008<br>Time: 10:30 a.m.<br><br>NO ORAL ARGUMENT PER LOCAL RULE 7.1(d)(1) |

Defendants Sprint Solutions, Inc. and Sprint Spectrum L.P. (collectively "Sprint") file this reply brief in support of their motion, pursuant to F.R.C.P. 12(b)(1), to dismiss the claims of Plaintiff Utility Consumers' Action Network ("UCAN") for lack of subject matter jurisdiction and to stay this case and refer Plaintiffs' fifth cause of action to the Federal Communications Commission ("FCC") pursuant to the primary jurisdiction doctrine.

## I.

## INTRODUCTION

UCAN is not a Sprint customer, was not assessed any of the charges at issue and did not pay any of the charges. Simply put, UCAN did not suffer an “injury in fact” and lacks standing to pursue this litigation. The housing discrimination cases relied upon by UCAN are irrelevant to the issues raised in this case and do not provide UCAN with "direct" standing to maintain this lawsuit. UCAN also lacks associational standing because determinations of individual claims and damages will require the participation of individuals in the lawsuit. (Presumably, this is the reason Eric Taylor is a named plaintiff.) Accordingly, the Court should grant Sprint's motion and dismiss the claims by UCAN.

In addition, the Court should exercise its discretion and refer Plaintiffs' fifth claim for relief, under Section 201(b) of the Federal Communications Act, to the FCC, and stay the remainder of this action. Plaintiffs have challenged the reasonableness and validity of certain charges assessed to wireless broadband Internet customers. The FCC has the expertise and experience to address Plaintiffs' challenges to the fees at issue in a uniform, industry-wide manner.

## II.

## THE COURT SHOULD DISMISS UCAN FOR LACK OF STANDING

### A. Plaintiff UCAN Lacks Standing To Pursue This Litigation.

UCAN admits that it was not assessed and did not pay any of the disputed charges at issue in this case. Instead, UCAN asserts that, in acting as a volunteer, it "diverted staff

time and resources from other clients and causes investigating the claims asserted. . . ." FAC, ¶ 10(a). In its opposition, UCAN argues that this "injury" gives it "direct" standing to serve as a representative plaintiff in a federal class action. UCAN is wrong.

UCAN fails to meet the requirements for standing in federal court. "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The first element is that the plaintiff must have suffered an "injury in fact." An injury in fact is an invasion of a legally protected interest which is "concrete and particularized," and "actual or imminent, not 'conjectural' or 'hypothetical.' " *Id*. The second element of standing is "a causal connection between the injury and the conduct complained of." The injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Id*. The third element requires that the injury will likely, as opposed to merely speculatively, be "redressed by a favorable decision." *Id*.; *see also United States v. Hays*, 515 U.S. 737, 742-43 (1995).

UCAN cannot meet this test. Its alleged "injury" results from its volunteering resources to pursue this litigation. That is not a legally protected interest. UCAN fails the first requirement. Consequently, UCAN also fails to satisfy the second and third requirements, which depend on satisfaction of the first.

In its opposition, UCAN attempts to avoid dismissal by citing authority addressing standing in the context of fair housing cases. UCAN cites several housing cases including, *Havens v. Coleman*, 455 U.S. 363 (1982), *Southern California Housing Rights Center v. Los Feliz Towers Homeowners Assoc*., 426 F. Supp.2d 1061 (C.D. Cal. 2005), and *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002). In each of these cases, the respective courts found that nonprofit associations, having expended resources as a result of the defendant's alleged conduct, had standing under the Fair Housing Act and other fair housing laws to pursue their cases. Plaintiffs also cite *McAlister v. Essex Property Trust*, 504 F. Supp.2d 903 (C.D. Cal. 2007). However, that fair housing case did not include any analysis of the plaintiff's standing.

This case does not involve allegations of discrimination or lack of accommodation in housing. This case is about charges for wireless broadband Internet service for data cards. Plaintiffs have failed to cite any Ninth Circuit authority outside the housing context applying *Havens* standing to organizations that volunteer their time to investigating claims like those asserted in the complaint.

In addition, Plaintiffs cite *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000) in support of their argument that they have "direct" standing. However, in that case the plaintiffs relied on "associational standing" to satisfy Article III. *See id.* at 181-183. As more fully explained below, UCAN cannot meet the test for associational standing either.

**B. <u>UCAN Must Meet Federal Court, Not State Court, Standing Requirements.</u>**

Attempting to avoid dismissal, UCAN argues that a ruling by a California court gives UCAN Article III standing to maintain its suit; asserting that "if UCAN has direct standing to assert such claims in state court, it has standing to assert such claims in federal court as well." Pls' Opp., p. 5. Plaintiffs cite no authority for this proposition. Indeed, there is no such authority.

Article III standing requirements do not apply in state court. *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability. . . ."). California courts apply different standing requirements as permitted by a federal system of government. However, because this lawsuit was filed in federal court, UCAN must meet *federal* standing requirements and cannot use a ruling by a state court as grounds to justify standing before this Court.

Plaintiffs also argue that the Court must accept their factual allegations as true in a 12(b)(1) motion. Pls' Opp., p. 2. Plaintiff is wrong. On a 12(b)(1) motion, a moving party may challenge the facts alleged in the pleadings and the court may consider extrinsic evidence. *See Wolfe v. Strankman*, 392 F.3d 358, 363 (9th Cir. 2004); *see also Safe Air*

*For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Sprint has not introduced any extrinsic evidence with its motion. The issue is a red herring.

**C. <u>UCAN Fails To Meet The Test For Associational Standing.</u>**

UCAN also argues that it possesses "associational standing" to maintain this lawsuit. Again, UCAN is wrong.

As explained in Sprint's moving papers, the Supreme Court's test for associational standing is composed of three parts. *See United Food & Commercial Works Union Local 751 v. Brown Group*, 517 U.S. 544, 556-558 (1996); *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). The plaintiff association must show that: (1) at least one of its members possesses standing to sue in his or her own right (*i.e.*, that member can show injury, traceability and redressability); (2) the interests the suit seeks to vindicate are germane to the association's purpose; and (3) *neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit*. *United Food & Commercial Works Union Local 751*, 517 U.S. at 553. UCAN fails this test.

The claims asserted and the relief requested in the FAC reveal that UCAN is seeking "actual, direct, incidental, consequential, statutory and exemplary damages" for the causes of action alleged. *See* Prayer for Relief, ¶ (3). The participation of individual members is therefore required as the individual claims regarding the amount of taxes and/or other contested charges must be adjudicated as to each affected individual. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members."). Whether this case is ever certified as a class action, or proceeds as to Mr. Taylor's claim alone, the Court will be resolving claims held by individuals who may or may not be UCAN members. UCAN's presence adds nothing to the adjudication of those claims.

In their opposition papers, it appears that Plaintiffs are now arguing that UCAN is only seeking "injunctive relief," despite contradictory allegations in the FAC. *See* Pls' Opp., p. 9. Even if true, there is no need for UCAN to serve as a class representative

because Plaintiff Taylor is already pursuing that relief on behalf of the class.

## III.

## THE COURT SHOULD STAY THIS CASE UNDER THE PRIMARY JURISDICTION DOCTRINE

### A. Plaintiffs' Section 201(b) Claim Is The Type of Claim The Primary Jurisdiction Doctrine Was Created To Address.

Plaintiffs ask the Court to decide whether the charges at issue (apparently, including the amount of the charges and the order, placement and accompanying description and/or labeling of the charges on putative class members' bills) are "just" and "reasonable." Congress has placed the interpretation and meaning of "reasonableness" under the Federal Communications Act in the hands of the FCC and "[c]ourts have consistently held that claims of unjust and unreasonable practices under § 201(b) of the Federal Telecommunications Act fall within the primary jurisdiction of the FCC." *Miranda v. Michigan*, 141 F. Supp. 2d 747, 759 (E.D. Mich. 2001). In *In re Long Distance Telecommunications Litigation*, the Sixth Circuit held:

> "The district court was clearly correct in concluding that the claims based on section 201(b) of the Communications Act are within the primary jurisdiction of the FCC. Section 201(b) speaks in terms of reasonableness, and the very charge of Count I is that defendants engaged in unreasonable practices. That is a determination that 'Congress has placed squarely in the hands of the [FCC].'"

*In re Long Distance Telecomm. Litigation*, 831 F.2d 627, 631 (6th Cir. 1987) (citations omitted); *see also Waudby v. Verizon Wireless Services, LLC*, Slip Copy, 2007 WL 1560295 at *6.

The FCC is the agency with expertise to interpret and apply the Federal Communications Act. The FCC is uniquely qualified to determine whether the amounts of the charges in issue are reasonable and whether Truth-In-Billing rules apply to the charges. Referral of this claim to the FCC would promote uniformity and consistency in the FCC's regulation of the telecommunications industry. *See Kiefer v. Paging Network, Inc.*, 50 F. Supp. 2d 681, 686 (E.D. Mich. 1999) (referral under primary jurisdiction doctrine of

plaintiff's claim under Section 201(b) challenging certain late fees would avoid disparate or conflicting requirements for telecommunications providers).

Plaintiffs should not be allowed to use their kitchen sink approach to pleading, involving contradictory allegations, to avoid FCC scrutiny. If the services at issue are "information services" (which Plaintiffs claim in various sections of their complaint, *see* FAC, ¶ 32; Pls' Opp., p. 12), then Truth-In-Billing does not apply to the charges. *See* In the Matters of Appropriate Framework for Broadband Access to the Internet over Wireline Facilities, *Report & Order & Notice of Proposed Rulemaking*, 20 FCC Rcd 14853, ¶ 152-53 (2005) [emphasis added] (attached as Exhibit 5 to Sprint's Notice of Lodgment of Foreign Authorities).

On the other hand, Plaintiffs also argue that class members received a "*phone bill*" and that Truth-In-Billing applies to the charges. *See* Pls' Opp. Br. (re: 12(b)(6) Mot.), pp. 1, 12. However, if Plaintiffs received a "phone bill" for "telecommunication services," then the charges at issue were appropriate. Plaintiffs' only claim that the charges were improper is that the charges were applied to an "information services" bill, not a phone bill. Further, Plaintiffs' vague allegations leave open the possibility that Plaintiffs are trying to preempt the FCC's rulemaking process and create a new rule through this lawsuit that Truth-In-Billing applies to "information services." Only the FCC should make such a rule, and this issue should be referred to the FCC for a ruling.

**B. <u>Plaintiffs' Arguments Against Referral Are Without Merit.</u>**

Plaintiffs raise a series of meritless arguments in an effort to oppose referral of the fifth claim for relief to the FCC. As demonstrated below, all of Plaintiffs' arguments fail.

Plaintiffs argue against referral on the grounds that Sprint "needs to establish that every claim can only be resolved by the FCC, and that under no set of circumstances could the Court resolve any of the claims raised in the FAC as presently pled." Pls' Opp., p. 2. Not surprisingly, Plaintiffs fail to cite any authority for this novel proposition. In fact, the law is to the contrary.

Under the primary jurisdiction doctrine, a court may refer "certain discrete issues

raised in the case" and stay the action pending the action of the administrative agency. *Phone-Tel Commc'n, Inc. v. AT&T Corp.*, 100 F. Supp.2d 313, 322 (E.D. Pa. 2000); *see also Waudby v. Verizon Wireless Services, LLC*, Slip Copy, 2007 WL 1560295, *4 (D.N.J.) ("The doctrine requires the court to refer such an issue to the agency, staying further proceedings until the parties receive an administrative ruling.")

Plaintiffs next argue that early termination fees are not "rates," and that issues regarding their disclosure are not preempted by the FCA:

> "*Waudby* directly contradicts *Pacific Bell Wireless LLC v. Public Utilities Comm.*, 140 Cal.App.4th 718 (2006), which found whether to impose Early Termination Fees (the issue in *Waudby*) does not invoke a consideration of "rates" under the Federal Communications Act, and held that claims regarding full and fair disclosure are not preempted by the Federal Communications Act. *Id*. at 734-35." Pls' Opp., p. 11.

Plaintiffs miss the point. Sprint cited *Waudby*, not for its holding regarding "rates" or early termination fees, but for its explanation of the primary jurisdiction doctrine. The decision in *Pacific Bell Wireless*, the case Plaintiffs use to attempt to distinguish *Waudby*, does not even mention the primary jurisdiction doctrine.

Plaintiffs further argue that Sprint's motion is "procedurally flawed," apparently taking issue with Sprint's inclusion of the primary jurisdiction argument in a 12(b)(1) motion. Pls' Opp., p. 2. Sprint's motion is appropriate. Sprint's 12(b)(1) motion addresses jurisdictional issues facing the Court, including Sprint's request that the Court decline for now to exercise its discretion over the fifth claim for relief and to refer it to the FCC. The primary jurisdiction doctrine is similar to an abstention doctrine, such as *Burford* abstention. *See Boyes v. Shell Oil Products Co.*, 199 F.3d 1260, 1265-66 (11th Cir. 2000). As such, now is the time to address this issue, not after the Court has invested precious judicial resources in the management of this case.

Next, Plaintiffs raise the issue of "detariffing." Pls' Opp., pp. 11-13. Despite the vague and broad allegations of the complaint, one thing is clear: tariffs have nothing to do with this lawsuit.

Plaintiffs argue against referral on the grounds that the Court can determine whether

the alleged "practice of collecting the charges set forth in detail above, and refusing to return such monies and/or disseminating bills that do not provide accurate information to customers as required by law, was unjust and unreasonable and in violation of §201(b) of the Federal Communications Act, 47 U.S.C. §201(b)." FAC, ¶ 69.

Sprint has not questioned the Court's discretion to make these determinations. Instead, the primary jurisdiction doctrine is designed to take advantage of "the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *Boyes v. Shell Oil Prod. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000). Further, the primary jurisdiction doctrine was developed by the courts to "avoid conflict between the courts and an administrative agency arising from either the court's lack of expertise with the subject matter of the agency's regulation or from contradictory rulings by the agency and the court." *MCI Commc'n Corp. v. AT&T Co.*, 496 F.2d 214, 221 (3d Cir. 1974). Here, the FCC has significant experience in dealing with "reasonableness" determinations under Section 201(b) and referral would take advantage of that experience.

Plaintiffs also attempt to avoid referral by citing *Gilmore v. Southwestern Bell Mobile Systems, L.L.C.*, 210 F.R.D. 212 (N.D. Ill. 2001) for the proposition that it is unnecessary to refer a Section 201(b) claim to the FCC "where the claim [arises] out of a company assessing an additional and unauthorized fee for which no additional goods or services are provided." Pl's Opp., p. 11. *Gilmore* does not support Plaintiffs' argument. In *Gilmore*, the Northern District of Illinois addressed a suit challenging certain monthly service charges on plaintiff's cellular telephone bill. *Id*. at 216. The *Gilmore* court held:

> "Technical issues about tariffs and questions about the reasonableness of tariffs, rates, and filed practices are generally within the particular expertise of the FCC and the regulation of such involves exercising agency discretion." *Id*. at 221.

In support of this proposition, the *Gilmore* court cited *CompareSelf v. BellSouth Mobility, Inc.*, 111 F. Supp.2d 1169 (N.D. Ala. 2000). In *Gilmore* the issue was whether a provider could properly pass on to a consumer a ***universal service*** fee that was, at one time, imposed on the provider by FCC regulation. The Northern District of Alabama held

this was an issue within the FCC's primary jurisdiction. *Id*. at 222. The same issue is present in this case. Plaintiffs allege:

> "Since at least September 2006 and potentially earlier, Nextel Sprint [*sic*] has charged the following, 'Taxes, Surcharges & Fees' to Class Members' Data service or data card plans: Federal Wireless Number Pooling and Portability and Federal E911. See Exs. 1-3. Following a company wide account number change in April 2007, ***Class members also began to be charged the Federal-Univ. Serv. Assess Non-LD*** and California State-PUC User Fee as 'Additional Sprint Charges.' Class members' data services plans were also charged the following fees labeled as 'Government Fees and Taxes' that Sprint Nextel claims it is required to collect from customers on behalf of the government: California State-911 Tax, California State-CA High Cost Part A, California State-CA High Cost B, California State-CA Relay Service Fund, California State-Tele Fund Charge and California State-Universal Lifeline Serv. Charge. See Ex. 2. Sprint Nextel also charged similar state level regulatory fees to its data service plan customers in other states. These charges amount to several dollars per month per customer, and Sprint Nextel has over a million data service plan customers." (FAC, ¶ 26) [emphasis added].

The *Gilmore* court also pointed out that "[d]isputes related to tariffs or rates *that do not go* to the validity, reasonableness, or technical aspects of the tariff or rate are to be decided by the court, not referred to the FCC under the primary jurisdiction doctrine." *Id*. at 221. Here, Plaintiffs are challenging the validity, reasonableness and technical aspects of the charges at issue:

> "[M]onthly bills for those accounts have included taxes and surcharges that should only be associated with cellular telephone accounts." FAC, ¶ 27.
>
> "Sprint Nextel's practice of collecting the charges set forth in detail above, and refusing to return such monies and/or disseminating bills that do not provide accurate information to customers as required by law, was unjust and unreasonable. . . ." FAC, ¶ 69.
>
> "[B]ecause these services are assigned a particular telephone number, Sprint Nextel leaves the account open to receive text messages and does not automatically block them." FAC, ¶ 29.

*See also* FAC, ¶¶ 26-28, 31-34, 40. Accordingly, referral is appropriate even under the *Gilmore* court's analysis.

The *Gilmore* court also noted there was no contention that other service providers

had added similar fees, such that the FCC should establish a uniform rule. *Id*. at 222. In this case, Sprint's competitors charge comparable fees for wireless broadband Internet services and the FCC can establish a fair playing field for all competitors in the industry.

Finally, Plaintiffs argue that "Sprint failed and refused to provide any notice to customers" of the billing error at issue and is "unwilling to explain to Class members the purpose of the credit." Pls' Opp., pp. 1-2. Sprint corrected the billing mistake, but Plaintiffs do not like Sprint's communication to its customers about the correction. Although Plaintiffs apparently see this as an issue in the case, its has nothing to do with this motion.

## IV.

## CONCLUSION

For all of the foregoing reasons and those included in Sprint's moving papers, the Court should dismiss the claims by Plaintiff UCAN, refer Plaintiffs' fifth cause of action to the FCC, and stay the remainder of Plaintiffs' claims.

DATED: March 3, 2008 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

s/James J. Mittermiller
Attorneys for Defendants SPRINT SOLUTIONS, INC. and SPRINT SPECTRUM L.P.
E-mail: jmittermiller@sheppardmullin.com