JAMES J. MITTERMILLER, Cal. Bar No. 85177
jmittermiller@sheppardmullin.com
FRANK J. POLEK, Cal. Bar No. 167852
fpolek@sheppardmullin.com
JOHN C. DINEEN, Cal. Bar No. 222095
jdineen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone: 619-338-6500
Facsimile: 619-234-3815

Attorneys for Defendants SPRINT SOLUTIONS, INC. and SPRINT SPECTRUM L.P.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTILITY CONSUMERS' ACTION NETWORK and ERIC TAYLOR, on behalf of themselves, their members and/or all others similarly situated, as applicable,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT SOLUTIONS, INC.; SPRINT SPECTRUM L.P.; SPRINT-NEXTEL CORPORATION,<br><br>Defendants. | Case No. 07 CV 2231 W (LSP)<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AND, ALTERNATIVELY, MOTION TO STRIKE**<br><br>[F.R.C.P. 12(b)(6) and 12(f)]<br><br>Judge: Hon. Thomas J. Whelan<br>Courtroom: Seven<br>Date: March 10, 2008<br>Time: 10:30 a.m.<br><br>NO ORAL ARGUMENT PER LOCAL RULE 7.1(d)(1) |

Defendants Sprint Solutions, Inc. and Sprint Spectrum L.P. (collectively "Sprint") file their reply to the opposition by Plaintiffs Eric Taylor and Utility Consumers' Action Network to Sprint's motions to dismiss and, alternatively, to strike.

**I.**

**PLAINTIFFS HAVE NOT STATED A CLAIM FOR "UNLAWFUL" BUSINESS PRACTICES**

Sprint has moved to dismiss/strike portions of Plaintiffs' first cause of action because certain sections of California's Civil Code cited by Plaintiffs cannot form the basis of an "unlawful" business practice under Business & Professions Code § 17200. Simply put, Civil Code §§ 1565 and 1670.5 cannot provide the predicate for an "unlawful" claim because they do not categorize any conduct as "unlawful." Section 1565 merely defines the consent needed to form a contract. Section 1670.5 only directs how a court should address an unconscionable clause in a contract. *See Californians for Population Stabilization v. Hewlett-Packard Company*, 58 Cal.App.4th 273, 287 (1997) (§ 1670.5 cannot form the basis for a § 17200 claim), and *In re Microsoft Corp. Antitrust Litigation*, 274 F.Supp.2d 747, 749-50 (D.Md. 2003) (plaintiffs cannot bootstrap a contract claim into a § 17200 claim).

In their opposition, Plaintiffs initially argue that Sprint "attempted to insert an unconscionable provision" into its contracts. FAC at ¶ 58(f); Plaintiffs' Oppos. at 14:20-22. However, this allegation only appears in Plaintiffs' third cause of action for alleged violations of the Consumer Legal Remedies Act. The issue here is not whether a violation of the CLRA may serve as a basis for an "unlawful" business practice under § 17200. Rather, the issue is whether §§ 1565 and/or 1670.5 may serve as an underlying violation for an "unlawful" business practice under § 17200.

Plaintiffs argue that any business practice forbidden by law may form the basis of an "unlawful" business practice under the UCL, and cite *Stop Youth Addiction, Inc. v. Lucky Stores*, 17 Cal.4th 553, 565 (1998) and *Barquis v. Merchants Collection*

*Assoc.*, 7 Cal.3d 94, 113 (1972) (violation of venue statutes formed the basis for an "unlawful" business practice). Plaintiffs fail to acknowledge the limits of § 17200's reach.

First, even under Plaintiffs' construction, that any business practice "forbidden by law" can form the basis for an "unlawful" business practice, their claim fails. Neither of the code sections they cite forbids anything—section 1565 is definitional, while § 1670.5 is procedural. They cannot serve as a predicate to a § 17200 "unlawful" violation. *Californians for Population Stabilization*, 58 Cal.App.4th at 287 (§ 1670.5 cannot form the basis for a § 17200 claim); *In re Microsoft Corp. Antitrust Litigation*, 274 F.Supp.2d at 749-50.

Second, Plaintiffs' authorities do not advance their cause. In *Stop Youth Addiction*, the statute at issue prohibited the sale of cigarettes to minors. The opinion merely holds that the statute giving rise to the "unlawful" business practice need not provide for a private right of action. It does ***not*** state that a definitional or procedural statute, such as §§ 1565 or 1670.5, may form the basis for a claim for "unlawful" business practices.

Similarly, in *Barquis*, the defendant collection agency had a practice of intentionally filing lawsuits in the wrong venue and thereafter obtaining default judgments against debtors. Again, as in *Stop Youth Addiction*, the defendant was accused of violating a prohibition on the sale of cigarettes to minors—a specific statute capable of enforcement. This is in stark contrast to the definitional and procedural statutes advocated by Plaintiffs here. These two civil code sections are not prohibitory. They cannot form the basis for an "unlawful" business practices claim.

No § 17200 cause of action has been stated under these two statutes. Sprint's motion should be granted.

## II.

## PLAINTIFFS CANNOT SEEK DAMAGES UNDER THE CLRA

Sprint moved to strike Plaintiffs' claim for damages under the third cause of action for alleged violations of the CLRA. Sprint's argument is simple: Plaintiffs' initial complaint sought damages, but Plaintiffs' CLRA demand letter was not sent thirty days prior to the filing of that complaint. Under Civil Code § 1782(a), failure to follow this procedure is fatal to a claim for damages under the CLRA. Plaintiff's claims for damages were incorporated by reference into the CLRA claim, the prayer for relief included a claim for damages but did not exclude the third cause of action, and Plaintiffs' claim for restitution was actually a disguised claim for damages.

Plaintiffs oppose the motion by arguing that: (1) thirty days after service of a CLRA demand letter, a complaint can be amended to include a claim for damages (Oppos. at 5-6); (2) claims for damages were not incorporated by reference, but if they were, Sprint should have sought clarification with Plaintiff's counsel (*id.* at 7:19-20 and 7:24 to 8:1); and (3) restitution and damages are distinct remedies (*id. at* 8:2-12).

Plaintiffs' first argument misses the point, and is not disputed here. Sprint moves to strike because Plaintiffs' thirty day demand letter was sent only one day before the filing of a complaint containing a claim for damages under the CLRA.

Plaintiffs' second argument, that damages were not incorporated by reference and that Sprint should have inquired of Plaintiffs' counsel, is disingenuous. Plaintiffs took advantage of Fed. R. Civ. Proc. 10(c), which permits allegations to be incorporated by reference. A claim for damages under the second cause of action (¶ 54 of the original complaint) was incorporated into the CLRA claim (via ¶ 55). Further, the prayer for relief sought damages, but did not state that damages were not sought under the third cause of action. Plaintiffs cannot escape these simple facts. Finally, Sprint is under no obligation to seek clarification from Plaintiffs' counsel—especially where the

allegations speak for themselves. Plaintiffs' complaint rises or falls on the allegations contained within it.

It is noteworthy that Plaintiffs take contradictory positions on incorporation by reference. Here, Plaintiffs ignore or discount their incorporation by reference of a claim for damages. However, in their fifth cause of action for alleged violations of § 201 of the Federal Communications Act, they actively take advantage of incorporation by reference (discussed below). Plaintiffs cannot credibly assert that certain allegations are legitimately incorporated into their fifth cause of action, but their damages claim is not incorporated into the third cause of action.

Plaintiffs' third argument also fails. They cite no authority for their proposition that they may seek damages (money), mislabel it as "restitution," and thereby circumvent the letter and spirit of Civil Code § 1782(a). They also never dispute that there is a complete overlap between the damages and the restitution they seek.

Plaintiffs sought damages in their initial complaint, filed only one day after sending their CLRA demand letter. Their claim for damages under the third cause of action must be stricken. *Von Grabe v. Sprint PCS,* 312 F.Supp.2d 1285, 1303-04 (S.D. Cal. 2003) (Stiven, J.) (CLRA claim for damages dismissed with prejudice for failure to follow pre-litigation demand requirements).

## III.

## PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE FEDERAL COMMUNICATIONS ACT

### A. Plaintiffs Have Failed To Allege A Section 201(b) Claim.

As discussed in Sprint's moving papers, Plaintiffs' fifth cause of action for alleged violations of § 201(b) of the Federal Communications Act is pleaded so vaguely that it fails to state a claim. Plaintiffs' "shotgun" pleading incorporates by reference so many allegations that it is impossible for Sprint or the Court to discern exactly what

Plaintiffs contend violates the Act. At a minimum, Sprint requests that Plaintiffs be required to provide a more definite statement under Rule 12(e).

Plaintiffs never directly address this claim's vagueness. Instead, they merely assert that Sprint is violating § 201(b) by improperly imposing taxes and charges that are not appropriate for wireless broadband Internet access (*i.e.*, "information services") and is also violating the Truth-In-Billing requirements, which do not apply to wireless broadband Internet access (addressed below). This irreconcilable contradiction is not addressed in Plaintiffs' Opposition.

As to their first argument, that the taxes and charges should not be applied to information services, Plaintiffs cite a confusing laundry list of taxes and charges they contend should not be applied to a wireless broadband Internet bill. Pls.' Oppos. at 10-12. The problem with Plaintiffs' argument is that the fifth cause of action, as it is pleaded, is not clear as to what taxes or charges are allegedly "unjust or unreasonable," and therefore allegedly violate § 201(b). That is the whole point of Sprint's motion, that the cause of action is too vague. Plaintiffs never dispute this. Sprint is entitled to know, on the face of the pleading, exactly what charges are at issue in this cause of action. Otherwise, Sprint cannot adequately defend against the claim.

Plaintiffs cite *Beattie v. CenturyTel*, 234 F.R.D. 160 (E.D. Mich. 2006) for the purported proposition that § 201 applies to billing practices and thus Sprint's charges and taxes violate § 201 as a matter of law. However, the *Beattie* case addressed improper additional charges applied to *telephone* bills. Plaintiff's claim is about wireless broadband Internet services. The decision addresses taxes and charges on a bill for information—as opposed to telecommunication—services.

Plaintiffs' fifth cause of action is so vague and confusing that it fails to state a claim. At a minimum, Plaintiffs should be required to provide a more definite statement.

**B. The Truth-In-Billing Rules Do Not Apply.**

Sprint also moves to dismiss the fifth cause of action because the Truth-In-Billing requirements, relied upon by Plaintiffs in this claim, apply only to telecommunications services (*i.e.*, telephone bills), not information services (*i.e.*, wireless broadband Internet bills). Plaintiffs respond that the bills at issue are actually telephone bills because certain charges assessed could only be imposed on telephone bills. Therefore, under Plaintiffs' circular argument, the Truth-In-Billing rules apply. Pls.' Oppos. at 9-13.

In support of their circular argument, Plaintiffs rely on two sentences in a May 2007 FCC report:

> "Should the utility provider choose to offer the transmission component of wireless broadband Internet Access as a telecommunications service, the regulatory regime appropriate to the nature of the telecommunications service will apply. For example, if a wireless broadband Internet access provider chooses to offer the telecommunications transmission component as a telecommunications service, then it is a common carrier service subject to Title II."

Pls. Oppos. at 10, quoting *FCC Declaratory Ruling in Matter of Appropriate Regulatory Treatment for Broadband Access to the Internet Over Wireless Networks*, 22 F.C.C.Rcd. 5901, at ¶ 33 (May 2007). Plaintiffs conclude that "Sprint has not segregated its information service from its telecommunications service for billing purposes," and therefore the Truth-In-Billing rules apply.

The problem with Plaintiffs' analysis is twofold. First, the May 2007 FCC decision does ***not*** state that utilizing a similar billing format means that Sprint has offered a "transmission component of wireless broadband Internet Access as a telecommunications service." It only says that ***offering*** wireless broadband Internet access ***as a telecommunications service*** will trigger the applicability of the telecommunications regulatory regime. Second, the FAC does not allege that Sprint offers wireless broadband Internet access as a telecommunications service. In fact, it alleges the opposite, that wireless broadband Internet access is an information service. Plaintiffs invite this Court to make an inference that is contradicted by the allegations of the FAC.

Contrary to Plaintiffs' assertion, Sprint has not cited the wrong FCC decision. The May 2007 FCC decision cited by Plaintiffs does not state that Truth-In-Billing applies to information services. Rather, the decision merely holds that wireless broadband Internet access services are information services, rather than telecommunications services. The 2005 FCC Report and Order and Notice of Proposed Rulemaking cited by Sprint, however, specifically requests comments regarding whether wireless broadband Internet bills are subject to Truth-In-Billing. The FCC has not yet enacted any such rules. Currently, Truth-In-Billing does not apply to information services.

Sprint's motion to dismiss should be granted. Furthermore, these issues highlight Sprint's concurrent motion to transfer the § 201 claim to the FCC under the primary jurisdiction doctrine. The applicability of charges and taxes on wireless broadband Internet bills, and whether Truth-In-Billing applies to those bills, should be decided by the FCC, not this Court.

**IV.**

**<u>PLAINTIFFS HAVE NOT STATED A CLAIM FOR CONVERSION</u>**

Sprint has moved to dismiss Plaintiffs' seventh cause of action for conversion, on the ground that money may not serve as the basis for a conversion claim unless the defendant held a specific, identifiable sum of money as a fiduciary or otherwise in trust for the benefit of the plaintiff. Sprint also cited authority that a mere claim for a refund of an overpayment cannot form the basis of a conversion claim.

In their opposition, Plaintiffs assert that money can be converted, citing *Chazen v. Centennial Bank*, 61 Cal.App.4th 532, 543 (1998). But *Chazen* proves Sprint's point, as the money at issue there was held in trust accounts, and the bank caused disbursements from those accounts to satisfy personal obligations of the trustees. Here, Plaintiffs never allege (and could not honestly assert) that the alleged overpayments for taxes and fees were held in trust for Plaintiffs' benefit.

Plaintiffs also cite *Haigler v. Donnelley*, 18 Cal.2d 674, 681 (1941), a case also cited by Sprint. Plaintiffs take a quote out of context and suggest that money may be the subject of a conversion claim even without a fiduciary or trust relationship. But in *Haigler*, a fiduciary relationship existed between the plaintiffs and defendant, a real estate broker, who listed the plaintiffs' apartment for rent. The broker refused to turn over all funds paid by a tenant to the broker for the benefit of the plaintiffs. Plaintiffs here also ignore an important passage in *Haigler*, that "[w]hen an agent is required to turn over to his principal a definite sum received by him on his principal's account, the remedy of conversion is proper." *Haigler* supports Sprint's position, that a fiduciary/trust relationship must exist for money to be the subject of a conversion claim.

Plaintiffs also cite *Heckmann v. Ahmanson*, 168 Cal.App.3d 119, 135 (1985). *Heckmann* addresses a breach of a fiduciary duty and the imposition of a constructive trust. Conversion was never discussed in the court's opinion. The case has no applicability here.

Finally, Plaintiffs ignore applicable California authority that a mere overpayment cannot give rise to a cause of action for conversion. *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1491 (2006). Because Plaintiffs here only seek a refund of an alleged overpayment of taxes and fees, no conversion claim may lie.

## V.

## PUC § 2890 APPLIES ONLY TO TELEPHONE BILLS

Sprint moved to dismiss Plaintiffs' eighth cause of action for alleged violations of Cal. Public Utility Code § 2890 because that section applies only to the placement of improper charges on *telephone bills.*

Plaintiffs counter that Sprint's wireless broadband Internet bills are actually telephone bills, that the same terms and conditions apply to both cell phone contracts and wireless broadband Internet contracts, and that the legislative history of § 2890 shows that it was intended to apply to wireless broadband Internet bills. Plaintiffs are wrong.

Plaintiffs' first argument, that Sprint's wireless broadband Internet bills are actually telephone bills, is contradicted by Plaintiffs' own allegations. The First Amended Complaint never states that the wireless broadband Internet bills are actually telephone bills. In fact, the FAC attaches several examples of wireless broadband Internet bills, and identifies them as bills for Sprint's "data card plans," "data services plans" or "data transmission services." FAC at ¶¶ 1, 26-28. Further, the proposed class is defined as "data transmission services" customers of Sprint. *Id.* at ¶ 14. Plaintiffs cannot now re-cast their allegations to avoid this motion to dismiss.

Plaintiffs also argue that the same terms and conditions apply to both cell phones and wireless broadband Internet access. Not only is this a *non sequitur*, it is not alleged in the FAC. The assertion here, even if it had been alleged, does not advance Plaintiffs' argument that § 2890 applies to wireless broadband Internet bills.

Finally, Plaintiffs mischaracterize the legislative history of § 2890. It does not state, as Plaintiffs assert, "that the purpose of the 'cramming' laws was to cover billing for Internet access options." Oppos. at 13:2-3. Rather, the legislative history cited by Plaintiffs only points out that a charge for Internet access is one type of charge that may constitute improper 'cramming' *on a telephone bill*. It states, "'Cramming' charges are usually comprised of services such as unauthorized voice mail options, internet access options, calling cards, paging services, and 800 numbers." Plaintiffs' Exhibit 4, at 3.

Plaintiffs' arguments are misleading. Internet access is only one type of charge that may constitute cramming on a telephone bill. The legislative history does not suggest that § 2890 was intended to cover a wireless broadband Internet bill. Indeed, given that the statute was enacted in 1998, it is unlikely that the California legislature even contemplated bills for wireless access to the Internet via a cell phone company's wireless telecommunications network.

Plaintiffs cite no authority for the proposition that wireless broadband Internet bills are covered by § 2890. Sprint's motion to dismiss this claim should be granted.

**VI.**

**PLAINTIFFS' PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRICKEN**

Plaintiffs have failed to state a cause of action for conversion. Further, their claim for damages under the CLRA is barred. No other cause of action in the FAC gives rise to a claim for punitive damages. As such, Plaintiffs' prayer for punitive damages should be stricken.

**VII.**

**CONCLUSION**

For all of the foregoing reasons, Sprint's motions to dismiss and, alternatively, to strike, should be granted.

DATED: March 3, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

s/James J. Mittermiller
Attorneys for Defendants SPRINT SOLUTIONS, INC. and SPRINT SPECTRUM L.P.
E-mail: jmittermiller@sheppardmullin.com