1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8              FOR THE SOUTHERN DISTRICT OF CALIFORNIA
9
10  UTILITY CONSUMERS' ACTION
11  NETWORK and ERIC TAYLOR, on behalf         Case No. C07-CV-2231-W (RJB)
    of themselves, their members and/or all others
12  similarly situated, as applicable,          ORDER DENYING
                                                DEFENDANTS' MOTION
13                      Plaintiffs,             TO DISMISS PURSUANT
                                                TO FEDERAL RULE OF
14            v.                                CIVIL PROCEDURE
                                                12(b)(1)
15  SPRINT SOLUTIONS, INC.; SPRINT
    SPECTRUM L.P.; SPRINT-NEXTEL
16  CORPORATION,
17                      Defendants.
18

19        This matter comes before the court on Defendants' Motion to Dismiss Pursuant to Federal Rule of

20  Civil Procedure 12(b)(1).  Dkt. 11.  The court has considered the relevant documents and the remainder of

21  the file herein.

22                              PROCEDURAL HISTORY

23        On November 21, 2007, plaintiffs Utility Consumers' Action Network (UCAN) and Eric Taylor

24  filed a civil action against defendants Sprint Solutions, Inc., Sprint Spectrum L.P., and Sprint-Nextel

25  Corporation (Sprint).  Dkt. 1.  On January 2, 2008, plaintiffs filed an amended complaint, alleging that

26  Sprint improperly included taxes, fees and other charges on monthly invoices to customers who obtained

27  data service or data card plans from Sprint, and improperly charged these customers for text messages.

28  Dkt. 9.  The amended complaint asserts class action claims for (1) violation of California Business and

1   Professions Code § 17200; (2) breach of contract; (3) violation of the Consumers Legal Remedies Act,

2   Cal. Civ. Code § 1750 et seq.; (4) declaratory relief; (5) violation of the Federal Communications Act, 47

3   U.S.C. § 201(b); (6) money had and received, money paid and unjust enrichment; (7) conversion; and (8)

4   cramming, pursuant to California Public Utilities Code § 2890.  *Id.*  The amended complaint requests

5   certification of this case as a class action; declaratory, equitable, injunctive and/or monetary relief; actual,

6   direct, incidental, consequential, statutory and exemplary damages; pre- and post-judgment interest;

7   attorneys' fees; and other relief as the court may deem just and proper.  Dkt. 9, at 26.

8       On January 23, 2007, Sprint filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). Dkt. 11.

9                                  <u>MOTION TO DISMISS</u>

10      Defendants have moved to dismiss all claims brought by UCAN on the basis that UCAN has not

11  suffered an injury in fact and therefore lacks standing to sue; and have requested that the court refer

12  plaintiffs' claims for violation of the Federal Communications Act (FCA) to the Federal Communications

13  Commission (FCC), under the doctrine of primary jurisdiction.

14      Plaintiffs oppose the motion, arguing that UCAN has properly alleged that it has sustained an

15  Article III injury in fact, and that UCAN has associational standing. Dkt. 19, at 4-9.  UCAN also objects to

16  defendants' request that the court refer the FCA claims for decision by the FCC and stay the remaining

17  claims pending a decision by the FCC, arguing that decisions related to those claims do not require

18  administrative expertise and may be properly addressed in court.  Dkt. 19, at 11.

19                                  <u>LEGAL STANDARD</u>

20      A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual allegations in

21  the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or

22  treaties of the United States, or does not fall within one of the other enumerated categories of Article III,

23  Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or

24  (3) is not one described by any jurisdictional statute.  *Baker v. Carr*, 369 U.S. 186, 198 (1962);  *D.G.*

25  *Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986).  When considering a motion

26  to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review

27  any evidence to resolve factual disputes concerning the existence of jurisdiction.  *McCarthy v. United*

28  *States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v.*

1  *Heckler*, 710 F.2d 1375, 1379 (9ᵗʰ Cir. 1983).  A federal court is presumed to lack subject matter

2  jurisdiction until plaintiff establishes otherwise.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S.

3  375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9ᵗʰ Cir. 1989).  Therefore,

4  plaintiff bears the burden of proving the existence of subject matter jurisdiction.  *Stock West*, 873 F.2d at

5  1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9ᵗʰ Cir. 1979).

DISCUSSION

6

7  **1.  Standing**

8  *Relevant facts and motion*.  The amended complaint alleges as follows:

9  On personal knowledge, UCAN is a 501(c)(3) not-for profit public interest advocacy organization
   that has over 30,000 members in California, and one or more of its members have lost money or
10 property or had their rights infringed upon as a result of the acts and practices here at issue.  Mr.
   Taylor is a Sprint Nextel data services customer who uses such services primarily for personal,
11 family or household use.  At all times relevant to this Complaint, Mr. Taylor subscribed to Sprint
   Nextel's data services plan, which provides data transmission services to Sprint Nextel customers.

12
   Dkt. 9, at 2.
13

14 The amended complaint also alleges as follows:

15 10.  (a)  On personal knowledge, plaintiff Utility Consumers' Action Network ("UCAN") is a
   consumer advocacy membership organization, with its office located at 3100 Fifth Avenue, San
16 Diego, California.  One or more of its members have been adversely affected by the acts and
   practices in question and have suffered injury in fact and lost money or property or had their rights
17 infringed upon as a result of such acts and practices by being charged and required by defendants to
   pay the fees and taxes at issue.  UCAN has lost and diverted staff time and resources from other
18 clients and causes investigating the claims asserted herein and in an attempt to resolve the
   allegations at issue herein.  UCAN brings this action on behalf of its members and seeks all such
19 remedies that it is entitled to in that capacity.

20 (b)  On personal knowledge, plaintiff Eric Taylor is a resident of San Diego County, California.
   Mr. Taylor has been a customer of Sprint Nextel and has suffered injury in fact and lost money or
21 property or had his rights infringed upon as a result of the acts and practices here at issue by being
   charged and/or required to pay the charges, taxes and fees here at issue and/or not having had such
22 monies refunded with interest....

23 Dkt. 9, at 4-5.

24 Defendants contend that UCAN has not suffered injury in fact because volunteering staff time and

25 resources to investigate Mr. Taylor's claims does not constitute a distinct and palpable injury sufficient to

26 satisfy the Article III standing requirement; and that UCAN fails to meet the test for associational standing

27 because the amount of damages sustained by the members requires an individualized inquiry.  Dkt. 11-2.

28 Plaintiffs argue that UCAN has standing (1) because several of its members are affected by the unlawful

   practices alleged in the amended complaint, and because UCAN has expended its own resources in

investigating and attempting to resolve the claims that are the basis for this action; and (2) because UCAN can, under California law, proceed in a representative capacity on its claim under Business and Professions Code § 17200, *et seq*., and "if UCAN has direct standing to assert such claims in state court, it has standing to assert such claims in federal court as well." Dkt. 19, at 5.

*Standing*.  The standing doctrine involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise.  *Kowlaski v. Tesmer*, 543 U.S. 125, 128-29 (2004)(quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

*Article III Standing*.  Under Article III of the Constitution, a federal court cannot consider the merits of a legal claim unless the person seeking to invoke the jurisdiction of the court establishes the requisite standing to sue.  *Whitmore v. Arkansas*, 495 U.S. 149 (1990).  To establish the constitutional aspect of standing, the court must determine whether the plaintiff has made out a case or controversy between plaintiff and the defendant within the meaning of Article III by demonstrating a sufficient personal stake in the outcome.  *Warth v. Seldin*, 422 U.S. at 498.

A litigant demonstrates standing by showing that he or she has suffered an injury in fact that is fairly traceable to the challenged action and is redressable by a favorable judicial decision. *Steel Company v. Citizens for a Better Environment*, 118 S.Ct. 1003, 1017 (1998). To demonstrate constitutional standing, a plaintiff must prove (1) that he or she suffered an injury in fact; (2) the existence of a causal connection specifically traceable to the unconstitutional conduct of defendants; and (3) the likelihood that a favorable outcome will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In this case, UCAN has not alleged a sufficient injury in fact, fairly traceable to Sprint's conduct, sufficient to satisfy the requirements for Article III standing. The allegedly unlawful charges at issue were made on bills between Sprint and its customers. UCAN has not alleged a direct relationship between that organization and Sprint. UCAN's decision to expend resources to investigate Sprint's conduct–conduct related to individuals who were Sprint's customers–is an attempt to bootstrap its costs onto claims of its members.  UCAN has not shown that it has suffered injury in fact sufficient to establish Article III standing.

*Prudential Limitations on Standing*.  The prudential limitations on standing restrict the grounds a plaintiff may put forward in seeking to vindicate plaintiff's personal stake. *Warth v. Seldin*, 422 U.S. at

499.  A plaintiff generally cannot rest a claim to relief on the legal rights or interests of third parties. *Id.* at 499. However, under the prudential doctrine of associational standing, an association satisfying the proper prerequisites may sue to redress its members' injuries, even without a showing of injury to the association itself. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 552 (1996).

An association has standing to sue on behalf of its members when the members would otherwise have independent standing to sue, the interests sought to be protected are germane to the organization's purpose, and the claim asserted does not require the participation of individual members in the lawsuit. *Pennell v. City of San Jose,* 485 U.S. 1, 7 n. 3 (1988); *see also Hunt v. Wash. Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977).

At this stage of the proceedings, UCAN has satisfied the requirements for associational standing. UCAN alleges that it represents its members, who have allegedly received invoices that include improper charges.  UCAN members, therefore, have independent standing to assert the claims included in the amended complaint, since each member could sue in his or her own right. Second, the interests sought to be protected–improper charges on invoices to customers who obtained data service or data card plans from Sprint–are related to the organization's purpose as a nonprofit consumer advocacy group. Third, UCAN seeks equitable and injunctive relief, in addition to damages.  For the equitable and injunctive relief, the individual members of UCAN need not be parties to the action. *See Warth v. Seldin,* 422 U.S. 490, 515 (holding that an association lacked standing where it sought damages rather than a declaration, injunction, or some other form of prospective relief).  UCAN has asserted sufficient facts to establish associational standing, at least for its claims for prospective relief.

The court recognizes that the amended complaint requests damages in addition to prospective relief.  Individual members of UCAN may ultimately be required to pursue claims for damages, independent of the umbrella of UCAN.  The court also recognizes that plaintiffs request class action status. A motion to certify a class has not been filed, and the court has not certified this as a class action. However, in the event that a class action is certified, UCAN's members may be included in the class definition. In that event, UCAN's associational standing would appear to be inconsistent with the status of its members, who would be plaintiffs in their own right.  Accordingly, Sprint's motion to dismiss UCAN on

the basis of lack of standing should be denied without prejudice.

### 2. Referral to FCC

*Relevant Facts and Motion*.  In the Fifth Cause of Action, plaintiffs allege as follows:

68.  Section 201(b) of the Federal Communications Act requires: "All charges, practices, classifications, and regulations for and in connection with interstate communications by radio shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful."

69.  Sprint Nextel's practice of collecting the charges set forth in detail above, and refusing to return such monies and/or disseminating bills that do not provide accurate information to customers as required by law, was unjust and unreasonable and in violation of §201(b) of the Federal Communications Act, 47 U.S.C. §201(b).

70.  Pursuant to FCC Declaratory Ruling 22 F.C.C.R. 5901, information services are not subject to the title II provisions of the Federal Communication Act.  As such, Class members are exempt from paying any Title II obligations. Any charges associated with "telecommunications services" charged to data services only customers are unjust and unreasonable, as are any charges that are the result of "cramming" such as the SMS text message charges at issue herein.

71.  Members of the Class suffered damages and will continue to suffer damages as a result of the above-described violations and Sprint Nextel's failure to refund previously collected monies, in an amount to be determined at trial.

72.  Pursuant to, *inter alia*, §§206 and 207 of the Federal Communication Act, 47 U.S.C. §§ 206 and 207, members of the Class are entitled to recover the full amount of damages sustained due to Sprint Nextel's above-described violations and obtain appropriate injunctive relief, together with reasonable attorneys' fees and costs.

Dkt. 9, at 23-24.

Sprint contends that the claims made under the FCA, 47 U.S.C. §201(b), are subject to the primary jurisdiction of the FCC.  Sprint requests that the court refer the cause of action under the FCA to the FCC and stay the remaining claims pending resolution of the FCA claim.  Plaintiffs argue that resolution of the claims under the FCA does not require specialized expertise, particularly where the FCC has already explained, in *FCC Declaratory Ruling In Matter of Appropriate Regulatory Treatment for Broadband Access to the Internet Over Wireless Networks*, 22 F.C.C. Rcd. 5901 (May 2007), that wireless internet access services are information services.

*Primary Jurisdiction*.  The doctrine of primary jurisdiction is a prudential doctrine concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. *Nadar v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1978). Under the doctrine of primary jurisdiction, the court may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts.  *Davel*

*Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir.2006) (quoting *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir.2002)). The doctrine is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body. The doctrine allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight. *National Communications Association, Inc. v. AT & T*, 46 F.3d 220, 222-23 (2d Cir.1995) (citing *Far East Conference v. United States*, 342 U.S. 570, 574 (1952));  A referral under the primary-jurisdiction doctrine means that a court either stays proceedings, or dismisses the case without prejudice, so that the parties may pursue their administrative remedies. *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 782 n. 3 (9th Cir.2002).

Although there is no fixed formula for applying the doctrine of primary jurisdiction, courts traditionally look for four factors when applying the doctrine: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.  *Davel Comm'ns, Inc. v. Qwest Corp*, 460 F.3d at  1086-87.

The FCC has the authority to interpret provisions of the FCA, and courts defer to the Commission's lawful interpretations of the Act. *See, e.g., National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 986 (2005).

At this point, the court cannot determine whether there is an issue or issues that are within the jurisdiction of the FCC, or issues that require expertise or uniformity in administration.  It is unclear to the court, at this stage, what questions and issues would be presented to the FCC for determination.  For example, plaintiffs appear to assert a contradictory basis for the FCC claim, by claiming that certain charges to customers who obtained data service or data card plans were improperly applied because these plans are excluded from the requirements of 47 U.S.C. § 201, while also claiming that these charges are not "just and reasonable," as required by 47 U.S.C. § 201(b). At this point, a referral to the FCC is not warranted. Such a referral, however, may be appropriate at some point, after the issues are clarified. The

1    court should deny without prejudice Sprint's motion to refer the FCA claim to the FCC on the basis of

2    primary jurisdiction.  Sprint's request that the court stay claims other than the FCA claim is moot.

3           Therefore, it is hereby

4           **ORDERED** that Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure

5    12(b)(1) (Dkt. 11) is **DENIED WITHOUT PREJUDICE**.

6           The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any

7    party appearing *pro se* at said party's last known address.

8           DATED this 15th day of April, 2008.

9

10

11                                           ROBERT J. BRYAN
                                             United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 8