UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UTILITY CONSUMERS' ACTION
NETWORK and ERIC TAYLOR, on
behalf of themselves, their members
and/or all others similarly situated, as
applicable,

                Plaintiffs,

    v.

SPRINT SOLUTIONS, INC.; SPRINT
SPECTRUM, L.P.; SPRINT-NEXTEL
CORPORATION,

                Defendants.

CASE NO. C07-2231RJB

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' FIFTH
CAUSE OF ACTION

This matter comes before the Court on Defendants' Motion to Strike Plaintiffs' Second Amended Complaint (Dkt. 31-2) and Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 32-2). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein.

**I. PROCEDURAL BACKGROUND**

On November 21, 2007, Plaintiffs Utility Consumers' Action Network ("UCAN") and Eric Taylor filed a civil action against Defendants Sprint Solutions, Inc., Sprint Spectrum L.P., and Sprint-Nextel Corporation (Sprint). Dkt. 1. On January 2, 2008, Plaintiffs filed an amended complaint, alleging that Sprint improperly included taxes, fees and other charges on monthly

ORDER - 1

invoices to customers who obtained data service or data card plans from Sprint, and improperly charged these customers for text messages. Dkt. 9. The amended complaint asserts class action claims for (1) violation of California Business and Professions Code § 17200; (2) breach of contract; (3) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (4) declaratory relief; (5) violation of the Federal Communications Act ("FCA"), 47 U.S.C. § 201(b); (6) money had and received, money paid and unjust enrichment; (7) conversion; and (8) cramming, pursuant to California Public Utilities Code § 2890. *Id.* The amended complaint requests certification of this case as a class action; declaratory, equitable, injunctive and/or monetary relief; actual, direct, incidental, consequential, statutory and exemplary damages; pre- and post-judgment interest; attorneys' fees; and other relief as the court may deem just and proper. Dkt. 9 at 26.

On January 23, 2007, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and to strike pursuant to Fed. R. Civ. P. 12(f). Dkt. 12. On April 25, 2008, the Court issued an order granting in part and denying in part Defendants' motion. Dkt. 27. The Court ordered Plaintiffs to provide a more definite statement on their Fifth Claim for Relief under the Federal Communications Act, 47 U.S.C. § 201(b). *Id.* at 12.

On May 9, 2008, Plaintiffs responded to the order for a more definite statement by filing a Second Amended Complaint. Dkt. 30. The Court has not granted authority for the filing of a Second Amended Complaint under Fed. R. Civ. P. 15(a). On May 23, 2008, Defendants filed this Motion to Strike Plaintiffs' Second Amended Complaint (Dkt. 31-2) and this Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 32-2). Although Defendants title their motion as a request for complete dismissal of the Second Amended Complaint, they only argue for the dismissal of Plaintiffs' Fifth Cause of Action. *See id.* On June 13, 2008, Plaintiffs responded to both motions. Dkt. 33, 34. On June 20, 2008, Defendants replied to both motions. Dkt. 35, 36.

## II. DISCUSSION

A. **Motion to Dismiss**

Motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. When deciding a motion to dismiss, the Court's consideration is limited to the pleadings. Fed. R. Civ. P. 12(d).

In the Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 32-2), Defendants have moved to dismiss Plaintiffs' Fifth Cause of Action, Violation of the Federal Communication Act 47 U.S.C. § 201(b). Dkt. 32-2 at 6. The Court denied Defendants' previous motion to dismiss this cause of action and ordered Plaintiffs to provide a more definite statement connecting facts with violations of the specific section of the Act. Dkt. 27 at 13. Plaintiffs' Second Amended Complaint responds to that order, and states:

### FIFTH CAUSE OF ACTION

**(Violation of the Federal Communications Act 47 U.S.C. § 201(b))**

\*\*\*\*\*\*

> 74. Section 201(b) of the Federal Communications Act ("FCA") requires: "All charges, practices, classifications, and regulations for and in connection with interstate communications by radio shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful."[1]

---

[1] Plaintiffs have misquoted the FCA. Section 201(b) states that: "All charges, practices, classifications, and regulations for and in connection with *such communications* shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b)(emphasis added). "Such communications" refers to section 201(a) which states "interstate or foreign communication by

ORDER - 3

75. Title II of the FCA is intended to regulate "common carriers" such as Sprint Nextel that provides telecommunications services.[2] Though the [Federal Communications Commission ("FCC")] may specify that some provisions of Title II are inapplicable to common carriers, 47 U.S.C. §332(c)(1)(A) explicitly prohibits the FCC from specifying that any provisions of 47 U.S.C. §§201,202, and 208 are inapplicable to providers such as Sprint Nextel.

76. Under the FCA, a service is subject to a different regulatory framework depending on whether it constitutes an "information service"[3] or a "telecommunications service", the latter of which includes a "commercial mobile service".[4] The FCC concluded in its decision in *In re Appropriate Regulatory Treatment for Broadband Access to the Internet Over Wireless Networks* (22 FCCR 5901, dated March 22, 2007 ("Declaratory Ruling")) that "'mobile wireless broadband

---

wire or radio to furnish such communication service . . . ." *Id*. § 201(a)

"Radio communications" or "communication by radio" mean "the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission." *Id*. § 153(33)

[2] "Telecommunications" means "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(43). "Telecommunications service" means "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used. *Id*. § 153(46).

[3] "Information service" means "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications, and includes electronic publishing, but does not include any use of any such capability for the management, control, or operation of a telecommunications system or the management of a telecommunications service." 47 U.S.C. § 153(20).

[4] "Commercial mobile service" means "any mobile service (as defined in section 153 of this title) that is provided for profit and makes interconnected service available (A) to the public or (B) to such classes of eligible users as to be effectively available to a substantial portion of the public, as specified by regulation by the Commission." 47 U.S.C. § 332(d)(1).

"Mobile service" means "a radio communication service carried on between mobile stations or receivers and land stations, and by mobile stations communicating among themselves, and includes (A) both one-way and two-way radio communication services, (B) a mobile service which provides a regularly interacting group of base, mobile, portable, and associated control and relay stations (whether licensed on an individual, cooperative, or multiple basis) for private one-way or two-way land mobile radio communications by eligible users over designated areas of operation, and (C) any service for which a license is required in a personal communications service established pursuant to the proceeding entitled 'Amendment to the Commission's Rules to Establish New Personal Communications Services' (GEN Docket No. 90-314; ET Docket No. 92-100), or any successor proceeding." *Id*. § 153(27)( further defined at 47 C.F.R. § 20.3).

Internet access service'[5] is not a 'commercial mobile service'". The impact of the Declaratory Ruling is that Class members cannot be billed for taxes, fees, and surcharges associated with the provision of a standard telecommunications or a commercial mobile service by a common carrier such as Sprint Nextel.

77. Despite this directive, Sprint Nextel, apparently believing it is acting as a common carrier for all its customers, bills all of its customers using the same billing format and uniformly applies the same terms and conditions to all services provided by Sprint Nextel. As such, Sprint Nextel does not distinguish between customers who contract with Sprint Nextel for "telecommunications services" only, those who contract with Sprint Nextel for "information services" only, and those who contract with Sprint Nextel for "telecommunications services" and "information services". Sprint Nextel is treating all of its customers as "telecommunications services" subscribers and collecting charges associated with "telecommunications services" from its customers, regardless of whether the customer actually receives "telecommunications services" or only receives "information services".

78. Because, based on the Declaratory Ruling and other FCC decisions, Class members are exempt from paying any Title II tax obligations that can only be imposed on "telecommunications services", Sprint Nextel cannot through its practices subject its customers to these Title II obligations if such customers have contracted for services that are not subject to Title II obligations. Any charges associated only with providing "telecommunications services" that are charges to data services[6] only customers are "unjust and unreasonable" *per se*, because they are unlawfully imposed.

79. In addition, any charges such as the SMS[7] text message charges at issue herein, which occurred through assigning "telecommunications services" characteristics, *e.g.*, a telephone number and SMS text message service, to devices that facilitate the use of data services only, *e.g.*, a data card, are "unjust and unreasonable" *per se* because these are charges for messages that cannot be accessed.

---

[5] "Mobile wireless broadband Internet access service" means "wireless broadband Internet access service that meets the 'mobile service' definition contained in the Act and the Commission's rules (47 U.S.C. § 153(27); 47 C.F.R. § 20.3)." 22 F.C.C.R. 5901 n.96.

[6] Plaintiffs do not define the term "data services." "Data service" appears to be a term of art and "Typically refers to a telecommunications service that transmits high-speed data rather than voice. Internet access is the most common data service, which may be provided by the telephone and cable companies as well as cellular carriers. Text messaging is a cellular data service." http://www.techweb.com/encyclopedia (define "data service")(search completed at 10:00am, PST, July 7, 2008).

[7] Plaintiffs do not define the term "SMS." "SMS" appears to be a term of art and is an acronym for **S**hort **M**essage **S**ervice. It is a text message service that enables short messages of generally no more than 140-160 characters in length to be sent and transmitted from a cellphone. Unlike paging, but similar to e-mail, short messages are stored and forwarded at SMS centers, which means a person can retrieve messages later if the person is not immediately available to receive them. SMS messages travel to the cellphone over the system's control channel, which is separate and apart from the voice channel. http://www.techweb.com/encyclopedia (define "SMS")(search completed at 10:01am, PST, July 7, 2008).

80.     Sprint Nextel's practice of collecting the charges set forth in detail above, and treating Class members as if Sprint Nextel was acting as a common carrier for purposes of such charges and refusing to return such monies, violated §201(b) of the FCA, 47 U.S.C. §201(b). It would be inequitable to allow Sprint Nextel to claim it was acting as a "common carrier" and properly imposing charges that can only be charged for "telecommunications services", yet not hold Sprint Nextel liable under the FCA in terms of being required to refund any "unjust and unreasonable" charges resulting from such practices because in fact it was supplying "information services" in connection with imposing such charges. Allowing Sprint Nextel to make such an argument would permit it to claim the FCA does not apply at all, even though that could be the only basis for imposing the charges it claims were lawfully imposed (although, based on the FCC's previous rulings, such charges were not lawfully imposed). If the FCA does not apply, then the charges in question must have been illegally imposed because Sprint Nextel would have no basis for imposing such charges at all.

81.     Members of the class suffered damages and will continue to suffer damages as a result of Sprint Nextel's failure to refund all previously collected monies plus interest, in an amount to be determined at trial.

82.     Pursuant to, *inter alia*, §§206 and 207 of the FCA, 47 U.S.C. §§ 206 and 207, members of the Class are entitled to recover the full amount of damages sustained due to Sprint Nextel's above-described violations and obtain appropriate injunctive relief, together with reasonable attorneys' fees and costs.

Dkt. 30.

Defendants argue that Plaintiffs have failed to state a valid claim for relief in the Second Amended Complaint:

Paragraphs 75, 76, 78 and 80 of the [Second Amended Complaint] are new. Each contains only legal argument. No new facts are alleged in them. Paragraph 77 is also new. It, too, contains mostly legal argument, but it also adds a legally-irrelevant argument regarding the alleged similarity of Sprint's invoices to its customers. Similarly, paragraph 79 is technically new, but merely repeats allegations from the First Amended Complaint regarding text messages [].

Dkt. 32-2 at 6. Moreover, Defendants claim that "No new facts are alleged and no facts are connected to specific provisions of the FCA." *Id*. Plaintiffs counter that they have complied with the Court's order and have added paragraphs that show "how the numerous facts detailed in the [Second Amended Complaint] connect to the relevant law and why Defendants are subject to the provisions of the [FCA] under those circumstances." Dkt. 34 at 2. In other words, Plaintiffs argue that they have only further explained their legal theories under what they allege is applicable

ORDER - 6

law. Taking the Second Amended Complaint as it stands, the Court will turn to the issue of whether Plaintiffs' Fifth Cause of Action suffers from the "lack of a cognizable legal theory."

Plaintiffs claim that "a service is subject to a different regulatory framework depending on whether it constitutes an 'information service' or a 'telecommunications service'". *See above*, ¶ 76. Specifically, Plaintiffs outline their cause of action as:

> First, Plaintiffs assert that Defendants are assessing charges that are only proper in connection with providing a wire or radio communication service. Second, Plaintiffs assert that Defendants are acting as common carriers, as established through their conduct as alleged throughout the [Second Amended Complaint]. Third, Plaintiffs assert that the data plan service customers have not contracted for or receive telecommunications services, but rather have only contracted with Defendants to provide information services, and as a consequence may not be assessed charges in connection with telecommunications services. Fourth, they allege it is unlawful under the FCA to assess taxes for such services when it is not permitted under the law.

Dkt. 34 at 6. The Court, however, is unaware of any regulatory framework for "information services" under the Federal Communications Act. As Defendants point out, Plaintiffs

> make the illogical leap [] that *because* wireless broadband Internet services are not telecommunications services or commercial mobile services, information services customers are *per se* "exempt" from taxes and fees. Therefore, according to Plaintiffs, the imposition of taxes and fees upon wireless broadband Internet services customers is a *per se* violation of the §201(b) FCA.

Dkt. 32-2 at 7(emphasis in original).

Plaintiffs make no showing of law to support their theory. Assuming that Plaintiffs can establish that Defendants may not assess taxes or other charges for information services, to do so is not a violation of the Federal Communications Act because the Act does not regulate providers of information services. The Federal Communications Commission's Declaratory Ruling supports this conclusion:

> Concluding that mobile wireless broadband Internet access service, as an information service, should not be . . . subject to Title II common carrier obligations applicable to telecommunications service providers is most consistent with Congressional intent to maintain a regime in which information service providers are not subject to Title II regulations as common carriers.

22 F.C.C.R. 5901, ¶ 41. Further, it is a *non sequitur* to claim that the "just and reasonable" requirements of § 201(b) apply to charges for services that are not regulated by the Federal Communications Act, including § 201(b). Accordingly, Plaintiffs have not stated a claim that the

ORDER - 7

allegedly unlawful charges violated either § 201(b) of the Federal Communications Act or any other provision of the Act. Plaintiffs have already been afforded the opportunity to clarify the claim. Any further attempt to do so would be futile.

Therefore, the Court should grant Defendants' Motion to Dismiss Plaintiffs' Fifth Cause of Action, Violation of the Federal Communications Act 47 U.S.C. § 201(b). Dismissal of this federal claim does not prevent Plaintiffs from arguing that the charges questioned are improper charges under Plaintiffs' other theories.

Plaintiffs' Fifth Cause of Action was a federal claim establishing the Court's original jurisdiction over this action. *See* Dkt. 30. Because that federal claim should be dismissed, the remaining basis for original jurisdiction depends on this being a class action, diversity of citizenship between the parties, and the amount in controversy. 28 U.S.C. § 1332(d)(2). Based on the record, the Court cannot determine whether this action meets those requirements nor can the Court determine whether it should decline jurisdiction pursuant to either 28 U.S.C. § 1332(d)(3) or 28 U.S.C. § 1332(d)(4). The Court should require the parties to show cause why this Court either has original jurisdiction and/or why this Court should assume or decline federal jurisdiction over the remaining claims in this action.

## B. Motion to Strike

The Court should reserve consideration of Defendants' Motion to Strike until a determination is made on whether the Court has, and will retain jurisdiction over this action.

## III. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 32-2) is **GRANTED** and Plaintiffs' Fifth Cause of Action is **DISMISSED**. The Court reserves consideration on Defendants' Motion to Strike Plaintiffs' Second Amended Complaint (Dkt. 31-2).

1     Plaintiffs are **ORDERED** to **SHOW CAUSE**, if any they have, in writing, as to why the Court has original jurisdiction and/or should assume or decline federal jurisdiction over the remaining state law claims in this action. Plaintiffs may file a brief, no more than five pages, by July 22, 2008. Defendants may respond, no more than five pages, by July 24, 2008. Plaintiffs may reply, no more than three pages, by July 25, 2008. The parties may file affidavits and/or declarations in support of their briefing.

    Consideration of this **SHOW CAUSE ORDER** is noted for July 25, 2008, and Defendants' Motion to Strike (Dkt. 31-2) is renoted for consideration on the same day, July 25, 2008.

    The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

    DATED this 10th day of July, 2008.

/s/ Robert J. Bryan
ROBERT J. BRYAN
United States District Judge

ORDER - 9