1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  UTILITY CONSUMERS' ACTION NETWORK and ERIC TAYLOR, on behalf of themselves, their members and/or all others similarly situated, as applicable, | Case No. 07 CV 2231 RJB |
| | **[PROPOSED] ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| 13  Plaintiffs, | |
| 14 | DATE:    April 14, 2010 |
| v. | TIME:    1:30 p.m. |
| 15 | Judge:   Hon. Robert J. Bryan |
| SPRINT SOLUTIONS, INC.; and SPRINT SPECTRUM L.P., | |
| 17  Defendants. | |

18

19

20

21

22

23

24

25

26

27

28

# I.

## **INTRODUCTION**

The parties to this case are Plaintiffs Utility Consumers' Action Network ("UCAN") and Dr. Eric Taylor ("Dr. Taylor") (collectively, "Plaintiffs") and Defendants Sprint Solutions, Inc. and Sprint Spectrum, L.P. (collectively, "Sprint").

The parties now jointly ask this Court for an order finally approving a nationwide class action settlement, certifying a settlement class, appointing Dr. Taylor as the Class Representative, and appointing Consumer Law Group of California and Whatley Drake and Kallas, LLC as Class Counsel. Class Counsel[1] also seek an award of attorneys' fees and expenses, and also seek authorization for an incentive payment to Dr. Taylor.

For the reasons set forth below, this Court will approve the nationwide class action settlement, certify a nationwide class, appoint Plaintiff Taylor as Class Representative, appoint Consumer Law Group of California and Whatley Drake and Kallas, LLC as Class Counsel, approve the request for attorneys' fees and costs as requested by Class Counsel, approve an incentive award to Dr. Taylor, and dismiss the action as to the matters released in the settlement. The Court will retain jurisdiction over the matter for the purpose of enforcing the Settlement Agreement.

---

[1] Words and phrases with initial capital letters and which are defined terms in the parties' Settlement Agreement have the same meaning herein as in the Settlement Agreement.

-1-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

## II.

## SUMMARY OF BACKGROUND FACTS AND THE SETTLEMENT

**A.   Summary Of The Litigation Prior to Settlement.**

Plaintiffs filed the original Complaint in this action on November 21, 2007, and thereafter filed a First Amended Complaint ("FAC") on January 2, 2008.

In the original Complaint and the FAC, Plaintiffs alleged various claims against Sprint arising out of charges assessed on Sprint broadband data connection card (sometimes known as and hereinafter referred to as a "data card") services for certain federal, state and local taxes, SMS (also known as text message) charges, and Federal E911 and Wireless Number Pooling and Portability charges ("E911/WLNP Charges").

Beginning in September 2006, Sprint charged certain federal, state, and local fees, taxes, and charges regularly assessed by Sprint only on telecommunications services (*e.g.*, cell phones) and not regularly assessed on certain data card services, but which, as Sprint has explained, were inadvertently assessed on data card services as a result of an error during the migration of accounts from Sprint's older billing system (known as "P2K") to its newer billing system (known as "Ensemble"). In the FAC, Plaintiffs also sought to challenge the assessment of certain early termination fees ("ETFs") by Sprint, although Plaintiffs never sought to certify a class relating to ETFs, and the instant settlement does not relate to ETFs.

Sprint moved to dismiss various of the causes of action in the FAC and moved to strike various portions of the FAC. Sprint also moved to dismiss and/or stay the action, arguing that Plaintiff UCAN lacked standing to pursue its claims and that the

-2-

1  Federal Communications Commission had primary jurisdiction over the matter. On April

2  15, 2008, this Court entered an Order Denying Defendants' Motion To Dismiss Pursuant

3  To Federal Rule Of Civil Procedure 12(b)(1), and on April 25, 2008, entered an Order On

4  Defendants' Motion To Dismiss And, Alternatively, Motion To Strike, granting in part and

5  denying in part those motions. In this Order, the Court also struck Plaintiff's prayer for

6  punitive damages.

7

8       On May 9, 2008, Plaintiffs filed their Second Amended Complaint ("SAC").

9  The SAC makes the same basic factual allegations as the FAC. However, in the SAC

10  Plaintiffs also sought to challenge two charges which were first assessed by Sprint on

11  January 1, 2008, known as the Administrative Charge and Regulatory Charge. The

12  settlement does not encompass these two charges.

13

14       In the SAC, Plaintiffs alleged claims for breach of contract and for alleged

15  violations of California Business and Professions Code §17200, *et seq.*, California Civil

16  Code §1750, *et seq.*, California Public Utilities Code §2890, *et seq.* and the Federal

17  Communications Act, 42 U.S.C. 201(b) ("FCA"), and for declaratory relief, money had

18  and received, money paid, and unjust enrichment. In addition to monetary and declaratory

19  relief, Plaintiffs also sought injunctive relief.

20

21       Shortly after Plaintiffs filed their SAC, Sprint moved to strike certain

22  portions of the SAC and also moved to dismiss Plaintiffs' Fifth Cause of Action for alleged

23  violations of the FCA. Plaintiffs opposed the motion. On July 10, 2008, this Court entered

24  its Order Granting Defendants' Motion To Dismiss Plaintiffs' Fifth Cause of Action. In

25  that same Order, the Court also ordered the parties to show cause why the Court should

26  maintain jurisdiction over the matter, given that the only claim establishing federal

27  question jurisdiction had been dismissed, and/or why the Court should decline jurisdiction

28

-3-

1  under 28 U.S.C. § 1332(d)(3) or 28 U.S.C. § 1332(d)(4).  The Court deferred ruling on

2  Defendants' motion to strike until the jurisdictional issue had been addressed.

3

4  The parties filed briefs on the issue of this Court's jurisdiction, and on

5  August 15, 2008, this Court entered its Order On Responses To Order To Show Cause And

6  Granting In Part And Denying In Part Motion To Strike.  In this Order, the Court found

7  that the requirements for diversity jurisdiction had been satisfied and that the Court should

8  maintain jurisdiction over the matter under the Class Action Fairness Act, 28 U.S.C.

9  §§ 1332(d) and 1711-15.  The Court also struck various provisions of the SAC and

10 declined to strike other portions of the SAC.

11

12 On September 8, 2008, Sprint filed its Answer to Second Amended

13 Complaint.  The parties later stipulated that Sprint could amend its Answer to the Second

14 Amended Complaint, and on January 16, 2009, Sprint filed its Amended Answer To

15 Second Amended Complaint.

16

17 Sprint agreed in its Answer and Amended Answer that it has over a million

18 data card customers, and that UCAN brought the issue of the state and local taxes to

19 Sprint's attention in June 2007.  Sprint's position in its Answer was that any mistakes that

20 may have been made by Sprint due to the billing conversion error would be informally

21 resolved by Sprint.  Further, according to Sprint, the SMS text message charges and

22 E911/WLNP Charges were specifically allowed by Sprint's Terms and Conditions

23 applicable to its customers' accounts.  In addition, effective January 1, 2008, Sprint

24 stopped assessing the E911/WLNP Charges.  Sprint also stated that it had resolved or

25 would resolve the underlying issues that resulted in Class Members being charged for SMS

26 text messages, and had resolved or would resolve the issue of federal, state and local taxes

27 attributable to the conversion of Sprint's billing systems.

28

-4-

1   During the litigation, extensive information was exchanged between the
2   parties as part of the Rule 26(a) disclosure process and in the course of discovery.
3   Documents were exchanged, interrogatories were answered, and depositions of witnesses
4   on both sides were taken in California, Kansas and Washington, D.C.

5

6   On April 17, 2009, Plaintiffs filed their motion for certification of a
7   nationwide class.  Sprint opposed the motion on various grounds, and Plaintiffs replied to
8   Sprint's opposition.  On June 9, 2009, the Court heard oral argument on the motion for
9   class certification, and on June 23, 2009, the Court issued its Order Re Class Certification,
10  denying Plaintiff's motion for certification of a nationwide class without prejudice to
11  possible certification of a California-only class, and ordered further briefing on certain
12  issues.  The parties have represented to the Court that the further briefing on class
13  certification was in the process of being completed when the settlement, described below,
14  was reached.

15

16  **B.     The Settlement.**

17

18  Further hearing of the motion for certification and the deadlines for briefing
19  thereon were continued several times, as the parties had begun settlement discussions in
20  earnest.  With the assistance of a private mediator (the Hon. Raymond Zvetina (retired) of
21  JAMS), in July 2009 the parties reached a settlement in principle on a nationwide basis.
22  The parties thereafter engaged in the time-consuming process of negotiating the language
23  of a formal, written Settlement Agreement.  A Settlement Agreement was signed by all
24  parties.  On October 23, 2009, the parties entered into a First Addendum to Settlement
25  Agreement, making some technical changes to some of the exhibits to the Settlement
26  Agreement (collectively, the Settlement Agreement and First Addendum to Settlement
27  Agreement will be referred to herein as the "Settlement Agreement").

28

-5-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

The Settlement Agreement defines "Class Members" as all customers of Sprint wireless data connection card services who:

- paid one or more E911 Charge (as defined in the Settlement Agreement) assessed between September 1, 2006 and December 31, 2007 on wireless data connection card services that did not provide voice capability (other than through access to the Internet); and/or

- paid one or more WLNP Charge (as defined in the Settlement Agreement) assessed between September 1, 2006 and December 31, 2007 on wireless data connection card services that did not provide voice capability (other than through access to the Internet); and/or

- paid one or more of the State Taxes (as defined in the Settlement Agreement) assessed between September 1, 2006 and the Preliminary Approval Date on wireless data connection card services that did not provide voice capability (other than through access to the Internet); and/or

- paid one or more SMS Text Message Charge (as defined in the Settlement Agreement) assessed between September 1, 2006 and the Preliminary Approval Date on wireless data connection card services that did not provide text message accessibility;

and

1         •    have not timely filed notice of their election to be excluded from the

2               class in accordance with this Court's Order Preliminarily Approving

3               Settlement and Class Notice Program, dated October 28, 2009, and

4               the notices provided pursuant to that Order and any other subsequent

5               orders issued in connection with the Settlement Agreement.

6

7         Specifically excluded from the class are:  (a) Sprint and Sprint's parents,

8 subsidiaries, affiliates, successors, and control persons, as well as officers, directors,

9 agents, attorneys, employees, and the immediate family members of all such persons; (b)

10 the Court and its staff; and (c) any customer of Sprint services for whom Sprint has

11 received a Notice of Automatic Stay or other notice that the customer has filed for

12 bankruptcy protection.

13

14         Under the terms of the settlement, if either current or former Sprint

15 customers fall within the definition of "Class Members," they are entitled to the following

16 relief:

17

18         •    For all federal, state and local taxes that have been erroneously

19               assessed to Class Members' accounts at any time during the class

20               period (September 1, 2006 through October 28, 2009, the date of the

21               preliminary approval order (the "Class Period"), Sprint shall

22               automatically refund 100% of such charges to the extent it has not

23               already done so;

24

25         •    100% of SMS text message charges will be refunded with submission

26               of a claim form, and Sprint has reprogrammed its billing system so

27

28

1  that no such charges will be assessed on data card services in the
2  future;

3

4  •  For all E911 and WLNP Charges assessed between September 1,
5  2006 and December 31, 2007, Sprint shall refund 50% of all amounts
6  collected for these charges to all Class Members who submit a claim
7  form, up to a total amount of $2.2 million. The aggregate limit for
8  total claims paid, combined with all expenses incurred by the Claims
9  Administrator for claims administration, shall not exceed $2.5 million.
10  If the total value of the claims submitted exceeds this amount, the
11  payments to the Class Members will be prorated.

12

13  There is a per-Class Member cap of $15 that applies only to the E911,
14  WLNP and SMS text message charges and, as the parties point out, the recovery should be
15  more than adequate to fully compensate the average Class Member.  The parties also
16  explain that the cap helps to prevent potential fraud in the claims process.  There is no cap
17  for the inadvertently-assessed state taxes, which are being fully refunded.

18

19  In addition to the consideration set forth above, the parties have agreed that
20  Class Counsel would request that the Court approve reimbursement of their fees and
21  expenses for prosecuting this action in the amount of $575,000, which includes $10,000 to
22  Taylor, based on the approximately 100 hours he expended helping to litigate, monitor and
23  participate in this case.  The parties have represented to the Court that the negotiations
24  regarding the payment of attorneys' fees and costs were conducted separately, after the
25  other principal terms of the settlement were agreed to.

26

27

28

1    In exchange for these benefits, the Class Members' claims against Sprint

2  arising out of the assessment of the federal, state and local taxes and fees, E911/WLNP

3  Charges and the SMS text message charges, as set forth in the SAC, are to be dismissed,

4  and all Class Members will release and be permanently barred from thereafter pursuing

5  any claims arising out of the allegations in the SAC relating to such charges.

6

7    The release provision is contained with paragraph 5 of the Settlement

8  Agreement.  It states:

9

10    5.  **Release**.  In further consideration of the terms and provisions of
    this Agreement, the parties hereto promise and agree as follows:

11
        5.1  Excepting only the obligations imposed by this
12      Agreement, Taylor, UCAN, and the Class Members shall, and
        by operation of the Final Approval Order do, forever relieve,
13      release and discharge Sprint and its respective successors,
        assigns, attorneys, accountants, insurers, representatives,
14      affiliates, parents, partners, officers, directors, stockholders,
        employees, and agents, and each of them, from any and all
15      claims, debts, liabilities, demands, obligations, promises, acts,
        agreements, costs, and expenses (including but not limited to
16      attorneys' fees), damages, actions, causes of action and
        claims for relief (referred to hereafter collectively as
17      "claims") of whatever kind or nature, under any theory,
        whether legal, equitable or other, under the law, either
18      common, constitutional, statutory, administrative, regulatory,
        or other, of any jurisdiction, foreign or domestic, whether
19      such claims are known or unknown, suspected or
        unsuspected, arising out of, connected with, or incidental to
20      the matters or facts alleged, or set forth in the Action for the
        Claims Period, including, without limitation, all claims
21      relating to State Taxes, SMS Text Message Charges, E911
        Charges, and WLNP Charges.

22
        5.2  Taylor, UCAN, and the Class Members expressly waive
23      any and all rights under Section 1542 of the Civil Code of the
        State of California, which provides as follows:

24
            "A GENERAL RELEASE DOES NOT EXTEND TO
25          CLAIMS WHICH THE CREDITOR DOES NOT
            KNOW OR SUSPECT TO EXIST IN HIS OR HER
26          FAVOR AT THE TIME OF EXECUTING THE
            RELEASE, WHICH IF KNOWN BY HIM OR HER
27          MUST HAVE MATERIALLY AFFECTED HIS OR
            HER SETTLEMENT WITH THE DEBTOR."

28
        _____

W02-WEST:8FP1\402470375.3
Case No. 07 CV 2231 RJB

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Taylor, UCAN, and the Class Members expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, or other comparable authority in other jurisdictions, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Taylor, UCAN, and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to the matters released herein. Nevertheless, it is the intention of Taylor, UCAN, and the Class Members by this Agreement, and with advice of counsel (or the opportunity to receive advice of counsel), fully, finally, and forever to settle and release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed between the parties, to the extent set forth within this Agreement. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional different claims or facts relative to the matters released. This is an essential term of this Agreement without which there would have been no settlement.

5.3  Excepting only obligations imposed by this Agreement, Sprint shall, and by operation of the Final Approval Order does, forever relieve, release, and discharge Taylor, UCAN, Class Counsel and UCAN's Counsel from any and all claims arising out of the investigation, initiation, litigation, prosecution and resolution of the Action, including, without limitation, claims for malicious prosecution, negligence, and abuse of process.

**C.     Preliminary Approval Of The Settlement And Notice To The Class.**

On October 9, 2009, the parties filed a Joint Motion for Entry of Order Preliminarily Approving Settlement and Class Notice Program.  After responding to questions posed by this Court, the parties submitted an amended proposed order.  On October 28, 2009, this Court entered an Order Preliminarily Approving Settlement and Class Notice Program, in which the Court preliminarily approved the settlement and ordered that notice to the class be given.

-10-

1      The Court ordered that notice to the proposed class be given no later than
2  sixty (60) days after entry of the preliminary approval order (*i.e.*, by December 27, 2009).
3  The Claims Administrator was also ordered to set up and maintain a website containing
4  information about the settlement and providing an electronic means of submitting claims.
5  Class Members could also request a paper claim form on which to submit claims.  January
6  28, 2010 was set as the last day for any proposed Class Member to object to the settlement
7  or to opt-out of the settlement.  The Court ordered that the final approval hearing would
8  take place on February 17, 2010, at 1:30 p.m.
9
10      On December 30, 2009, the parties filed a Joint Application for Final
11  Settlement Approval and Approving Payment of Fees and Costs.  A few days later they
12  filed a Corrected Joint Application for Final Settlement Approval and Approving Payment
13  of Fees and Costs.
14
15      As part of their request to finally approve the settlement, the parties
16  submitted a Declaration of Bernella Lenhart.  Ms. Lenhart is an employee of Gilardi &
17  Co., the parties' agreed-upon and Court-approved Claims Administrator.  Ms Lenhart
18  stated that notice of the settlement was mailed to the physical or email addresses associated
19  with over a million unique account numbers identified by Sprint as wireless data
20  connection card customers who had incurred one or more of the charges addressed in the
21  settlement during the Class Period.  The notice was sent by email to accounts where Sprint
22  had an email address associated with the customer's account.  Emails that were rejected as
23  undeliverable or as "spam" were collected and summary notices were mailed to the
24  physical address for the customer.  Physical notices were also mailed to all potential Class
25  Members for whom Sprint did not have an email address.  The Claims Administrator used
26  a third-party locator service as to notices returned as undeliverable.  Where an updated
27  address could be obtained, notice was re-sent.  The Claims Administrator received various
28

-11-

1   notices opting-out of the settlement.  The list of those potential Class Members who timely

2   opted out of the settlement is attached to this Order as Exhibit "A."  The Claims

3   Administrator, the Court and the parties also received several objections to the proposed

4   settlement (addressed below).

5

6          As set forth in Ms. Lenhart's declaration, notices to the attorneys general of

7   the 50 states and to the attorneys general of Washington, D.C., Puerto Rico and the U.S.

8   Virgin Islands were mailed by the Claims Administrator pursuant to the Class Action

9   Fairness Act.  The Court did not receive any objections to the settlement from any of these

10  attorneys general.

11

12  **D.     Final Settlement Approval and the Supplemental Notice Group.**

13

14         Prior to the February 17, 2010 final settlement approval hearing, the parties

15  filed a joint response to the settlement objections they had received.  The Court was also

16  presented with a further declaration of Bernella Lenhart from Gilardi & Co., and shortly

17  thereafter a supplemental declaration from Ms. Lenhart, stating that the Claims

18  Administrator and/or Class Counsel had received a total of 50 opt-outs prior to the

19  deadline set by the Court.

20

21         Also prior to the February 17, 2010 final settlement approval hearing, the

22  parties alerted the Court that, by mistake, a group of 11,386 potential class members had

23  not been given notice (hereinafter, the "Supplemental Notice Group").

24

25         On February 17, 2010, at 1:30 p.m. (the date identified by the Court in the

26  preliminary approval order and in the notices to the proposed class), the Court convened a

27  hearing on the parties' motion for final approval.  Counsel for the parties appeared.  No

28

-12-

individual Class Members appeared, other than through Class Counsel.  No objectors appeared.  At the hearing, counsel for Sprint further explained the issue regarding the Supplemental Notice Group, and the parties submitted a proposal to continue the final approval hearing, and set new dates for giving notice and deadlines for objecting to the settlement, opting out of the settlement and submitting claims, as to the Supplemental Notice Group only.

The Court adopted the parties' proposal, and continued the final approval hearing to April 14, 2010, at 1:30 p.m.  The Court ordered that notice was to be given to the Supplemental Notice Group by February 21, 2010, in the same manner and form as was given to the first group of potential Class Members.  The Court set March 25, 2010 as the last day for any Class Member in the Supplemental Notice Group to object to the settlement or to opt-out.  The Court also set May 22, 2010 as the last day for the Supplemental Notice Group Class Members to submit a proof of claim form.  Rulings on the objections to the settlement were deferred until the continued final settlement approval hearing on April 14, 2010.  As to the original group of potential Class Members to receive notice, the last day to submit claims remained the same.

As of the March 25, 2010 deadline, no Class Member from the Supplemental Notice Group had submitted an objection to the settlement.  As of the March 25, 2010 deadline, the Claims Administrator had received one (1) opt-out from the Supplemental Notice Group.  *See* Second Supplemental Declaration of Bernella Lenhart, filed with this Court on April 5, 2010.

The Court convened the continued final settlement approval hearing on April 14, 2010, at 1:30 p.m.  Counsel for the parties appeared.  No Class Members appeared, other than through Class Counsel.  No objectors appeared.

-13-

1    Having read and considered all of the papers submitted by the parties and the

2  Claims Administrator, and having considered the arguments of counsel, as discussed in

3  more detail below, the Court orders that the settlement as proposed by the parties be finally

4  approved, that a settlement class as defined by the parties be certified, that Dr. Taylor is

5  appointed Class Representative, that Consumer Law Group of California and Whatley

6  Drake & Kallas, LLC are appointed as Class Counsel.  The Court also grants Class

7  Counsel's request for payment of fees and costs, and for an incentive award to Dr. Taylor.

8  Finally, the action will be dismissed, with the Court reserving jurisdiction over the matter

9  for the purpose of enforcing the settlement.

10

11                                    **III.**

12      **LEGAL STANDARDS FOR APPROVAL OF CLASS SETTLEMENTS**

13

14    Federal courts favor the settlement of disputed claims, and there is a

15  particularly strong judicial policy favoring settlement of class litigation.  *Officers for*

16  *Justice v. Civil Service Comm.*, 688 F.2d 615, 625 (9th Cir. 1982).  When considering final

17  approval of a class action settlement, the Court should determine whether the settlement:

18  (a) was not the product of fraud or collusion; and (b) is fair, reasonable and adequate to the

19  class.  In determining whether the settlement is fair, reasonable, and adequate, the Court

20  must evaluate the settlement as a whole, rather than looking at specific components or

21  terms to accept or reject.  The settlement should stand or fall in its entirety.  *Id.*, at 628; *see*

22  *also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("The question we

23  address is not whether the final product could be prettier, smarter or snazzier, but whether

24  it is fair, adequate and free from collusion.")

25

26    In *Officers for Justice*, the Ninth Circuit endorsed the examination of the

27  following factors in determining whether a class action settlement is fair, reasonable and

28

adequate: (1) the experience and views of counsel; (2) the strengths and weaknesses of the plaintiff's case and the range of recovery when compared against the value of the settlement; (3) the risk of obtaining liability and class action status through trial and appeals; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.* at 625; *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

In determining the adequacy and reasonableness of a proposed settlement, the settlement is presumed to be fair where the settlement is reached through arms length bargaining, where investigation is sufficient to allow counsel and the Court to act intelligently, where counsel is experienced in similar litigation, and where the percentage of objectors is small. *Officers for Justice, supra*, 688 F.2d at 625. As discussed below, such a presumption is properly invoked here.

## IV.

## <u>THE SETTLEMENT SHOULD BE APPROVED</u>

**A.     The Settlement Is Not the Product Of Fraud Or Collusion.**

The history of this case provides strong evidence that the settlement was reached as a result of arms-length bargaining, and is not collusive. The litigation was approaching its two-year anniversary before the parties entered into their Settlement Agreement. A settlement was not achieved until the parties were assisted at mediation by retired Judge Zvetina. Even after the mediation, the parties continued to negotiate for almost three months before a formal, written Settlement Agreement was signed by the parties. The Court finds that this criterion for settlement approval has been met.

-15-

**B.     The Settlement Is Fair, Reasonable And Adequate.**

      1.     <u>The Experience And Views Of Counsel.</u>

      Plaintiffs submitted the declarations of attorneys Alan Mansfield, Adam Plant, and Art Neill of UCAN in support of the original Joint Motion for Order of Final Settlement Approval and Approving Payment of Fees and Costs.  They each agree that the settlement is fair, reasonable and adequate, and should be finally approved by this Court.

      The Court finds that Class Counsel collectively have years of experience in litigating consumer class actions and have negotiated numerous class settlements that have been approved by courts throughout the United States.  Mr. Mansfield has prosecuted class actions for almost 19 years.  He was ably assisted in this case by Messrs. Plant and Neill.  The Court also notes that Mr. Plant's law firm, Whatley Drake & Kallas, has significant experience in serving as class counsel.  Mr. Neill acts as in-house counsel for Plaintiff UCAN, and as such he is very familiar with that entity's work on behalf of consumers, often in a representative capacity.  This Court has no concerns about their good intentions and desire to represent the best interests of the class.  The Court gives due weight to their detailed explanations about why the settlement is fair, adequate and reasonable.

      Finally, the parties have represented that the negotiations for the payment of attorneys' fees and costs did not occur until after the parties had agreed to the other principal terms of the settlement.  The Court finds that this is further evidence that the settlement is not the product of fraud or collusion.

-16-

2.    <u>The Strengths And Weaknesses Of The Plaintiff's Case And The Range Of Recovery When Compared Against The Value Of The Settlement.</u>

Although Class Counsel believe they had a strong case, they also have stated that this case was certainly not without risk in terms of liability and the range of possible recovery, including:  (1) that there would be disputes about whether the taxes and fees at issue were accurately classified or subject to change; (2) if not, whether any mistake was either inadvertent or immaterial; (3) whether reliance would be an element of some or all such claims; (4) whether Sprint properly remedied the assessment of the taxes, fees and charges in issue; and (5) whether the actual or even an average of out-of-pocket expenses Class Members incurred in paying for such charges could be determined.

As Class Counsel also acknowledged, any potential recovery by the class could also have been defeated or limited because:  (1) the Court could have required individual trials even if common questions were resolved in a class-wide proceeding; (2) the Court could have required Class Members to establish reliance on the disclosures; (3) after the lawsuit was filed, Sprint corrected and credited, or was in the process of correcting or crediting,  at least a portion of these charges and changed the type and description of the fees they assessed; (3) the Court could have required Class Members to submit individual claims with documentation; and (4) the Court could have required Class Members to agree to cancel their Sprint service to show that the representations about these charges were material changes.  The Court finds that based on these considerations, possible recovery ranged from zero to full refunds of the charges at issue.  Full recovery was by no means certain.

When evaluating a settlement, the Court also looks at the potential recovery made available to both the individual Class Members and to the class as a whole.  *Cf.*,

-17-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1   *Williams v. MGM-Pathe Communications*, 129 F.3d 1026 (9th Cir. 1997).  The benefits

2   provided to the Class Members under this settlement are substantial.  Class Members will

3   be reimbursed for all of the federal, state, and local taxes in issue in the case.  Moreover,

4   Class Members have the ability—by submitting a simple claim form electronically or by

5   mail—to all of their SMS text message charges and one-half of their E911/WLNP charges.

6   Alternatively, they have the right to opt out and pursue individual claims if they believe

7   they are entitled to a greater recovery.  When balancing the strengths and weaknesses of

8   the case against the possible range of recovery, the Court finds that the settlement is fair,

9   reasonable and adequate.

10

11          3.      The Risk Of Establishing Liability And Class Action Status Through Trial

12                  And Appeals.

13

14          Class certification orders are conditional in nature and may be changed,

15   modified, or reversed at any time up until final judgment.  Fed. Rules of Civ. Proc., Rule

16   23; *Hanlon, supra*, 150 F.2d at 1022-23.  The Court had already declined to certify a

17   nationwide class.  Thus, the Court finds that Plaintiffs faced the risk that any class certified

18   in this case could be limited in scope and could later be decertified or modified before or

19   after trial, or perhaps subsequently vacated on appeal.

20

21          Under *Hanlon*, the Court may reaffirm its initial determination (*i.e.*,

22   preliminary approval) that certification of a nationwide class for settlement purposes is

23   proper based on the evidence presented.  At this point, no Class Member has objected on

24   the ground that a nationwide class is inappropriate for settlement purposes, as set forth in

25   detail below.

26

27

28

-18-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1    4.    <u>The Complexity, Expense, And Duration Of Litigation.</u>

2

3         The Court is satisfied that the case was complex.  Plaintiffs were challenging

4    numerous charges assessed by Sprint to its data card customers.  Although Sprint

5    acknowledged at an early stage that certain taxes were erroneously assessed on data card

6    services and certain SMS text message charges had been erroneously assessed, Sprint's

7    corrective actions were ongoing and the evaluation of the propriety of the E911/WLNP

8    Charges was complex.

9

10        The litigation extended almost two years before the settlement was reached,

11   and could have lasted considerably longer, including through appeal.  Such litigation is

12   inherently expensive.  Taking the case through trial—whether on behalf of a nationwide

13   class or a California-only class—would have been enormously expensive, especially when

14   compared to the relatively small amounts at issue for each Class Member.

15

16        The Court is satisfied that evaluation of the complexity, duration and

17   expense of the litigation weighs in favor of approving the settlement.

18

19    5.    <u>The Substance And Amount Of Opposition To The Settlement.</u>

20

21        There has been very little opposition to the proposed settlement.  The

22   objections to the settlement will be addressed individually below.  It is sufficient to note

23   that in general, the objections typically are not substantive or detailed and/or do not

24   address the settlement terms.

25

26        Also, the Court notes that, out of over a million accounts given notice of the

27   settlement, only 51 potential Class Members opted-out of the settlement.  The fact that so

28

W02-WEST:8FP1\402470375.3
Case No. 07 CV 2231 RJB

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1  few opted out of the settlement suggests to the Court that as a whole the Class views the

2  settlement as fair, reasonable and adequate.

3

4      In short, the extent and substance of the opposition to the settlement weighs

5  in favor of approving the settlement.

6

7  6.    The Stage Of Proceedings At Which The Settlement Was Achieved.

8

9      The final factor set forth in *Officers in Justice* that should be considered in

10  the context of approving a class action settlement is the stage of the proceedings at which

11  the settlement was reached. *Officers for Justice, supra*, 688 F.2d at 625.

12

13      Here, Plaintiffs' theories and claims were tested by motions to dismiss and a

14  motion for class certification.  At the time of settlement, the parties were briefing a second

15  round of issues related to class certification.  The parties represented to the Court that in

16  response to both informal and formal discovery, Sprint had supplied a significant amount

17  of evidentiary information about the charges at issue.  The discovery cutoff date was

18  approaching.  The trial date—previously continued by the Court at the request of the

19  parties—was also approaching.

20

21      Thus, Class Counsel were in a position at the time the settlement was

22  reached to understand the strengths and weaknesses of the action such that they could

23  make an intelligent and informed decision regarding the reasonableness of the settlement

24  terms.  And in fact, Class Counsel has assured the Court that they believed at the time of

25  settlement they possessed sufficient understanding of the facts and legal theories that they

26  could make such an intelligent and informed decision.  Evaluation of this factor weighs in

27  favor of approving the settlement.

28

-20-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1    Based on a weighing of all the relevant factors set forth in *Officers in Justice*,

2 the Court finds that the settlement terms as a whole are fair, reasonable and adequate, and

3 should be finally approved by this Court.

4

5                                      V.

6 **THE CLASS HAS RECEIVED FAIR AND ADEQUATE NOTICE OF THE**

7 **SETTLEMENT**

8

9    As discussed above, individual Class Members received actual notice of this

10 settlement.  Notice of the settlement was mailed to the physical or email addresses

11 associated with the account numbers identified by Sprint as wireless data connection card

12 customers who had incurred one or more of the charges addressed in the settlement during

13 the Class Period.   The notice was sent by email to accounts where Sprint had an email

14 address associated with the customer's account.  Emails that were rejected as undeliverable

15 or as "spam" were collected and summary notices were mailed to the physical address for

16 the customer.  Physical notices were also mailed to all potential Class Members for whom

17 Sprint did not have an email address.  The Claims Administrator used a third-party locator

18 service as to notices returned as undeliverable.  Where an updated address could be

19 obtained, notice was re-sent.  The Claims Administrator also maintained a website for

20 Class Members to obtain information about the case and the settlement, and to submit

21 claims electronically.

22

23    When Sprint discovered that the 11,386 members of the Supplemental

24 Notice Group were inadvertently omitted from the initial notice, the parties brought the

25 issue to the Court's attention and proposed a supplemental notice and timeline for such

26 notice, and the final approval hearing was continued.

27

28

                                      -21-

1    The Court finds that the notice as given to the class is fair and adequate.

2

3                                   **VI.**

4                    **OBJECTIONS TO THE SETTLEMENT**

5

6           Only a few objections to the proposed settlement were filed.  Some of the

7    objections addressed below may not be objections at all, but the Court reads the documents

8    liberally and addresses each in turn.

9

10   **AndoverLaw, P.C.**

11

12          AndoverLaw, P.C., a law firm in Andover, Massachusetts, filed an objection

13   on December 30, 2009.  The objection was submitted by Timothy Sullivan on behalf of

14   AndoverLaw.  AndoverLaw asserts that the settlement appears "collusive", that the class is

15   not receiving enough relief, and that Class Counsel would receive too much in terms of an

16   award of fees and costs.  AndoverLaw provides no factual support for its objections.

17

18          The parties strongly disagree with the assertions of this objector.  The record

19   before the Court shows that the case was litigated extensively and all of the issues were

20   properly flushed out.  The parties point out that liability was hotly disputed and heavily

21   litigated.  Despite this, the parties have agreed that Sprint will refund to the Class Members

22   all of the state taxes inadvertently assessed as a result in a conversion of billing systems

23   and, on a claims made basis, half of the WLNP and E911 charges assessed from

24   September 2006 through October 2009 and all of the text message charges incurred.  In

25   addition, negotiation of the fee and costs provisions of this settlement did not take place

26   until the material terms had been agreed to between the parties.

27

28
                                        -22-

1        The settlement was mediated by a well-respected retired judge.  It is not

2   collusive, and the class will be adequately compensated.

3

4        Class Counsel will be properly paid for their work in this hard-fought

5   litigation.  The litigation lasted for years, and involved extensive discovery, motion work

6   and settlement negotiations.  Class Counsel do not request a multiplier to their lodestar

7   attorneys' fees (hours multiplied by hourly rates).

8

9        The Court finds that the objection of AndoverLaw, P.C. is not well taken and

10  is OVERRULED.

11

12  **Karrol Nelson**

13

14        Karrol Nelson filed an objection on January 6, 2010.  Ms. Nelson alleges that

15  the settlement should be rejected because it does not compensate Class Members for

16  certain SMS text message charges and "two-way messaging" charges.

17

18        Sprint represents that it has investigated this Class Member's account.  Sprint

19  states that this Class Member had a data card for a period of time, but later canceled that

20  subscription.  The Class Member also has mobile phone lines with Sprint.  Sprint has

21  submitted a declaration of Mark Potter, a Sprint employee, stating that the charges about

22  which Ms. Nelson complains are SMS text message and two-way messaging charges on

23  phones, not data cards.

24

25        Ms. Nelson's objection does not pertain to the subject matter of this lawsuit.

26  Ms. Nelson may participate in the settlement with respect to data cards.  Her objection is

27  OVERRULED.

28

-23-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

**Melissa Hosteter**

On January 13, 2010, Melissa Hosteter filed a document with the Court. Ms. Hosteter states that she previously filed for bankruptcy. Her statement may not be an objection, but rather a request for exclusion or perhaps clarification.

As the parties correctly point out, under section 3.7.6 of the Settlement Agreement, Sprint customers who filed for bankruptcy protection are not eligible to participate in the settlement. They are specifically excluded from the definition of a "Class Member."

Ms. Hosteter is not a Class Member under the Settlement Agreement. To the extent her filing is deemed an objection to the proposed settlement, her objection is OVERRULED.

**Brian Lillibridge**

Mr. Lillibridge filed an objection on January 25, 2010. He asserts that the class period should extend through January 2009, and should also include compensation for the Administrative Charges and Regulatory Charges that were first assessed on January 1, 2008. He also complains that he received some charges for state taxes on his data card account.

The Class Period extends up to the date of the Court's Preliminary Approval Order (*see* Settlement Agreement at 3.8), which was entered on October 28, 2009, well after the date suggested by Mr. Lillibridge.

W02-WEST:8FP1\402470375.3
Case No. 07 CV 2231 RJB

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1    Mr. Lillibridge may have merely made a mistake as to the year, and intended

2    the objection to state that the class period should extend to January 2010. However,

3    extending the deadline would be pointless, as the E911/WLNP Charges ended on

4    December 31, 2007, which was prior to the date of the Preliminary Approval Order.

5    Further, Sprint has put into place procedures to block text message charges on data cards.

6    Thus, extending the deadline would accomplish nothing.

7

8    As to the Michigan state and county taxes about which Mr. Lillibridge

9    complains, Sprint has submitted a declaration stating that Mr. Lillibridge's account was

10   credited for those taxes. His claim with respect to the billing conversion charges has been

11   satisfied.

12

13   Further, while the Administrative Charges and Regulatory Charges

14   mentioned by Mr. Lillibridge were a part of the SAC, they were not included within the

15   Settlement Agreement. Mr. Lillibridge is not barred by this settlement from pursuing a

16   claim based upon these charges.

17

18   Mr. Lillibridge's objections are OVERRULED.

19

20   **Larry Brooks**

21

22   Larry Brooks filed a document with the Court on January 27, 2010. He

23   states that he wants to be included in class, but he also wants to recover data plan charges

24   pertaining to his Sprint mobile phone (that is, charges to obtain data and Internet access on

25   his Sprint wireless phone). Mr. Brooks' letter could be deemed an objection to the

26   settlement to the extent it does not include any compensation for data plans on phones.

27   For purposes of addressing objections, the Court therefore deems it to be an objection.

28

-25-

1    Since the filing of Plaintiffs' initial complaint, this lawsuit has always been

2 about broadband data connection cards, not data plans on mobile phones.  Such plans were

3 not part of any complaint, not part of Plaintiffs' motion for class certification, and not part

4 of the Settlement Agreement.  Mr. Brooks is not barred by the Settlement Agreement from

5 pursuing such a claim.

6

7    Mr. Brooks' letter, to the extent it is deemed an objection to the settlement, is

8 OVERRULED.

9

10                                   **VII.**

11            **CERTIFICATION OF THE SETTLEMENT CLASS**

12

13    As part of its preliminary approval order, the Court provisionally certified

14 the class for settlement purposes only.  With respect to the class, the Court finally finds

15 and concludes, for settlement purposes only based upon the submissions of the parties,

16 that: (a) Class Members are so numerous as to make joinder of them impracticable;

17 (b) there are questions of law and fact common to the class, and such questions

18 predominate over any questions affecting only individual Class Members; (c) the Class

19 Representative's claims and the defenses asserted thereto are typical of the claims of Class

20 Members and the defenses asserted thereto; (d) Class Representative and Class Counsel

21 have fairly and adequately protected the interests of Class Members throughout this action;

22 and (e) a class action is superior to all other available methods for fairly and efficiently

23 resolving this action, considering (i) the interests of the Class Members in individually

24 controlling the prosecution of separate actions; (ii) the extent and nature of the litigation

25 concerning the controversy already commenced by Class Members; (iii) the desirability

26 and undesirability of concentrating the litigation of these claims in a particular forum; and

27 (iv) the difficulties likely to be encountered in the management of a class action.  The

28

1   Court therefore determines that this action satisfies the prerequisites for class certification

2   set forth in Federal Rule of Civil Procedure 23(a), and may be maintained as a class action

3   under Federal Rule of Civil Procedure 23(b)(3), with Dr. Taylor as the Class

4   Representative.

5

6                                               **VIII.**

7                       **CLASS COUNSEL ARE ENTITLED TO AN AWARD**

8                            **OF ATTORNEYS' FEES AND COSTS**

9

10                  As part of their motion for final approval of this settlement, Class Counsel

11  request an award for reimbursement of fees and costs.  The Settlement Agreement provides

12  that Class Counsel may request an award of attorneys' fees and reimbursement of expenses

13  incurred during the course of this litigation in the amount of $575,000.00.  Class Counsel

14  points out that this amount is less than 25% of the $2.2 million that could potentially be

15  paid to the Class, and that this $2.2 million figure does not include the amount of refunds

16  provided by Sprint for state and local taxes inadvertently assessed to data card accounts as

17  the result of an error during a conversion in billing systems.  If the amount of these refunds

18  of state and local taxes is taken into account, the percentage is even lower.  Class Counsel

19  do not request that a multiplier be applied to the total of fees and costs requested, despite

20  the results achieved, the various risks of going forward with litigation, and the contingent

21  nature of their work.

22

23                  Class Counsel also emphasize that the fact that Sprint has agreed to pay this

24  amount without resorting to an adversarial motion is further evidence of its reasonableness.

25  Class Counsel assert that Sprint's agreement shows that market forces are at work in terms

26  of setting a reasonable fee.

27

28
                                             -27-

1    For the reasons set forth below, the Court finds that Class Counsel are
2  entitled to a total award of fees and costs in the amount of $565,000 to be paid by Sprint.
3  $10,000 will be paid to Plaintiff Taylor by Class Counsel as an incentive award for serving
4  as the Class Representative.  Because Class Counsel have represented to the Court that
5  they have agreed amongst themselves upon an apportionment of the award, the Court will
6  not apportion the award among them.

7

8  **A.     A Fee And Expense Award Of $565,000 Is Reasonable.**

9

10    Initially, the Court notes that it may evaluate the request for fees and costs
11  either as a percentage of the total amount recovered by the Class, or on a lodestar basis
12  (calculating an award based upon a reasonable number of hours worked multiplied by a
13  reasonable hourly rate).  *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1001, 1029 ("in
14  'common fund' cases where the settlement or award creates a large fund for distribution to
15  the class, the district court has discretion to use either a percentage or lodestar method.")

16

17    Class Counsel point out that fee reimbursement is available under California
18  consumer protection statutes, such as the Consumers Legal Remedies Act, which is
19  Plaintiffs' third cause of action in the SAC.  Class Counsel argue that it is appropriate to
20  consider California state law regarding fees and costs in determining the reasonableness of
21  the requested fee award because of the state law causes of action.  Under California law,
22  declarations to support a fee application detailing the work performed and the reasonable
23  hourly rate for such services provide adequate evidentiary support for the requested
24  amount.  *Wershba v. Apple Computers,* 91 Cal.App.4th 224, 255 (2001).

25

26    Class Counsel have submitted declarations in conjunction with the motion
27  for final approval.  Their collective lodestar plus out-of-pocket expenses total over

28

-28-

1  $565,000. Messrs. Mansfield, Neill and Plant, the primary attorneys who worked on this

2  matter on behalf of the class, also declare that their standard hourly rates have been

3  approved by other adjudicatory forums in other matters.

4

5      The Court finds that their lodestar and expenses are reasonable considering

6  the substantial work performed during the course of this litigation, and considering that

7  their standard hourly rates have been approved by courts in other class action cases.

8

9  **B.      Sprint's Agreement To This Amount Also Shows The Reasonableness Of The**

10         **Request.**

11

12     Class Counsel assert that because Sprint, after extensive negotiation, agreed

13  to this fee and expense award is also an appropriate factor for the Court to consider in

14  reviewing their fee application. Representatives of both parties also represent that the

15  substantive terms of the settlement had been agreed to between the parties *before* there was

16  ever any discussion of the amount of fees and costs to be paid by Class Counsel. Thus,

17  the fee provision was negotiated such that there was no potential conflict with the Class,

18  and that there can be no argument that such amounts were "traded off" for lesser class

19  consideration to the Class.

20

21     In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court held that

22  negotiated attorneys' fee provisions are the "ideal" toward which the parties should strive:

23  "a request for attorneys' fees should not result in a second major litigation. Ideally, of

24  course, litigants will settle the amount of a fee." *Id.* at 437.

25

26     Fee arrangements between plaintiffs and defendants in class actions are

27  encouraged. This is particularly so where, as here, the attorneys' fees to be requested are

28

-29-

1   negotiated separately *after* the settlement terms of the class claims have been agreed to by

2   the parties, and are to be paid on top of the class consideration. *Johnson v. Georgia*

3   *Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we

4   encourage counsel on both sides to utilize their best efforts to understandingly,

5   sympathetically, and professionally arrive at a settlement as to attorneys' fees.")

6

7           "[M]arkets know market value better than judges do." *In Re Continental*

8   *Illinois Securities Litigation,* 962 F.2d 566, 570 (7th Cir. 1992) (Judge Posner). Here, the

9   cap on the amount of the fees to be requested and the agreement to pay fees and costs as

10  reasonable, was negotiated under market conditions. Class Counsel wanted to maximize

11  fees to compensate them, just as the law encourages—for risk, innovation and delay—

12  while Sprint wanted to pay the minimum amount it could. The result is an arm's-length

13  negotiated amount set by market forces, and resolved only after the other settlement terms

14  had been agreed to in principle. The Court finds that this factor weighs in favor of

15  approving the requested amount.

16

17  **C.      A $10,000 Incentive Award To the Class Representative Is Reasonable.**

18

19          Finally, Class Counsel request that the Court approve a $10,000 payment to

20  Dr. Taylor, out of the $575,000 amount set forth in the Settlement Agreement, for acting as

21  the Class Representative. The amount is based on the time he expended dealing with

22  Sprint and Class Counsel on these issues, gathering documents, attending deposition and

23  mediation, and providing declarations. He also reviewed the settlement to ensure it was

24  reasonable, devoting close to 100 hours to this action, despite the fact that he is a medical

25  doctor.

26

27

28

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1    The Court finds that the requested $10,000 incentive award to Plaintiff

2 Taylor is reasonable.

3

4                                          IX.

5                                   **CONCLUSION**

6

7        For all of the reasons discussed above, the Court orders as follows:

8

9    1.    The Settlement Agreement as presented to the Court is finally approved;

10

11   2.    A nationwide settlement class is hereby certified and, with the exception of

12         those Class Members who timely opted out of the settlement and who are

13         identified on Exhibit "A" hereto, the class is defined as follows:

14

15         All customers of Sprint wireless data connection card services who:

16

17         •    paid one or more E911 Charge assessed between September 1, 2006

18              and December 31, 2007 on wireless data connection card services that

19              did not provide voice capability (other than through access to the

20              Internet); and/or

21

22         •    paid one or more WLNP Charge assessed between September 1, 2006

23              and December 31, 2007 on wireless data connection card services that

24              did not provide voice capability (other than through access to the

25              Internet); and/or

26

27

28
                                          -31-

1

- paid one or more of the State Taxes assessed between September 1, 2006 and the Preliminary Approval Date on wireless data connection card services that did not provide voice capability (other than through access to the Internet); and/or

- paid one or more SMS Text Message Charge assessed between September 1, 2006 and the Preliminary Approval Date on wireless data connection card services that did not provide text message accessibility;

and

- have not timely filed notice of their election to be excluded from the class in accordance with this Court's Order Preliminarily Approving Settlement and Class Notice Program, dated October 28, 2009, and the notices provided pursuant to that Order and any other subsequent orders issued in connection with the Settlement Agreement;

3. Plaintiff Dr. Eric Taylor is appointed Class Representative;

4. Consumer Law Group of California and Whatley Drake & Kallas, LLC are appointed Class Counsel;

5. Each objection to the settlement received by the Court is OVERRULED;

6. Class Counsel are awarded their fees and costs in the amount of $565,000, to be paid by Sprint in accordance with the Settlement Agreement;

-32-

7. The award of fees and costs awarded to Class Counsel shall be apportioned among them pursuant to their agreement;

8. The total sum of $10,000 is to be paid to Dr. Taylor as an incentive award in accordance with the Settlement Agreement; and

9. The action will be dismissed with prejudice, and Judgment will be entered accordingly, effective as of the date of this Order.

10. In consideration of the Settlement Agreement and the benefits contained therein, the Class Representative, on behalf of himself and the class, and each Class Member, either have or are deemed by operation of this Order and the Judgment to have forever relieved, released and discharged Sprint and its respective successors, assigns, attorneys, accountants, insurers, representatives, affiliates, parents, partners, officers, directors, stockholders, employees, and agents, and each of them, from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs, and expenses (including but not limited to attorneys' fees), damages, actions, causes of action and claims for relief of whatever kind or nature, under any theory, whether legal, equitable or other, under the law, either common, constitutional, statutory, administrative, regulatory, or other, of any jurisdiction, foreign or domestic, whether such claims are known or unknown, suspected or unsuspected, arising out of, connected with, or incidental to the matters or facts alleged, or set forth in the Action for the Claims Period, including, without limitation, all claims relating to State Taxes, SMS Text Message Charges, E911 Charges, and WLNP Charges. In addition, Sprint by operation of this Court's Order of Final Approval of Class

-33-

Action Settlement and this Judgment shall have released, relinquished and discharged the claims set forth in Section 5.3 of the Settlement Agreement.

11.  Without affecting the finality of the Judgment to be entered pursuant to this Order, this Court retains continuing jurisdiction of this class action settlement, including the administration, consummation, and enforcement of the Settlement Agreement.  In addition, without affecting the finality of the Judgment entered pursuant to this Order, this Court retains jurisdiction over Sprint and each Class Member, who are deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding or dispute arising out of or relating to this Order.

12.  Effective as of this date, the Court orders and enters a permanent injunction barring and enjoining the Class Representative and all Class Members from bringing, filing, commencing, prosecuting, continuing to prosecute, maintaining, intervening in, participating in, or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding in law or equity against Sprint that asserts, arises from, concerns, or is in any way related to State Taxes, SMS Text Message Charges, E911 Charges, and WLNP Charges.

IT IS SO ORDERED.

Dated: April ____, 2010

_____
HON. ROBERT J. BRYAN
UNITED STATES DISTRICT COURT JUDGE

W02-WEST:8FP1:402470375.3
Case No. 07 CV 2231 RJB

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Taylor v Sprint
Opt Outs

Count:       51

| Control # | FirstName | LastName |
|-----------|-----------|----------|
| TUCAN11897287 | SOLA | OLUKAYODE |
| TUCAN11976977 | LIZ CLAIBORNE INC. | |
| TUCAN11999705 | AAA NATIONAL / P.O. #018783 | |
| TUCAN12012319 | QVC INC. | |
| TUCAN12117064 | COLLINS ELECTRICAL SYSTEMS | |
| TUCAN12171832 | AAA AUTOMOTIVE SERVICES | |
| TUCAN12194972 | CITATION OIL & GAS CORP | |
| TUCAN12291366 | QVC INC MAIN ACCOUNT | |
| TUCAN12498726 | FABRICATIONS LTD | |
| TUCAN12620645 | CITY OF BELLEVUE POLICE | DEPARTMENT |
| TUCAN12653233 | HARFORD COUNTY SHERIFF'S | DEPARTMENT |
| TUCAN13053264 | MATHWORKS | |
| TUCAN13222848 | BELLEVUE FIRE DEPARTMENT | |
| TUCAN13334450 | IDEAS | |
| TUCAN14610370 | LIZ | CLAIBORNE |
| TUCAN15211002 | AARON | REYER |
| TUCAN15671682 | BRENDA CERVONI | TORRES |
| TUCAN15894673 | JOSEPH | NEWSON |
| TUCAN17296056 | OLYMPIA HAULING AND | REALITY |
| TUCAN17517591 | CAMERON W | WILSON |
| TUCAN18269753 | SIEMENS WATER | TECHNOLOGIES |
| TUCAN18672167 | GERARDO | GONZALEZ |
| TUCAN20053045 | JENNIFER | WEST |
| TUCAN20129769 | ANTONIO | GOLDSMITH |
| TUCAN20303424 | MARK | PRATT |
| TUCAN20337329 | LINDA | GERHARDT |
| TUCAN20454678 | MAREK | MATULEWICZ |
| TUCAN21129274 | SIEMENS WATER | TECHNOLOGY |
| TUCAN21572577 | CHRISTOPHER | D'AMOUR |
| TUCAN21877467 | STELLA | CHIU |
| TUCAN22363270 | GARY | DUSZYNSKI |
| TUCAN22496874 | WILLIAM HARRISON BIERMAN | 3RD |
| TUCAN23462086 | MELISSA | JOHNSON |
| TUCAN25081047 | TOP | LINGO |
| TUCAN25219391 | BLAISE | KLEEFISCH |
| TUCAN25289586 | REGINALD F | VAN NURDEN |
| TUCAN25462652 | TIMOTHY J | YOGERST |
| TUCAN25520768 | UNIVERSITY OF | CONNECTICUT |
| TUCAN25526162 | UNIVERSITY OF | CONNECTICUT |
| TUCAN25864246 | JONATHAN | SATO |
| TUCAN26262991 | HYTEK MATERIAL | HANDLING |
| TUCAN26411709 | ROBIN | JOHNSON |
| TUCAN26441837 | TRUCKERS MINISTRIES | ATTN: OLEM THOMPSON |
| TUCAN26820080 | JOHN | SCHWARTZ |
| TUCAN27389960 | CHARLENE | POWELL |
| TUCAN28223497 | WARNER NORCOSS & JUDD | LLP |



EXHIBIT A

TUCAN28474066  BETTY L            JOHNSON
TUCAN29597013  MARY               CHAMBERS
TUCAN30418771  REBECCA            SHORTT
TUCAN31128890  AMY                BUCHANAN
TUCAN31563147  SHIRLEY            HEMPHILL

**EXHIBIT** A