1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

| | |
|---|---|
| UTILITY CONSUMERS' ACTION NETWORK and ERIC TAYLOR, on behalf of themselves, their members and/or all others similarly situated, as applicable, <br><br> Plaintiffs, <br><br> v. <br><br> SPRINT SOLUTIONS, INC.; and SPRINT SPECTRUM L.P., <br><br> Defendants. | Case No. 07 CV 2231 RJB <br><br> **ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Judge:    Hon. Robert J. Bryan |

18

19

20

21

22

23

24

25

26

27

28

# I.

## <u>INTRODUCTION</u>

The parties to this case are Plaintiffs Utility Consumers' Action Network ("UCAN") and Dr. Eric Taylor ("Dr. Taylor") (collectively, "Plaintiffs") and Defendants Sprint Solutions, Inc. and Sprint Spectrum, L.P. (collectively, "Sprint").

The parties now jointly ask this Court for an order finally approving a nationwide class action settlement, certifying a settlement class, appointing Dr. Taylor as the Class Representative, and appointing Consumer Law Group of California and Whatley Drake and Kallas, LLC as Class Counsel.  Class Counsel also seek an award of attorneys' fees and expenses, and authorization for an incentive payment to Dr. Taylor.

For the reasons set forth below, this Court will approve the nationwide class action settlement, certify a nationwide class, appoint Plaintiff Taylor as Class Representative, appoint Consumer Law Group of California and Whatley Drake and Kallas, LLC as Class Counsel, approve the request for attorneys' fees and costs as requested by Class Counsel, approve an incentive award to Dr.  Taylor, and dismiss the action as to the matters released in the settlement.  The Court will retain jurisdiction over the matter for the purpose of enforcing the Settlement Agreement.

Words and phrases with initial capital letters and which are defined terms in the parties' Settlement Agreement have the same meaning herein as in the Settlement Agreement.

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# II.

## SUMMARY OF BACKGROUND FACTS AND THE SETTLEMENT

**A.      Summary Of The Litigation Prior to Settlement.**

Plaintiffs filed the original Complaint in this action on November 21, 2007, and thereafter filed a First Amended Complaint ("FAC") on January 2, 2008.

In the original Complaint and the FAC, Plaintiffs alleged various claims against Sprint arising out of charges assessed on Sprint broadband data connection card (sometimes known as and hereinafter referred to as a "data card") services for certain federal, state and local taxes, SMS (also known as text message) charges, and Federal E911 and Wireless Number Pooling and Portability charges ("E911/WLNP Charges").

Beginning in September 2006, Sprint charged certain federal, state, and local fees, taxes, and charges regularly assessed by Sprint only on telecommunications services (*e.g.*, cell phones) and not regularly assessed on certain data card services, but which, as Sprint has explained, were inadvertently assessed on data card services as a result of an error during the migration of accounts from Sprint's P2K billing system to its Ensemble billing system.  In the FAC, Plaintiffs also sought to challenge the assessment of certain early termination fees ("ETFs") by Sprint, although Plaintiffs never sought to certify a class relating to ETFs, and the instant settlement does not relate to ETFs.

Sprint moved to dismiss various claims for relief in the FAC and moved to strike various portions of the FAC.  Sprint also moved to dismiss and/or stay the action, arguing that Plaintiff UCAN lacked standing to pursue its claims and that the Federal Communications Commission had primary jurisdiction over the matter.  On April 15,

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

2008, this Court entered an Order Denying Defendants' Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(1), and on April 25, 2008, entered an Order On Defendants' Motion To Dismiss And, Alternatively, Motion To Strike, granting in part and denying in part those motions.  In this latter Order, the Court also struck Plaintiff's prayer for punitive damages.

On May 9, 2008, Plaintiffs filed their Second Amended Complaint ("SAC").  The SAC made the same basic factual allegations as the FAC.  However, in the SAC Plaintiffs also sought to challenge two charges which were first assessed by Sprint on January 1, 2008, known as the Administrative Charge and Regulatory Charge.  The settlement does not encompass these two charges.

In the SAC, Plaintiffs alleged claims for breach of contract and for alleged violations of California Business and Professions Code §17200, *et seq.,* California Civil Code §1750, *et seq.,* California Public Utilities Code §2890, *et seq.* and the Federal Communications Act, 42 U.S.C. 201(b) ("FCA"), and for declaratory relief, money had and received, money paid, and unjust enrichment.  In addition to monetary and declaratory relief, Plaintiffs also sought injunctive relief.

Shortly after Plaintiffs filed their SAC, Sprint moved to strike certain portions of the SAC and also moved to dismiss Plaintiffs' Fifth Cause of Action for alleged violations of the FCA.  Plaintiffs opposed the motion.  On July 10, 2008, this Court entered its Order Granting Defendants' Motion To Dismiss Plaintiffs' Fifth Cause of Action.  In that same Order, the Court also ordered the parties to show cause why the Court should maintain jurisdiction over the matter, given that the only claim establishing federal question jurisdiction had been dismissed, and/or why the Court should decline jurisdiction

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1   under 28 U.S.C. § 1332(d)(3) or 28 U.S.C. § 1332(d)(4).  The Court deferred ruling on

2   Defendants' motion to strike until the jurisdictional issue had been addressed.

3

4          The parties filed briefs on the issue of this Court's jurisdiction, and on

5   August 15, 2008, this Court entered its Order On Responses To Order To Show Cause And

6   Granting In Part And Denying In Part Motion To Strike.  In this Order, the Court found

7   that the requirements for diversity jurisdiction had been satisfied and that the Court should

8   maintain jurisdiction over the matter under the Class Action Fairness Act, 28 U.S.C.

9   §§ 1332(d) and 1711-15.  The Court also struck various provisions of the SAC and

10  declined to strike other portions of the SAC.

11

12         On September 8, 2008, Sprint filed its Answer to Second Amended

13  Complaint.  The parties later stipulated that Sprint could amend its Answer to the Second

14  Amended Complaint, and on January 16, 2009, Sprint filed its Amended Answer To

15  Second Amended Complaint.

16

17         Sprint agreed in its Answer and Amended Answer that it had over a million

18  data card customers, and that UCAN brought the issue of the state and local taxes to

19  Sprint's attention in June 2007.  Sprint's position in its Answer was that any mistakes that

20  may have been made by Sprint due to the billing conversion error would be informally

21  resolved by Sprint.  Further, according to Sprint, the SMS text message charges and

22  E911/WLNP Charges were specifically allowed by Sprint's Terms and Conditions

23  applicable to its customers' accounts.  In addition, effective January 1, 2008, Sprint

24  stopped assessing the E911/WLNP Charges.  Sprint also stated that it had resolved or

25  would resolve the underlying issues that resulted in Class Members being charged for SMS

26  text messages, and had resolved or would resolve the issue of federal, state and local taxes

27  attributable to the conversion of Sprint's billing systems.

28

-4-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1          During the litigation, extensive information was exchanged between the

2    parties as part of the Rule 26(a) disclosure process and in the course of discovery.

3    Documents were exchanged, interrogatories were answered, and depositions of witnesses

4    were taken in California, Kansas and Washington, D.C.

5

6          On April 17, 2009, Plaintiffs filed their motion for certification of a

7    nationwide class.  Sprint opposed the motion on various grounds, and Plaintiffs replied to

8    Sprint's opposition.  On June 9, 2009, the Court heard oral argument on the motion for

9    class certification, and on June 23, 2009, the Court issued its Order Re Class Certification,

10   denying Plaintiff's motion for certification of a nationwide class without prejudice to

11   possible certification of a California-only class, and ordered further briefing on certain

12   issues.  The parties have represented to the Court that the further briefing on class

13   certification was in the process of being completed when the settlement, described below,

14   was reached.

15

16   **B.      The Settlement.**

17

18          Further hearing of the motion for certification and the deadlines for briefing

19   thereon were continued several times, as the parties had begun settlement discussions in

20   earnest.  With the assistance of a private mediator (the Hon. Raymond Zvetina (retired) of

21   JAMS), in July 2009 the parties reached a settlement in principle on a nationwide basis.

22   The parties thereafter engaged in the time-consuming process of negotiating the language

23   of a formal, written Settlement Agreement.  A Settlement Agreement was signed by all

24   parties.  On October 23, 2009, the parties entered into a First Addendum to Settlement

25   Agreement, making some technical changes to some of the exhibits to the Settlement

26   Agreement (collectively, the Settlement Agreement and First Addendum to Settlement

27   Agreement will be referred to herein as the "Settlement Agreement").

28

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1    The Settlement Agreement defines "Class Members" as all customers of

2  Sprint wireless data connection card services who:

3

4    •    paid one or more E911 Charge (as defined in the Settlement

5         Agreement) assessed between September 1, 2006 and December 31,

6         2007 on wireless data connection card services that did not provide

7         voice capability (other than through access to the Internet); and/or

8

9    •    paid one or more WLNP Charge (as defined in the Settlement

10        Agreement) assessed between September 1, 2006 and December 31,

11        2007 on wireless data connection card services that did not provide

12        voice capability (other than through access to the Internet); and/or

13

14   •    paid one or more of the State Taxes (as defined in the Settlement

15        Agreement) assessed between September 1, 2006 and the Preliminary

16        Approval Date on wireless data connection card services that did not

17        provide voice capability (other than through access to the Internet);

18        and/or

19

20   •    paid one or more SMS Text Message Charge (as defined in the

21        Settlement Agreement) assessed between September 1, 2006 and the

22        Preliminary Approval Date on wireless data connection card services

23        that did not provide text message accessibility.

24

25    Specifically excluded from the class are: (a) those who have timely filed

26  notice of their election to be excluded from the class, identified in Exhibit A hereto; (b)

27  Sprint and Sprint's parents, subsidiaries, affiliates, successors, and control persons, as well

28

-6-

as officers, directors, agents, attorneys, employees, and the immediate family members of all such persons; (c) the Court and its staff; and (d) any customer of Sprint services for whom Sprint has received a Notice of Automatic Stay or other notice that the customer has filed for bankruptcy protection.

Under the terms of the settlement, if either current or former Sprint customers fall within the definition of "Class Members," they are entitled to the following relief:

- For all federal, state and local taxes that have been erroneously assessed to Class Members' accounts at any time during the class period (September 1, 2006 through October 28, 2009, the date of the preliminary approval order (the "Class Period"), Sprint shall automatically refund 100% of such charges to the extent it has not already done so;

- 100% of SMS text message charges will be refunded with submission of a claim form, and Sprint has reprogrammed its billing system so that no such charges will be assessed on data card services in the future;

- For all E911 and WLNP Charges assessed between September 1, 2006 and December 31, 2007, Sprint shall refund 50% of all amounts collected for these charges to all Class Members who submit a claim form, up to a total amount of $2.2 million. The aggregate limit for total claims paid, combined with all expenses incurred by the Claims Administrator for claims administration, shall not exceed $2.5 million.

-7-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1            If the total value of the claims submitted exceeds this amount, the

2    payments to the Class Members will be prorated.

3

4            There is a per-Class Member cap of $15 that applies only to the E911,

5    WLNP and SMS text message charges.  As the parties point out, the recovery should be

6    more than adequate to fully compensate the average Class Member.  The parties also

7    explain that the cap helps to prevent potential fraud in the claims process.  There is no cap

8    for the inadvertently-assessed state taxes, which are being fully refunded.

9

10           In addition to the consideration set forth above, the parties have agreed that

11   Class Counsel would request that the Court approve reimbursement of their fees and

12   expenses for prosecuting this action in the amount of $575,000, which includes $10,000 to

13   Taylor, based on the approximately 100 hours he expended helping to litigate, monitor and

14   participate in this case.  The parties have represented to the Court that the negotiations

15   regarding the payment of attorneys' fees and costs were conducted separately, after the

16   other principal terms of the settlement were agreed to.

17

18           In exchange for these benefits, the Class Members' claims against Sprint

19   arising out of the assessment of the federal, state and local taxes and fees, E911/WLNP

20   Charges and the SMS text message charges, as set forth in the SAC, are to be dismissed,

21   and all Class Members will release and be permanently barred from thereafter pursuing

22   any claims arising out of the allegations in the SAC relating to such charges.

23

24           The release provision is contained with paragraph 5 of the Settlement

25   Agreement.  It states:

26

27           5.  **Release**.  In further consideration of the terms and provisions of
             this Agreement, the parties hereto promise and agree as follows:

28

5.1  Excepting only the obligations imposed by this Agreement, Taylor, UCAN, and the Class Members shall, and by operation of the Final Approval Order do, forever relieve, release and discharge Sprint and its respective successors, assigns, attorneys, accountants, insurers, representatives, affiliates, parents, partners, officers, directors, stockholders, employees, and agents, and each of them, from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs, and expenses (including but not limited to attorneys' fees), damages, actions, causes of action and claims for relief (referred to hereafter collectively as "claims") of whatever kind or nature, under any theory, whether legal, equitable or other, under the law, either common, constitutional, statutory, administrative, regulatory, or other, of any jurisdiction, foreign or domestic, whether such claims are known or unknown, suspected or unsuspected, arising out of, connected with, or incidental to the matters or facts alleged, or set forth in the Action for the Claims Period, including, without limitation, all claims relating to State Taxes, SMS Text Message Charges, E911 Charges, and WLNP Charges.

5.2  Taylor, UCAN, and the Class Members expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Taylor, UCAN, and the Class Members expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, or other comparable authority in other jurisdictions, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and relinquishment, Taylor, UCAN, and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to the matters released herein.  Nevertheless, it is the intention of Taylor, UCAN, and the Class Members by this Agreement, and with advice of counsel (or the opportunity to receive advice of counsel), fully, finally, and forever to settle and release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed between the parties, to the extent set forth within this Agreement.  In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the

-9-

1   discovery or existence of any such additional different claims
    or facts relative to the matters released.  This is an essential
2   term of this Agreement without which there would have been
    no settlement.
3
    5.3  Excepting only obligations imposed by this Agreement,
4   Sprint shall, and by operation of the Final Approval Order
    does, forever relieve, release, and discharge Taylor, UCAN,
5   Class Counsel and UCAN's Counsel from any and all claims
    arising out of the investigation, initiation, litigation,
6   prosecution and resolution of the Action, including, without
    limitation, claims for malicious prosecution, negligence, and
7   abuse of process.

8  **C.      Preliminary Approval Of The Settlement And Notice To The Class.**

9

10          On October 9, 2009, the parties filed a Joint Motion for Entry of Order

11  Preliminarily Approving Settlement and Class Notice Program.  After responding to

12  questions posed by this Court, the parties submitted an amended proposed order.  On

13  October 28, 2009, this Court entered an Order Preliminarily Approving Settlement and

14  Class Notice Program, in which the Court preliminarily approved the settlement and

15  ordered that notice to the class be given.

16

17          The Court ordered that notice to the proposed class be given no later than

18  sixty (60) days after entry of the preliminary approval order (*i.e.*, by December 27, 2009).

19  The Claims Administrator was also ordered to set up and maintain a website containing

20  information about the settlement and providing an electronic means of submitting claims.

21  Class Members could also request a paper claim form on which to submit claims.

22  January 28, 2010 was set as the last day for any proposed Class Member to object to the

23  settlement or to opt-out of the settlement.  The Court ordered that the final approval

24  hearing would take place on February 17, 2010, at 1:30 p.m.

25

26          On December 30, 2009, the parties filed a Joint Application for Final

27  Settlement Approval and Approving Payment of Fees and Costs.  A few days later they

28

-10-

1   filed a Corrected Joint Application for Final Settlement Approval and Approving Payment

2   of Fees and Costs.

3

4          As part of their request to finally approve the settlement, the parties

5   submitted a Declaration of Bernella Lenhart.  Ms. Lenhart is an employee of Gilardi &

6   Co., the parties' agreed-upon and Court-approved Claims Administrator.  Ms. Lenhart

7   stated that notice of the settlement was mailed to the physical or email addresses associated

8   with over a million unique account numbers identified by Sprint as wireless data

9   connection card customers who had potentially incurred one or more of the charges

10  addressed in the settlement during the Class Period.   The notice was sent by email to

11  accounts where Sprint had an email address associated with the customer's account.

12  Emails that were rejected as undeliverable or as "spam" were collected and summary

13  notices were mailed to the physical address for the customer.   Physical notices were also

14  mailed to all potential Class Members for whom Sprint did not have an email address.  The

15  Claims Administrator used a third-party locator service as to notices returned as

16  undeliverable.  Where an updated address could be obtained, notice was re-sent.  The

17  Claims Administrator received various notices opting-out of the settlement.  The Claims

18  Administrator, the Court and the parties also received several objections to the proposed

19  settlement (addressed below).

20

21          As set forth in Ms. Lenhart's declaration, notices to the attorneys general of

22  the 50 states and to the attorneys general of Washington, D.C., Puerto Rico and the U.S.

23  Virgin Islands were mailed by the Claims Administrator pursuant to the Class Action

24  Fairness Act.  The Court did not receive any objections to the settlement from any of these

25  attorneys general.

26

27

28

**D.      Final Settlement Approval, the Supplemental Notice Group and the Second Supplemental Notice Group.**

Prior to the February 17, 2010 final settlement approval hearing, the parties filed a joint response to the settlement objections they had received.  The Court was also presented with a further declaration of Bernella Lenhart from Gilardi & Co., and shortly thereafter a supplemental declaration from Ms. Lenhart, stating that the Claims Administrator and/or Class Counsel had received a total of 50 opt-outs prior to the deadline set by the Court.

Also prior to the February 17, 2010 final settlement approval hearing, the parties alerted the Court that, by mistake, a group of 11,386 potential Class Members had not been given notice (hereinafter, the "Supplemental Notice Group").

On February 17, 2010, at 1:30 p.m. (the date identified by the Court in the preliminary approval order and in the notices to the proposed class), the Court convened a hearing on the parties' motion for final approval.  Counsel for the parties appeared.  No individual Class Members appeared, other than through Class Counsel.  No objectors appeared.  At the hearing, counsel for Sprint further explained the issue regarding the Supplemental Notice Group, and the parties submitted a proposal to continue the final approval hearing, and set new dates for giving notice and deadlines for objecting to the settlement, opting out of the settlement and submitting claims, as to the Supplemental Notice Group only.

The Court adopted the parties' proposal, and continued the final approval hearing to April 14, 2010, at 1:30 p.m.  The Court ordered that notice was to be given to the Supplemental Notice Group by February 21, 2010 (a Sunday), in the same manner and

-12-

form as was given to the first group of potential Class Members.  The Court set March 25, 2010 as the last day for any Class Member in the Supplemental Notice Group to object to the settlement or to opt-out.  The Court also set May 22, 2010 as the last day for the Supplemental Notice Group Class Members to submit a proof of claim form.  Rulings on the objections to the settlement were deferred until the continued final settlement approval hearing on April 14, 2010.  As to the original group of potential Class Members to receive notice, the last day to submit claims remained the same.

On April 7, 2010, at the request of the parties, the Court convened a telephonic status conference.  Counsel for Sprint informed the Court of an issue with respect to the Supplemental Notice Group.  Counsel advised that although email notice of the settlement had been sent to those members of the Supplemental Notice Group for whom Sprint had email addresses, the Claims Administrator did not mail summary notice postcards to 851 potential Class Members whose email notices were rejected as undeliverable or as "spam" (hereinafter the "Second Supplemental Notice Group"), as is required under the Preliminary Approval Order.

On April 7, 2010, the Court signed an "Order Re Second Supplemental Class Notice" [Docket No. 121], directing that summary notices be mailed to Second Supplemental Notice Group no later than April 9, 2010, and, with respect to the Second Supplemental Notice Group only, set May 10, 2010 as the last day to request exclusion from the settlement or to object to the settlement, and June 1, 2010 as the last day to submit a claim.  The Court also set May 13, 2010 as the last day for the parties to reply to any objections received from any member of the Second Supplemental Notice Group and as the last day for the Claims Administrator to file a list of opt-outs from the Second Supplemental Notice Group.  The Court also set May 17, 2010 at 1:30 p.m. for the hearing on final approval of the settlement, but this hearing would be taken off calendar if no

-13-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

objections were received from the Second Supplemental Notice Group.  The Court did not vacate the April 14, 2010 hearing on final settlement approval.

On April 9, 2010, the parties filed a Second Supplemental Declaration of Bernella Lenhart.  In her declaration, Ms. Lenhart stated that email and/or postcard notices had been sent to the Supplemental Notice Group, and that the Claims Administrator was then in the process of mailing the 851 summary notices to Second Supplemental Notice Group.  She also stated that as of March 25, 2010, no Class Member from the Supplemental Notice Group had submitted an objection to the settlement, and that the Claims Administrator had received one (1) opt-out from the Supplemental Notice Group.

On April 13, 2010, the Court again convened a telephonic status conference. At that status conference, the Court ordered that it would proceed with the hearing on final settlement approval on April 14, 2010, as that was the date that appeared on the notices sent to the Supplemental Notice Group.

The Court convened the continued final settlement approval hearing on April 14, 2010, at 1:30 p.m.  Counsel for the parties appeared.  No Class Members appeared, other than through Class Counsel.  No objectors appeared.  At the hearing, the Court orally put on the record tentative findings that the settlement should be finally approved, but that a final ruling would not be issued until after the expiration of the time within which objections from the Second Supplemental Notice Group could be filed, if any.  The Court ordered that the May 17, 2010 final approval hearing would remain on calendar, but would be taken off calendar if there were no objections received from the Second Supplemental Notice Group.

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1      On [May 11, 2010], the parties submitted the Third Supplemental

2   Declaration of Bernella Lenhart.  In it, Ms. Lenhart stated that summary notices were

3   mailed to the Second Supplemental Notice Group.  She also stated that the Claims

4   Administrator had received no additional opt-outs from the Second Supplemental Notice

5   Group, for a total of 51 opt-outs from all potential Class Members who had received notice

6   of the settlement.  She attached to her declaration a complete list of all opt-outs, a copy of

7   which is attached as Exhibit A to this Order of Final Approval of Class Action Settlement.

8

9      Neither the Court nor the parties received from the Second Supplemental

10  Notice Group any objections to the settlement.  Therefore, the Court has found that the

11  May 17, 2010 final approval hearing is not necessary, and hereby orders that hearing taken

12  off calendar.

13

14     Having read and considered all of the papers submitted by the parties and the

15  Claims Administrator, and having considered the arguments of counsel, as discussed in

16  more detail below, the Court orders that the settlement as proposed by the parties be finally

17  approved, that a settlement class as defined by the parties be certified, that Dr. Taylor is

18  appointed Class Representative, and that Consumer Law Group of California and Whatley

19  Drake & Kallas, LLC are appointed as Class Counsel.  The Court also grants Class

20  Counsel's request for payment of fees and costs, and for an incentive award to Dr. Taylor.

21  Finally, the action will be dismissed, with the Court reserving jurisdiction over the matter

22  for the purpose of enforcing the settlement.

23

24

25

26

27

28

-15-

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# III.

## <u>LEGAL STANDARDS FOR APPROVAL OF CLASS SETTLEMENTS</u>

Federal courts favor the settlement of disputed claims, and there is a particularly strong judicial policy favoring settlement of class litigation. *Officers for Justice v. Civil Service Comm.,* 688 F.2d 615, 625 (9th Cir. 1982).  When considering final approval of a class action settlement, the Court should determine whether the settlement: (a) was not the product of fraud or collusion; and (b) is fair, reasonable and adequate to the class.  In determining whether the settlement is fair, reasonable, and adequate, the Court must evaluate the settlement as a whole, rather than looking at specific components or terms to accept or reject.  The settlement should stand or fall in its entirety.  *Id.*, at 628; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("The question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.")

In *Officers for Justice*, the Ninth Circuit endorsed the examination of the following factors in determining whether a class action settlement is fair, reasonable and adequate:  (1) the experience and views of counsel; (2) the strengths and weaknesses of the plaintiff's case and the range of recovery when compared against the value of the settlement; (3) the risk of obtaining liability and class action status through trial and appeals; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *Id.* at 625; *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

In determining the adequacy and reasonableness of a proposed settlement, the settlement is presumed to be fair where the settlement is reached through arms length

1   bargaining, where investigation is sufficient to allow counsel and the Court to act

2   intelligently, where counsel is experienced in similar litigation, and where the percentage

3   of objectors is small.  *Officers for Justice, supra*, 688 F.2d at 625.  As discussed below,

4   such a presumption is properly invoked here.

5

6                                          **IV.**

7                    **THE SETTLEMENT SHOULD BE APPROVED**

8

9   **A.     The Settlement Is Not the Product Of Fraud Or Collusion.**

10

11          The history of this case provides strong evidence that the settlement was

12   reached as a result of arms-length bargaining, and is not collusive.  The litigation was

13   approaching its two-year anniversary before the parties entered into their Settlement

14   Agreement.  A settlement was not achieved until the parties were assisted at mediation by

15   retired Judge Zvetina.  Even after the mediation, the parties continued to negotiate for

16   almost three months before a formal, written Settlement Agreement was signed by the

17   parties.  The Court finds that this criterion for settlement approval has been met.

18

19   **B.     The Settlement Is Fair, Reasonable And Adequate.**

20

21          1.      The Experience And Views Of Counsel.

22

23          Plaintiffs submitted the declarations of attorneys Alan Mansfield,

24   Adam Plant, and Art Neill of UCAN in support of the original Joint Motion for Order of

25   Final Settlement Approval and Approving Payment of Fees and Costs.  They each agree

26   that the settlement is fair, reasonable and adequate, and should be finally approved by this

27   Court.

28

-17-

The Court finds that Class Counsel collectively have years of experience in litigating consumer class actions and have negotiated numerous class settlements that have been approved by courts throughout the United States.  Mr. Mansfield has prosecuted class actions for almost 19 years.  He was ably assisted in this case by Messrs. Plant and Neill. The Court also notes that Mr. Plant's law firm, Whatley Drake & Kallas, has significant experience in serving as class counsel.  Mr. Neill acts as in-house counsel for Plaintiff UCAN, and as such he is very familiar with that entity's work on behalf of consumers, often in a representative capacity.  This Court has no concerns about their good intentions and desire to represent the best interests of the class.  The Court gives due weight to their detailed explanations about why the settlement is fair, adequate and reasonable.

Finally, the parties have represented that the negotiations for the payment of attorneys' fees and costs did not occur until after the parties had agreed to the other principal terms of the settlement.  The Court finds that this is further evidence that the settlement is not the product of fraud or collusion.

2.     The Strengths And Weaknesses Of The Plaintiff's Case And The Range Of Recovery When Compared Against The Value Of The Settlement.

Although Class Counsel believe they had a strong case, they also have stated that this case was certainly not without risk in terms of liability and the range of possible recovery, including:  (1) that there would be disputes about whether the taxes and fees at issue were accurately classified or subject to change; (2) if not, whether any mistake was either inadvertent or immaterial; (3) whether reliance would be an element of some or all such claims; (4) whether Sprint properly remedied the assessment of the taxes, fees and charges in issue; and (5) whether the actual or even an average of out-of-pocket expenses Class Members incurred in paying for such charges could be determined.

-18-

1    As Class Counsel also acknowledged, any potential recovery by the class

2  could also have been defeated or limited because:  (1) the Court could have required

3  individual trials even if common questions were resolved in a class-wide proceeding;

4  (2) the Court could have required Class Members to establish reliance on the disclosures;

5  (3) after the lawsuit was filed, Sprint corrected and credited, or was in the process of

6  correcting or crediting,  at least a portion of these charges and changed the type and

7  description of the fees they assessed; (3) the Court could have required Class Members to

8  submit individual claims with documentation; and (4) the Court could have required Class

9  Members to agree to cancel their Sprint service to show that the representations about

10  these charges were material changes.  The Court finds that based on these considerations,

11  possible recovery ranged from zero to full refunds of the charges at issue.  Full recovery

12  was by no means certain.

13

14    When evaluating a settlement, the Court also looks at the potential recovery

15  made available to both the individual Class Members and to the class as a whole.  *Cf.,*

16  *Williams v. MGM-Pathe Communications*, 129 F.3d 1026 (9th Cir. 1997).  The benefits

17  provided to the Class Members under this settlement are substantial.  Class Members will

18  be reimbursed for all of the federal, state, and local taxes in issue in the case.  Moreover,

19  Class Members have the ability—by submitting a simple claim form electronically or by

20  mail—to all of their SMS text message charges and one-half of their E911/WLNP

21  Charges.  Alternatively, they have the right to opt out and pursue individual claims if they

22  believe they are entitled to a greater recovery.  When balancing the strengths and

23  weaknesses of the case against the possible range of recovery, the Court finds that the

24  settlement is fair, reasonable and adequate.

25

26

27

28

-19-

3.      The Risk Of Establishing Liability And Class Action Status Through Trial And Appeals.

Class certification orders are conditional in nature and may be changed, modified, or reversed at any time up until final judgment.  Fed. Rules of Civ. Proc., Rule 23; *Hanlon, supra*, 150 F.2d at 1022-23.  The Court had already declined to certify a nationwide class.  Thus, the Court finds that Plaintiffs faced the risk that any class certified in this case could be limited in scope and could later be decertified or modified before or after trial, or perhaps subsequently vacated on appeal.

Under *Hanlon*, the Court may reaffirm its initial determination (*i.e.,* preliminary approval) that certification of a nationwide class for settlement purposes is proper based on the evidence presented.  At this point, no Class Member has objected on the ground that a nationwide class is inappropriate for settlement purposes, as set forth in detail below.

4.      The Complexity, Expense, And Duration Of Litigation.

The Court is satisfied that the case was complex.  Plaintiffs were challenging numerous charges assessed by Sprint to its data card customers.  Although Sprint acknowledged at an early stage that certain taxes were erroneously assessed on data card services and certain SMS text message charges had been erroneously assessed, Sprint's corrective actions were ongoing and the evaluation of the propriety of the E911/WLNP Charges was complex.

The litigation extended almost two years before the settlement was reached, and could have lasted considerably longer, including through appeal.  Such litigation is

-20-

1   inherently expensive.  Taking the case through trial—whether on behalf of a nationwide

2   class or a California-only class—would have been enormously expensive, especially when

3   compared to the relatively small amounts at issue for each Class Member.

4

5          The Court is satisfied that evaluation of the complexity, duration and

6   expense of the litigation weighs in favor of approving the settlement.

7

8          5.     The Substance And Amount Of Opposition To The Settlement.

9

10          There has been very little opposition to the proposed settlement.  The

11  objections to the settlement will be addressed individually below.  It is sufficient to note

12  that in general, the objections typically are not substantive or detailed and/or do not

13  address the settlement terms.

14

15          Also, the Court notes that, out of over a million accounts given notice of the

16  settlement, only 51 potential Class Members opted-out of the settlement.  The fact that so

17  few opted out of the settlement suggests to the Court that as a whole the Class views the

18  settlement as fair, reasonable and adequate.

19

20          In short, the extent and substance of the opposition to the settlement weighs

21  in favor of approving the settlement.

22

23          6.     The Stage Of Proceedings At Which The Settlement Was Achieved.

24

25          The final factor set forth in *Officers in Justice* that should be considered in

26  the context of approving a class action settlement is the stage of the proceedings at which

27  the settlement was reached.  *Officers for Justice, supra*, 688 F.2d at 625.

28

-21-

1         Here, Plaintiffs' theories and claims were tested by motions to dismiss and a

2  motion for class certification.  At the time of settlement, the parties were briefing a second

3  round of issues related to class certification.  The parties represented to the Court that in

4  response to both informal and formal discovery, Sprint had supplied a significant amount

5  of evidentiary information about the charges at issue.  The discovery cutoff date was

6  approaching.  The trial date—previously continued by the Court at the request of the

7  parties—was also approaching.

8

9         Thus, Class Counsel were in a position at the time the settlement was

10  reached to understand the strengths and weaknesses of the action such that they could

11  make an intelligent and informed decision regarding the reasonableness of the settlement

12  terms.  And in fact, Class Counsel has assured the Court that they believed at the time of

13  settlement they possessed sufficient understanding of the facts and legal theories that they

14  could make such an intelligent and informed decision.  Evaluation of this factor weighs in

15  favor of approving the settlement.

16

17         Based on a weighing of all the relevant factors set forth in *Officers in Justice*,

18  the Court finds that the settlement terms as a whole are fair, reasonable and adequate, and

19  should be finally approved by this Court.

20

21                          **V.**

22      **THE CLASS HAS RECEIVED FAIR AND ADEQUATE**

23           **NOTICE OF THE SETTLEMENT**

24

25         As discussed above, Class Members were sent individual, actual notice of

26  this settlement.  Notice of the settlement was mailed to the physical or email addresses

27  associated with the account numbers identified by Sprint as wireless data connection card

28

-22-

1  customers who had incurred one or more of the charges addressed in the settlement during

2  the Class Period.   The notice was sent by email to accounts where Sprint had an email

3  address associated with the customer's account.  Emails that were rejected as undeliverable

4  or as "spam" were collected and summary notices were mailed to the physical address for

5  the customer.  Physical notices were also mailed to all potential Class Members for whom

6  Sprint did not have an email address.  The Claims Administrator used a third-party locator

7  service as to notices returned as undeliverable.  Where an updated address could be

8  obtained, notice was re-sent.  The Claims Administrator also maintained a website for

9  Class Members to obtain information about the case and the settlement, and to submit

10  claims electronically.

11

12          When Sprint discovered that the 11,386 members of the Supplemental

13  Notice Group were inadvertently omitted from the initial notice, the parties promptly

14  brought the issue to the Court's attention and proposed a supplemental notice and timeline

15  for such notice, and the final approval hearing was continued.  Further, when Sprint

16  discovered that the 851 members of the Second Supplemental Notice Group were not sent

17  summary postcards upon their email notices being "bounced-back," the parties brought the

18  issue to the Court's attention and proposed a supplemental notice and timeline for such

19  notice, and the final approval hearing was again continued.

20

21          The Court finds that the notice as given to the class is fair and adequate.

22

23

24

25

26

27

28

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# VI.

## OBJECTIONS TO THE SETTLEMENT

Only a few objections to the proposed settlement were filed.  Some of the objections addressed below may not be objections at all, but the Court reads the documents liberally and addresses each in turn.

**AndoverLaw, P.C.**

AndoverLaw, P.C., a law firm in Andover, Massachusetts, filed an objection on December 30, 2009.  The objection was submitted by Timothy Sullivan on behalf of AndoverLaw.  AndoverLaw asserts that the settlement appears "collusive," that the class is not receiving enough relief, and that Class Counsel would receive too much in terms of an award of fees and costs.  AndoverLaw provides no factual support for its objections.

The parties strongly disagree with the assertions of this objector.  The record before the Court shows that the case was litigated extensively and all of the issues were properly flushed out.  The parties point out that liability was hotly disputed and heavily litigated.  Despite this, the parties have agreed that Sprint will refund to the Class Members all of the state taxes inadvertently assessed as a result in a conversion of billing systems and, on a claims made basis, half of the WLNP and E911 Charges assessed from September 2006 through October 2009 and all of the text message charges incurred.  In addition, negotiation of the fee and costs provisions of this settlement did not take place until the material terms had been agreed to between the parties.

The settlement was mediated by a well-respected retired judge.  It is not collusive, and the class will be adequately compensated.

-24-

1   Class Counsel will be properly paid for their work in this hard-fought

2   litigation.  The litigation lasted for years, and involved extensive discovery, motion work

3   and settlement negotiations.  Class Counsel do not request a multiplier to their lodestar

4   attorneys' fees (hours multiplied by hourly rates).

5

6   The Court finds that the objection of AndoverLaw, P.C. is not well taken and

7   is OVERRULED.

8

9   **<u>Karrol Nelson</u>**

10

11   Karrol Nelson filed an objection on January 6, 2010.  Ms. Nelson alleges that

12   the settlement should be rejected because it does not compensate Class Members for

13   certain SMS text message charges and "two-way messaging" charges.

14

15   Sprint represents that it has investigated this Class Member's account.  Sprint

16   states that this Class Member had a data card for a period of time, but later canceled that

17   subscription.  The Class Member also has mobile phone lines with Sprint.  Sprint has

18   submitted a declaration of Mark Potter, a Sprint employee, stating that the charges about

19   which Ms. Nelson complains are SMS text message and two-way messaging charges on

20   phones, not data cards.

21

22   Ms. Nelson's objection does not pertain to the subject matter of this lawsuit.

23   Ms. Nelson may participate in the settlement with respect to data cards.  Her objection is

24   OVERRULED.

25

26

27

28

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

**Melissa Hosteter**

On January 13, 2010, Melissa Hosteter filed a document with the Court. Ms. Hosteter states that she previously filed for bankruptcy.  Her statement may not be an objection, but rather a request for exclusion or perhaps clarification.

As the parties correctly point out, under section 3.7.6 of the Settlement Agreement, Sprint customers who filed for bankruptcy protection are not eligible to participate in the settlement.  They are specifically excluded from the definition of a "Class Member."

Ms. Hosteter is not a Class Member under the Settlement Agreement.  To the extent her filing is deemed an objection to the proposed settlement, her objection is OVERRULED.

**Brian Lillibridge**

Mr. Lillibridge filed an objection on January 25, 2010.  He asserts that the class period should extend through January 2009, and should also include compensation for the Administrative Charges and Regulatory Charges that were first assessed on January 1, 2008.  He also complains that he received some charges for state taxes on his data card account.

The Class Period extends up to the date of the Court's Preliminary Approval Order (*see* Settlement Agreement at 3.8), which was entered on October 28, 2009, well after the date suggested by Mr. Lillibridge.

1     Mr. Lillibridge may have merely made a mistake as to the year, and intended

2 the objection to state that the class period should extend to January 2010.  However,

3 extending the deadline would be pointless, as the E911/WLNP Charges ended on

4 December 31, 2007, which was prior to the date of the Preliminary Approval Order.

5 Further, Sprint has put into place procedures to block text message charges on data cards.

6 Thus, extending the deadline would accomplish nothing.

7

8     As to the Michigan state and county taxes about which Mr. Lillibridge

9 complains, Sprint has submitted a declaration stating that Mr. Lillibridge's account was

10 credited for those taxes.  His claim with respect to the billing conversion charges has been

11 satisfied.

12

13     Further, while the Administrative Charges and Regulatory Charges

14 mentioned by Mr. Lillibridge were a part of the SAC, they were not included within the

15 Settlement Agreement.  Mr. Lillibridge is not barred by this settlement from pursuing a

16 claim based upon these charges.

17

18     Mr. Lillibridge's objections are OVERRULED.

19

20 **Larry Brooks**

21

22     Larry Brooks filed a document with the Court on January 27, 2010.  He

23 states that he wants to be included in class, but he also wants to recover data plan charges

24 pertaining to his Sprint mobile phone (that is, charges to obtain data and Internet access on

25 his Sprint wireless phone).  Mr. Brooks' letter could be deemed an objection to the

26 settlement to the extent it does not include any compensation for data plans on phones.

27 For purposes of addressing objections, the Court therefore deems it to be an objection.

28

-27-

1    Since the filing of Plaintiffs' initial complaint, this lawsuit has always been

2 about broadband data connection cards, not data plans on mobile phones.  Such plans were

3 not part of any complaint, not part of Plaintiffs' motion for class certification, and not part

4 of the Settlement Agreement.  Mr. Brooks is not barred by the Settlement Agreement from

5 pursuing such a claim.

6

7    Mr. Brooks' letter, to the extent it is deemed an objection to the settlement, is

8 OVERRULED.

9

10    **VII.**

11    **CERTIFICATION OF THE SETTLEMENT CLASS**

12

13    As part of its preliminary approval order, the Court provisionally certified

14 the class for settlement purposes only.  With respect to the class, the Court finally finds

15 and concludes, for settlement purposes only based upon the submissions of the parties,

16 that: (a) Class Members are so numerous as to make joinder of them impracticable;

17 (b) there are questions of law and fact common to the class, and such questions

18 predominate over any questions affecting only individual Class Members; (c) the Class

19 Representative's claims and the defenses asserted thereto are typical of the claims of Class

20 Members and the defenses asserted thereto; (d) Class Representative and Class Counsel

21 have fairly and adequately protected the interests of Class Members throughout this action;

22 and (e) a class action is superior to all other available methods for fairly and efficiently

23 resolving this action, considering (i) the interests of the Class Members in individually

24 controlling the prosecution of separate actions; (ii) the extent and nature of the litigation

25 concerning the controversy already commenced by Class Members; (iii) the desirability

26 and undesirability of concentrating the litigation of these claims in a particular forum; and

27 (iv) the difficulties likely to be encountered in the management of a class action.  The

28

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1   Court therefore determines that this action satisfies the prerequisites for class certification

2   set forth in Federal Rule of Civil Procedure 23(a), and may be maintained as a class action

3   under Federal Rule of Civil Procedure 23(b)(3), with Dr. Taylor as the Class

4   Representative.

5

6                                              **VIII.**

7                          **CLASS COUNSEL ARE ENTITLED TO AN AWARD**

8                              **OF ATTORNEYS' FEES AND COSTS**

9

10          As part of their motion for final approval of this settlement, Class Counsel

11  request an award for reimbursement of fees and costs.  The Settlement Agreement provides

12  that Class Counsel may request an award of attorneys' fees and reimbursement of expenses

13  incurred during the course of this litigation in the amount of $575,000.00.  Class Counsel

14  points out that this amount is less than 25% of the $2.2 million that could potentially be

15  paid to the Class, and that this $2.2 million figure does not include the amount of refunds

16  provided by Sprint for state and local taxes inadvertently assessed to data card accounts as

17  the result of an error during a conversion in billing systems.  If the amount of these refunds

18  of state and local taxes is taken into account, the percentage is even lower.  Class Counsel

19  do not request that a multiplier be applied to the total of fees and costs requested, despite

20  the results achieved, the various risks of going forward with litigation, and the contingent

21  nature of their work.

22

23          Class Counsel also emphasize that the fact that Sprint has agreed to pay this

24  amount without resorting to an adversarial motion is further evidence of its reasonableness.

25  Class Counsel assert that Sprint's agreement shows that market forces are at work in terms

26  of setting a reasonable fee.

27

28

ORDER OF FINAL APPROVAL OF
                                                          CLASS ACTION SETTLEMENT

1           For the reasons set forth below, the Court finds that Class Counsel are

2   entitled to a total award of fees and costs in the amount of $565,000 to be paid by Sprint.

3   $10,000 will be paid to Plaintiff Taylor by Class Counsel as an incentive award for serving

4   as the Class Representative.  Because Class Counsel have represented to the Court that

5   they have agreed amongst themselves upon an apportionment of the award, the Court will

6   not apportion the award among them.

7

8   **A.      A Fee And Expense Award Of $565,000 Is Reasonable.**

9

10          Initially, the Court notes that it may evaluate the request for fees and costs

11  either as a percentage of the total amount recovered by the Class, or on a lodestar basis

12  (calculating an award based upon a reasonable number of hours worked multiplied by a

13  reasonable hourly rate).  *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1001, 1029 ("in

14  'common fund' cases where the settlement or award creates a large fund for distribution to

15  the class, the district court has discretion to use either a percentage or lodestar method.")

16

17          Class Counsel point out that fee reimbursement is available under California

18  consumer protection statutes, such as the Consumers Legal Remedies Act, which is

19  Plaintiffs' third cause of action in the SAC.  Class Counsel argue that it is appropriate to

20  consider California state law regarding fees and costs in determining the reasonableness of

21  the requested fee award because of the state law causes of action.  Under California law,

22  declarations to support a fee application detailing the work performed and the reasonable

23  hourly rate for such services provide adequate evidentiary support for the requested

24  amount.  *Wershba v. Apple Computers,* 91 Cal.App.4th 224, 255 (2001).

25

26          Class Counsel have submitted declarations in conjunction with the motion

27  for final approval.  Their collective lodestar plus out-of-pocket expenses total over

28

-30-

1    $565,000.  Messrs. Mansfield, Neill and Plant, the primary attorneys who worked on this

2    matter on behalf of the class, also declare that their standard hourly rates have been

3    approved by other adjudicatory forums in other matters.

4

5            The Court finds that their lodestar and expenses are reasonable considering

6    the substantial work performed during the course of this litigation, and considering that

7    their standard hourly rates have been approved by courts in other class action cases.

8

9    **B.     Sprint's Agreement To This Amount Also Shows The Reasonableness Of The**

10          **Request.**

11

12          Class Counsel assert that because Sprint, after extensive negotiation, agreed

13   to this fee and expense award is also an appropriate factor for the Court to consider in

14   reviewing their fee application.  Representatives of both parties also represent that the

15   substantive terms of the settlement had been agreed to between the parties ***before*** there was

16   ever any discussion of the amount of fees and costs to be paid by Class Counsel.  Thus,

17   the fee provision was negotiated such that there was no potential conflict with the Class,

18   and that there can be no argument that such amounts were "traded off" for lesser class

19   consideration to the Class.

20

21          In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court held that

22   negotiated attorneys' fee provisions are the "ideal" toward which the parties should strive:

23   "a request for attorneys' fees should not result in a second major litigation.  Ideally, of

24   course, litigants will settle the amount of a fee."  *Id*. at 437.

25

26          Fee arrangements between plaintiffs and defendants in class actions are

27   encouraged.  This is particularly so where, as here, the attorneys' fees to be requested are

28

-31-

1  negotiated separately *after* the settlement terms of the class claims have been agreed to by

2  the parties, and are to be paid on top of the class consideration.  *Johnson v. Georgia*

3  *Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we

4  encourage counsel on both sides to utilize their best efforts to understandingly,

5  sympathetically, and professionally arrive at a settlement as to attorneys' fees.")

6

7         "[M]arkets know market value better than judges do."  *In Re Continental*

8  *Illinois Securities Litigation,* 962 F.2d 566, 570 (7th Cir. 1992) (Judge Posner).  Here, the

9  cap on the amount of the fees to be requested and the agreement to pay fees and costs as

10  reasonable, was negotiated under market conditions.  Class Counsel wanted to maximize

11  fees to compensate them, just as the law encourages—for risk, innovation and delay—

12  while Sprint wanted to pay the minimum amount it could.  The result is an arm's-length

13  negotiated amount set by market forces, and resolved only after the other settlement terms

14  had been agreed to in principle.  The Court finds that this factor weighs in favor of

15  approving the requested amount.

16

17  **C.     A $10,000 Incentive Award To the Class Representative Is Reasonable.**

18

19         Finally, Class Counsel request that the Court approve a $10,000 payment to

20  Dr. Taylor, out of the $575,000 amount set forth in the Settlement Agreement, for acting as

21  the Class Representative.  The amount is based on the time he expended dealing with

22  Sprint and Class Counsel on these issues, gathering documents, attending deposition and

23  mediation, and providing declarations.  He also reviewed the settlement to ensure it was

24  reasonable, devoting close to 100 hours to this action, despite the fact that he is a medical

25  doctor.

26

27

28

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1    The Court finds that the requested $10,000 incentive award to Plaintiff

2 Taylor is reasonable.

3

4                                    **IX.**

5                              **CONCLUSION**

6

7    For all of the reasons discussed above, the Court orders as follows:

8

9    1.    The Settlement Agreement as presented to the Court is finally approved;

10

11   2.    A nationwide settlement class is hereby certified and is defined as follows:

12

13       All customers of Sprint wireless data connection card services who:

14

15       •    paid one or more E911 Charge assessed between September 1, 2006

16             and December 31, 2007 on wireless data connection card services that

17             did not provide voice capability (other than through access to the

18             Internet); and/or

19

20       •    paid one or more WLNP Charge assessed between September 1, 2006

21             and December 31, 2007 on wireless data connection card services that

22             did not provide voice capability (other than through access to the

23             Internet); and/or

24

25       •    paid one or more of the State Taxes assessed between September 1,

26             2006 and the Preliminary Approval Date on wireless data connection

27

28

card services that did not provide voice capability (other than through access to the Internet); and/or

- paid one or more SMS Text Message Charge assessed between September 1, 2006 and the Preliminary Approval Date on wireless data connection card services that did not provide text message accessibility.

Specifically excluded from the class are: (a) those who have timely filed notice of their election to be excluded from the class, identified in Exhibit A hereto; (b) Sprint and Sprint's parents, subsidiaries, affiliates, successors, and control persons, as well as officers, directors, agents, attorneys, employees, and the immediate family members of all such persons; (c) the Court and its staff; and (d) any customer of Sprint services for whom Sprint has received a Notice of Automatic Stay or other notice that the customer has filed for bankruptcy protection.

3.      Plaintiff Dr. Eric Taylor is appointed Class Representative;

4.      Consumer Law Group of California and Whatley Drake & Kallas, LLC are appointed Class Counsel;

5.      Each objection to the settlement received by the Court is OVERRULED;

6.      Class Counsel are awarded their fees and costs in the amount of $565,000, to be paid by Sprint in accordance with the Settlement Agreement;

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

7. The award of fees and costs awarded to Class Counsel shall be apportioned among them pursuant to their agreement;

8. The total sum of $10,000 is to be paid to Dr. Taylor as an incentive award in accordance with the Settlement Agreement;

9. The action will be dismissed with prejudice, and Judgment will be entered accordingly, effective as of the date of this Order;

10. In consideration of the Settlement Agreement and the benefits contained therein, the Class Representative, on behalf of himself and the class, and each Class Member either have or are deemed by operation of this Order and the Judgment to have forever relieved, released and discharged Sprint and its respective successors, assigns, attorneys, accountants, insurers, representatives, affiliates, parents, partners, officers, directors, stockholders, employees, and agents, and each of them, from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs, and expenses (including but not limited to attorneys' fees), damages, actions, causes of action and claims for relief of whatever kind or nature, under any theory, whether legal, equitable or other, under the law, either common, constitutional, statutory, administrative, regulatory, or other, of any jurisdiction, foreign or domestic, whether such claims are known or unknown, suspected or unsuspected, arising out of, connected with, or incidental to the matters or facts alleged, or set forth in the Action for the Claims Period, including, without limitation, all claims relating to State Taxes, SMS Text Message Charges, E911 Charges, and WLNP Charges. In addition, Sprint by operation of this Court's Order of Final Approval of Class

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1    Action Settlement and this Judgment shall have released, relinquished and

2    discharged the claims set forth in Section 5.3 of the Settlement Agreement;

4   11.    Without affecting the finality of the Judgment to be entered pursuant to this

5    Order, this Court retains continuing jurisdiction of this class action

6    settlement, including the administration, consummation, and enforcement of

7    the Settlement Agreement.  In addition, without affecting the finality of the

8    Judgment entered pursuant to this Order, this Court retains jurisdiction over

9    Sprint and each Class Member, who are deemed to have submitted to the

10    exclusive jurisdiction of this Court for any suit, action, proceeding or dispute

11    arising out of or relating to this Order; and

13  12.    Effective as of this date, the Court orders and enters a permanent injunction

14    barring and enjoining the Class Representative and all Class Members from

15    bringing, filing, commencing, prosecuting, continuing to prosecute,

16    maintaining, intervening in, participating in, or receiving any benefits from

17    any other lawsuit, arbitration, or administrative, regulatory, or other

18    proceeding in law or equity against Sprint that asserts, arises from, concerns,

19    or is in any way related to State Taxes, SMS Text Message Charges, E911

20    Charges, and WLNP Charges.

22    IT IS SO ORDERED.

24  Dated:  May 12, 2010.

ROBERT J. BRYAN
United States District Judge

W02-WEST:8FP1\402470375.5
Case No. 07 CV 2231 RJB

ORDER OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT